## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | § | |
| ROHM AND HAAS ELECTRONIC MATERIALS LLC, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 06-297-GMS |
| HONEYWELL INTERNATIONAL INC., | § § § | |
| *Defendant.* | § § § | |

## COMPENDIUM OF UNREPORTED OPINIONS TO HONEYWELL INTERNATIONAL INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STAY LITIGATION <u>PENDING REEXAMINATION OF THE PATENTS</u>

/s/ Jeremy D. Anderson
Robert S. Saunders (I.D. #3027)
Jeremy D. Anderson (I.D. #4515)
SKADDEN, ARPS, SLATE
   MEAGHER & FLOM, LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899
Tel: (302) 651.3000
Fax: (302) 651.3001

DATED: December 12, 2006

## INDEX

**CASES**                                                    **TAB NO.**

*3M Innovative Properties Co. v. DuPont Dow Elastomers LLC,*
  No. 03-3364, 2005 WL 2216317 (D. Minn. Sept. 8, 2005).........................................1

*Abbott Diabetes Care, Inc. v. DexCom, Inc.,*
  No. 05-590-GMS, 2006 U.S. Dist. LEXIS 57469
  (D. Del. Aug. 16, 2006) .....................................................................................2

*Alloc, Inc. v. Unilin Decor N.V.,*
  No. 03-253-GMS, 2003 U.S. Dist. LEXIS 11917 (D. Del. July 11, 2003)..................3

*Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.,*
  No. 85 C 7565, 1987 U.S. Dist. LEXIS 15033 (N.D. Ill. Jan. 30, 1987) ....................4

*Essex Group, Inc. v. Southwire Co.,*
  No. C-85-1923-A, 1986 U.S. Dist. LEXIS 29761 (N.D. Ga. Jan. 31, 1986) ...............5

*Gioello Enterprises Ltd. v. Mattel, Inc.,*
  No. C.A. 99-375-GMS, 2001 WL 125340 (D. Del. Jan. 29, 2001).............................6

*Middleton, Inc. v. Minnesota Mining & Manufacturing Co.,*
  No. 4:03-cv-40493, 2004 U.S. Dist. LEXIS 16812
  (S.D. Iowa Aug. 24, 2004).......................................................................................7

*Motson v. Franklin Covey Co.,*
  No. 03-1067, 2005 U.S. Dist. LEXIS 34067 (D.N.J. Dec. 16, 2005)..........................8

*Pegasus Development Corp. v. DirecTV, Inc.,*
  No. 00-1020, 2003 U.S. Dist. LEXIS 8052 (D. Del. May 14, 2003) ..........................9

*Robert H. Harris Co. Inc. v. Metal Manufacturing Co.,*
  No. J-C-90-179, 1991 U.S. Dist. LEXIS 16086 (E.D. Ark. June 20, 1991)...............10

*Watlow Electrical Manufacturing Co. v. Ogden Manufacturing Co.,*
  No. 4:05CV2094, 2006 U.S. Dist. LEXIS 46431 (D. Mo. July 10, 2006).................11

# TAB 1



Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2005 WL 2216317 (D.Minn.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
3M Innovative Properties Co. v. Dupont Dow
Elastomers LLCD.Minn.,2005.Only the Westlaw
citation is currently available.
United States District Court,D. Minnesota.
3M INNOVATIVE PROPERTIES COMPANY
and Dyneon LLC, Plaintiffs/Counterclaim
Defendants,
v.
DUPONT DOW ELASTOMERS LLC,
Defendant/Counterclaim Plaintiff.
**No. 03-3364 MJD/AJB.**

Sept. 8, 2005.

John C. Adkisson and Juanita R. Brooks, Fish &
Richardson, and R.J. Zayed, Carlson, Caspers,
Vandenburgh & Lindquist, for Plaintiffs.
Richard M. Dahl, Madigan, Dahl, & Harlan, P.A.,
and Thomas B. Kenworthy, Morgan, Lewis &
Bockius, for Defendant.

MEMORANDUM OF LAW & ORDER
DAVIS, J.

I. INTRODUCTION

**\*1** This matter is before the Court on Plaintiffs'
Motion to Stay Litigation Pending Completion of
the Reexamination of the '919 Patent. [Docket No.
258] The Court heard oral argument on August 25,
2005. For the reasons that follow, the Court grants
Plaintiffs' Motion to Stay.

II. FACTUAL BACKGROUND

The '919 patent, relating to a polymer processing
additive, was issued to Plaintiff Dyneon LLC on
August 21, 2001. Plaintiff 3M Innovative Properties
Company is the exclusive licensee of the '919 patent
. Dyneon and 3M (collectively "Dyneon") filed this

action on June 6, 2003, alleging infringement of the
'919 patent. Defendant DuPont Performance
Elastomers ("DuPont"), formerly known as DuPont
Dow Elastomers, denied the infringement
allegations and asserted defenses and counterclaims.

Discovery has been completed in this case. The
Court has decided two summary judgment motions
and has construed relevant claim terms. [Docket
Nos. 159, 228].

In November 2004, after the Court issued its first
summary judgment order, DuPont filed a request for
reexamination of the '919 patent. On January 13,
2005, the United States Patent and Trademark
Office ("PTO") granted DuPont's request. [Docket
No. 214] On January 31, 2005, the Court ordered
the parties to address "the question of whether the
Court should stay this case while the reexamination
proceedings are pending." [Docket No. 220] Both
parties opposed granting a stay. [Docket Nos. 221,
223]

On July 28, 2005, the Court set this case for trial
beginning on January 4, 2006. [Docket No. 242] On
August 5, Dyneon filed the current Motion to Stay
Litigation Pending Completion of the
Reexamination of the '919 Patent. [Docket No. 258]

III. DISCUSSION

A. Standard

"Courts have inherent power to manage their
dockets and stay proceedings, including the
authority to order a stay pending conclusion of a
PTO reexamination." *Ethicon, Inc. v. Quigg,* 849
F.2d 1422, 1426-27 (Fed.Cir.1988) (citations
omitted). The decision of whether to grant a stay
pending reexamination of a patent is within the
district court's discretion. *Viskase Corp. v. Am.
Nat'l Can Co.,* 261 F.3d 1316, 1328 (Fed.Cir.2001).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 2216317 (D.Minn.)
**(Cite as: Not Reported in F.Supp.2d)**

When considering a motion to stay pending reexamination, courts consider the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.

*Xerox Corp. v. 3Com Corp.,* 69 F.Supp.2d 404, 406 (W.D.N.Y.1999).

### B. Whether a Stay Would Create Prejudice

DuPont claims that it will be prejudiced by a delay because Dyneon continues to post a message on its website stating that DuPont's products have been accused of infringement. DuPont asserts that it loses business each month that the litigation continues because customers avoid purchasing products accused of infringement. DuPont has offered no evidence that Dyneon has informed customers of anything beyond the existence of the lawsuit and the short statement on its website. In any event, should DuPont ultimately prevail on its pertinent claims, its damages will be compensable at trial after reexamination.

**\*2** DuPont also claims that it will have to redo much of its trial preparation work from the last six months if the case does go to trial after a stay. It asserts that evidence related to its stayed antitrust claims will be lost if this stay lasts for several years. Although some trial preparation may have to be repeated, DuPont offers no evidence to support its claim that hundreds of thousands of dollars of trial preparation work will be lost if this case goes to trial after reexamination is complete.

In this case, unlike in the cases cited by DuPont, the party opposing the stay is the very party that requested reexamination by the PTO at a late stage in the litigation. DuPont itself contributed to the delay in this case. Any prejudice to DuPont is partly of its own making. The Court concludes that this factor weighs in favor of granting the stay.

### C. Whether a Stay Will Simplify the Litigation

Staying this litigation during the pendency of the PTO reexamination proceedings will provide the Court and parties with multiple advantages. For example:
1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.
2. Many discovery problems relating to prior art can be alleviated by the PTO examination.
3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.
4. The outcome of the reexamination may encourage a settlement without the further use of the Court.
5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.
6. Issues, defenses, and evidence will be more easily limited in pretrial conferences after a reexamination.
7. The cost will likely be reduced both for the parties and the Court.

*Middleton, Inc. v. Minn. Mining & Mfg. Co.,* No. 4:03-CV-40493, 2004 WL 1968669, at \*3 (S.D.Iowa Aug. 24, 2004) (unpublished) (citation omitted). Granting a stay will promote judicial economy by "maximiz[ing] the likelihood that neither the Court nor the parties expend their assets addressing invalid claims." *Softview Computer Prods. Corp. v. Haworth, Inc.,* 56 U.S.P.Q.2d 1633, 1636 (S.D.N.Y.2000).

Additionally, the results of the reexamination will narrow and clarify trial issues. Evidence of the result of the completed reexamination proceedings could be highly relevant to DuPont's inequitable conduct allegations at trial. *See, e.g., Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1179 (Fed.Cir.1995) (noting that the *result* of a PTO reexamination would be of "strong probative value in determining whether the undisclosed information was material"). On the other hand, admission of evidence of an incomplete reexamination would have low probative value, would distract from the core issues of the case, and would be highly prejudicial. *See, e.g., Acoustical Design, Inc. v. Control Elecs, Co.,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 3

Not Reported in F.Supp.2d, 2005 WL 2216317 (D.Minn.)
**(Cite as: Not Reported in F.Supp.2d)**

*Inc.,* 932 F.2d 939, 942 (Fed.Cir.1991) (noting that "initial rejection by the Patent and Trademark Office of original claims that later were confirmed on reexamination hardly justifies a good faith belief in the invalidity of the claims"); *Amphenol T & M Antennas Inc. v. Centurion Int'l Inc.,* 69 U.S.P.Q.2d 1798, 1800 (N .D. Ill.2002) (noting that "telling the jury that the patent has been called into question by the Patent Office may significantly influence the jury's application of the presumption of validity"). The Court concludes that this factor weighs heavily in favor of granting a stay.

### D. Whether Discovery Is Complete and a Trial Date Has Been Set

**\*3** This case is trial ready. Discovery is complete, and the Court has decided all summary judgment motions. The Court has construed the relevant claim terms and has set the trial date for January 2006. In February 2005, Dyneon represented to the Court that it opposed a stay pending reexamination and that the case was ready for trial. This factor weighs against granting a stay. However, any wasted trial preparation expenses incurred by staying this matter will be insignificant compared to the amount of money saved by ensuring that there will be, at most, only one trial in this case. *See Middleton, Inc. v. Minn. Mining & Mfg. Co.,* No. 4:03-CV-40493, 2004 WL 1968669, at \*5-\*6 (S.D.Iowa Aug. 24, 2004) (unpublished) (granting stay two months before trial date, although case was over eight years old, because parties would not recoup their pretrial expenditures if court denied stay but would have to spend considerable resources on jury trial that might have to be repeated).

### E. Conclusion

The Court concludes that a stay is warranted. Granting a stay will prevent the possibility of duplication, promote efficiency, and conserve judicial resources, while providing the Court with the benefit of the PTO's technical expertise. Although Dyneon is requesting a stay late in the proceedings, DuPont also bears responsibility for its decision to seek reexamination only after the Court

ruled on the first summary judgment motion.

Accordingly, based upon the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. Plaintiffs' Motion to Stay Litigation Pending Completion of the Reexamination of the '919 Patent [Docket No. 258] is GRANTED.

2. This action is hereby STAYED pending reexamination of United States Patent No. 6,277,919 in the United States Patent and Trademark Office.

3. Counsel for the parties are directed to notify the Court of the status of the reexamination proceedings at six month intervals while this Stay Order is in effect.

D.Minn.,2005.
3M Innovative Properties Co. v. Dupont Dow Elastomers LLC
Not Reported in F.Supp.2d, 2005 WL 2216317 (D.Minn.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 2267308 (Trial Motion, Memorandum and Affidavit) Memorandum of Law on Behalf of Dupont Performance Elastomers L.L.C. in Opposition to Plaintiffs' Motion to Strike the Supplementation of the Deposition Testimony of Stephen T. Balke, Ph.D. (Aug. 9, 2005) Original Image of this Document (PDF)

• 2005 WL 1353016 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion for Clarification of the Court's March 8, 2005 Order and Motion in Limine to Exclude Evidence Relating to the Reexamination of the "919 Patent (Mar. 22, 2005) Original Image of this Document (PDF)

• 2004 WL 3371314 (Trial Motion, Memorandum and Affidavit) Corrected Reply Memorandum of Law in Further Support of the Motion of DuPont Dow Elastomers L.L.C. for Construction of Additional Terms of the "919 Patent (Dec. 3, 2004) Original Image of this Document (PDF)

• 2004 WL 3371311 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Memorandum in Support of Renewed Motion for Summary Judgment on Defendant's Inequitable Conduct Defense and Counterclaim (Nov. 24, 2004) Original

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 2216317 (D.Minn.)
**(Cite as: Not Reported in F.Supp.2d)**

Image of this Document (PDF)
• 2004 WL 3371312 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of the Motion of DuPont Dow Elastomers L.L.C. for Construction of Additional Terms of the "919 Patent (Nov. 24, 2004) Original Image of this Document (PDF)
• 2004 WL 3371309 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Defendant's Motion for Construction of Additional Terms of the '919 Patent (Nov. 17, 2004) Original Image of this Document with Appendix (PDF)
• 2004 WL 3371307 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Support of Renewed Motion for Summary Judgment on Defendant's Inequitable Conduct Defense and, in the Alternative, A Bench Trial on the Issue of Inequitable Conduct (Oct. 25, 2004) Original Image of this Document (PDF)
• 2004 WL 3371305 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of the Motion of Dupont Dow Elastomers L.L.C. for Construction of Additional Terms of the '919 Patent (Oct. 1, 2004) Original Image of this Document (PDF)
• 2004 WL 3371303 (Trial Motion, Memorandum and Affidavit) Dupont Dow's Memorandum of Law in Opposition to Dyneon's Motion to Compel Production of Documents and 30(b)(6) Deposition Testimony (Sep. 21, 2004) Original Image of this Document (PDF)
• 2004 WL 3371301 (Trial Motion, Memorandum and Affidavit) Defendant/Counterclaimant Dupont Dow Elastomers L.L.C.'s Answer and Additional Defenses to Amended Complaint, Counterclaim, and Jury Trial Demand (Jul. 8, 2004) Original Image of this Document (PDF)
• 2004 WL 3371299 (Trial Pleading) Amended Complaint (Jun. 8, 2004) Original Image of this Document (PDF)
• 2004 WL 3371295 (Trial Motion, Memorandum and Affidavit) Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion to Strike Those Portions of Dupont Dow's Unenforceability Defense Relating to Inequitable Conduct (Jun. 3, 2004) Original Image of this Document (PDF)
• 2004 WL 3371297 (Trial Motion, Memorandum and Affidavit) Defendant's Memorandum of Law in

Opposition to Plaintiffs' Motion for Sanctions (Jun. 3, 2004) Original Image of this Document (PDF)
• 2004 WL 3371292 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Plaintiffs' Motion to Strike Those Portions of Dupont Dow's Unenforceability Defense Relating to Inequitable Conduct (May 25, 2004) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 2

LEXSEE 2006 U.S. DIST. LEXIS 57469

**ABBOTT DIABETES CARE, INC., Plaintiff, v. DEXCOM, INC., Defendants.**

**C.A. No. 05-590 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2006 U.S. Dist. LEXIS 57469*

**August 16, 2006, Decided**

**COUNSEL:** [*1] For Abbott Diabetes Care Inc. a Delaware corporation, Plaintiff: Mary B. Graham, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE; James F. Hurst, Stephanie S. McCallum, Pro Hac Vice; James Walter Parrett, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For DexCom Inc. a Delaware corporation, Defendant: John W. Shaw, Melanie K. Sharp, Young, Conaway, Stargatt & Taylor, Wilmington, DE; Brian M. Kramer, David C. Doyle, M. Andrew Woodmansee, Morgan S. Adessa, Pro Hac Vice.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Gregory M. Sleet

**OPINION:**

**MEMORANDUM**

**I. INTRODUCTION**

On August 11, 2005, Abbott Diabetes Care, Inc. ("Abbott") brought this declaratory judgment (Count I) and patent infringement (Count II) action against Dex-Com, Inc. ("DexCom"). Presently before the court are the following motions: (1) DexCom's Motion to Dismiss Abbott's Complaint (D.I. 5); (2) DexCom's Motion to Strike the "Amended Complaint" and Renewed Motion to Dismiss Abbott's Complaint (D.I. 61); and (3) DexCom's Motion to Stay Pending Reexamination of the Patents-in-suit (D.I. 25). For the reasons that follow, the court will grant in part and deny in part DexCom's motion [*2] to dismiss. The court will grant the motion to dismiss Abbott's declaratory judgment count and will deny the motion to dismiss the infringement count. Additionally, the court will grant DexCom's motion to strike the "amended complaint," deny the renewed motion to dis-

miss the complaint as moot, and grant the motion to stay pending reexamination of Abbott's patents.

**II. BACKGROUND**

Abbott owns *U.S. Patent Nos. 6,175,752* (the "'752 patent"), 6,284,478 (the "'478 patent"), 6,329,161 (the "'161 patent"), and 6,565,509 (the "'509 patent") (collectively, the "patents-in-suit"). The patents-in-suit are directed to methods, systems, and devices for continuously monitoring glucose levels in humans. (Compl. P 7.) The patented technology at issue offers an alternative monitoring system for diabetics, who currently monitor their glucose levels by pricking their fingers to draw blood several times a day. (D.I. 32, at 3; see *'752 patent*, Col. 1, ll. 21-26; '509 patent Col. 1, ll. 21-26.) According to the background of the invention sections of the '752 and '509 patents, the pricking technique does not permit the continuous monitoring of glucose, is painful and inconvenient, and results [*3] in inconsistencies in monitoring among individuals with diabetes. (See *'752 patent*, Col. 1, ll. 26-38; '509 patent, Col. 1. ll. 26-38.) Therefore, the technology described in the patents-in-suit was invented to address the need for a small and comfortable device that could continuously monitor glucose levels for days at a time, while permitting a patient to engage in normal activities. ('752 patent, Col. 2, ll. 1-4; '509 patent, Col 2., ll. 5-8.) Each of the patents-in-suit relate to an aspect of the continuous glucose monitor, which involves implanting a glucose sensor in a patient and monitoring signals over the life of the sensor. n1 (D.I. 32, at 3.) The monitoring device provides patients with feedback regarding their glucose levels, and may even include an alarm to warn patients of dangerous glucose levels. (Id. at 3-4.)

---

n1 The *'752* and '509 patents relate to glucose monitoring devices and their methods of use, while the '478 and '161 patents relate to subcutaneous glucose sensors.

Abbott alleges that DexCom [*4] intends to market its STS<TM> Continuous Glucose Monitoring System, which will infringe one or more claims of the patents-in-suit. The complaint states that DexCom filed a premarket approval application with the Food and Drug Administration (the "FDA") in March 2005, seeking approval to sell its product. (Compl. P 12.) The complaint further states that DexCom expects FDA approval by the second quarter of 2006. n2 (Id. P 15.) In Count I, Abbott seeks declaratory relief in the form of a judicial declaration that DexCom's product will infringe one or more claims of each of the patents-in-suit. (Id. P 25.)

> n2 As previously mentioned, Abbott filed its complaint on August 11, 2005. The FDA subsequently approved DexCom's glucose monitoring product, in March 2006.

Further, Abbott alleges that, prior to filing its premarket approval application with the FDA, DexCom attended two "trade shows" where it publicized and displayed its glucose monitoring product. (Compl. P 16.) The complaint alleges that the products DexCom [*5] displayed at the trade shows were manufactured for the purpose of showcasing rather than for gathering information for submission to the FDA. (Id. P 17.) Abbott alleges that DexCom's manufacture and display of its product constitutes an act of patent infringement. (Id. P 28.)

On August 31, 2005, DexCom filed a motion to dismiss Abbott's complaint for lack of subject matter jurisdiction and failure to state a claim. Additionally, on February 22, 2006, DexCom filed a motion to stay the litigation pending reexamination of the patents-in-suit. On June 27, 2006, Abbott filed an amended complaint, which alleges further infringing acts on the part of DexCom and adds several patents to the suit. On July 12, 2006, DexCom filed a motion to strike the "amended complaint" and renewed motion to dismiss.

## III. DISCUSSION

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Dexcom first contends that the court should dismiss Abbott's declaratory judgment claim because there is currently no "accused device" to compare against the claims of the patents-in-suit and, therefore, Abbott's claim is premature. In other words, DexCom contends the court lacks subject matter jurisdiction [*6] over Count I of Abbott's Complaint.

A motion to dismiss under *Rule 12(b)(1) of the Federal Rules of Civil Procedure* contests the jurisdiction of the Court to address the merits of a plaintiff's complaint. Such a challenge may present either a facial or a factual contest to subject matter jurisdiction. *See Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)*. When asserting a facial challenge, a defendant contends that the complaint alleges facts that, even if true, would be insufficient to establish the Court's jurisdiction. *Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000)*. The present motion presents a facial challenge to the complaint because the jurisdictional facts are not in dispute. Such a motion requires the court to consider the allegations of the complaint as true and to make all reasonable inferences in the plaintiff's favor. *See id.* Additionally, the court must test the existence of jurisdiction as of the time the complaint was filed. *Lang v. Pacific Marine and Supply Co., 895 F.2d 761, 764 (Fed. Cir. 1990)*.

The Declaratory Judgment Act (the "Act") provides that "[i]n [*7] a case of actual controversy . . . [a court of competent jurisdiction] may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *28 U.S.C. § 2201(a)*. Thus, before a court may exercise jurisdiction over a declaratory judgment action, the Act requires an "actual controversy between the parties." *Medimmune, Inc. v. Centocor, Inc., 409 F.3d 1376, 1378-79 (Fed. Cir. 2005)* (citing *Teva Pharms. USA, Inc. v. Pfizer, Inc., 395 F.3d 1324, 1331 (Fed. Cir. 2005))*. "If the controversy requirement is met by a sufficient allegation of immediacy and reality . . . a patentee [is able] to seek a declaration of infringement against a future infringer . . . [just as] a future infringer is able to maintain a declaratory judgment action of noninfringement under the same circumstances." *Telectronics Pacing Sys., Inc. v. Ventritrex, Inc., 982 F.2d 1520, 1526 (Fed. Cir. 1992)* (citing *Lang, 895 F.2d at 764)*.

However, a district court does not have jurisdiction to hear the action when there is no actual controversy. *Spectronics Corp. v. H.B. Fuller Co., 940 F.2d 631, 634 (Fed. Cir. 1991)*, [*8] *cert. denied, 502 U.S. 1013, 112 S. Ct. 658, 116 L. Ed. 2d 749 (1991)*. Moreover, "even assuming [the existence of] an actual controversy, the exercise of a court's jurisdiction over a declaratory judgment action is discretionary." *Telectronics, 982 F.2d at 1526* (citations omitted).

Two elements must be present in order to meet the controversy requirement in a declaratory judgment action brought by a patentee against an alleged future infringer: (1) the defendant must be engaged in an activity directed toward making, selling, or using subject to an infringement charge under *35 U.S.C. § 271(a)*, or be making meaningful preparation for such activity; and (2) acts of the defendant must indicate a refusal to change the course

of its actions in the face of acts by the patentee sufficient to create a reasonable apprehension that a suit will be forthcoming. *Lang, 895 F.2d at 764.* In addition, the declaratory judgment plaintiff bears the burden of proving the existence of facts underlying its allegations of the existence of an actual controversy. *Jervis B. Webb Co. v. S. Sys., Inc., 742 F.2d 1388, 1399 (Fed. Cir. 1984).*

Applying the [*9] above-discussed elements to the present case, it is clear to the court from the record before it that Abbott's complaint did not present an actual controversy under the Act at the time it was filed. That is, Abbott has not demonstrated that DexCom produced or has prepared to produce a product that would be subject to an infringement charge under *35 U.S.C. § 271.* At the time Abbott filed its complaint, the FDA had not approved DexCom's product and Abbott could not predict when, or if, the FDA would approve the product. Indeed, Abbott states as much in its complaint, alleging that "DexCom . . . *expects* FDA approval for marketing by the second quarter of 2006. . . ." (Compl. P 15) (emphasis added). n3 Additionally, Abbott did not, and could not, allege with any certainty that "the device when approved would be the same device that began clinical trials[,]" as "product changes during testing are contemplated by statute, *21 U.S.C. § 360j(g)(2)(C)(iii) (1988)." Telectronics, 982 F.2d at 1527.* Most important, Abbott did not allege nor does it now contend that DexCom has distributed sales literature, prepared to solicit [*10] orders, or engaged in any sales or marketing activity with regard to its glucose monitoring product. *See Lang, 895 F.2d at 765; Benitec Australia Ltd. v. Nucleonics, Inc.,* Civil Action No. 04-0174 JJF, 2005 U.S. Dist. LEXIS 22008, at *9 (D. Del. Sept. 29, 2005); *Interdigital Tech. Corp. v. OKI Am., Inc., 845 F. Supp. 276, 284 (E.D. Pa. 1994)* ("Activity directed towards advertising or marketing the accused device is particularly important to a finding of a justiciable controversy.") Therefore, the court concludes that no controversy of sufficient immediacy and reality existed, at the time Abbott filed its complaint, to support declaratory judgment jurisdiction in the present case. As such, the court will dismiss Count I of Abbott's complaint.

n3 The court agrees with the argument Abbott makes in its answering brief, namely that FDA approval is not the standard by which it should evaluate whether an actual controversy existed at the time the complaint was filed. However, the court finds that the absence of FDA approval is evidence that the dispute between the parties is neither real nor immediate.

[*11]

### B. Motion to Strike Abbott's "Amended Complaint"

DexCom next argues that the court should strike the "Amended Complaint" because Abbott failed to seek leave of court to file what correctly should be termed a "supplemental pleading." Conversely, Abbott asserts that it properly amended its complaint under *Federal Rule of Civil Procedure 15(a)* to allege additional acts of infringement that occurred prior to and after it filed the initial complaint. The court is unpersuaded by Abbott's argument and will, therefore, strike its "Amended Complaint."

As Abbott points out in its briefing, "[a]n amended pleading generally is a modification to incorporate events that were unknown but occurred *prior* to the filing of the original pleading." (D.I. 66, at 7) (emphasis added) (citing 3 James Wm. Moore et al., *Moore's Federal Practice § 15.02* (3d ed. 1999)). On the other hand, "a supplemental pleading refers to additions to include transactions or occurrences that take place after the filing of the original pleading." (D.I. 66, at 7.) By Abbott's own words, it amended its complaint "to allege additional acts of infringement that occurred prior to and *after*" its initial complaint. [*12] (Id.) Because Abbott's "Amended Complaint" contains allegations regarding events that occurred after August 11, 2005 -- the filing date of the original complaint -- it is governed by *Federal Rule of Civil Procedure 15(d).* Pursuant to *Rule 15(d),* "[u]pon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. *Fed. R. Civ. P. 15(d); see GAF Bldg. Materials Corp. v. Elk Corp. of Dallas, 90 F.3d 479, 483 (Fed. Cir. 1996)* (holding that district court did not abuse its discretion when "adhering to the motion requirement of *Rule 15*"); *Bronson v. Horn,* Civil Action No. 02-663, 2006 U.S. Dist. LEXIS 38791, at *5 (W.D. Pa. June 12, 2006) (dismissing supplemental complaint because it was not filed pursuant to a motion). Accordingly, because Abbott did not file a motion to supplement its complaint in the present case, the court will strike it from the docket for failure to comply with *Rule 15(d).*

### C. Motion to Dismiss for Failure to State a Claim [*13]

Finally, with respect to dismissal, DexCom contends that Count II of Abbott's complaint fails to state a claim for which relief can be granted. According to DexCom, its display of glucose monitoring products at two scientific conferences is exempt under *35 U.S.C. § 271(e)(1).* n4 Therefore, DexCom argues that Abbott has failed to state a claim for patent infringement.

n4 *Section 271(e)(1)* states, in pertinent part:

It shall not be an act of infringe-
ment to make, use, offer to sell, or
sell within the United States or
import into the United States a
patented invention . . . solely for
uses reasonably related to the de-
velopment and submission of in-
formation under a Federal law
which regulates the manufacture,
use, or sale of drugs or veterinary
biological products.

*35 U.S.C. 271(e)(1).*

The purpose of a motion to dismiss pursuant to
*Federal Rule of Civil Procedure 12(b)(6)* is to test the
sufficiency of a complaint, not to resolve disputed facts or
decide [*14] the merits of the case. *See Kost v. Ko-
zakiewicz, 1 F.3d 183 (3d Cir. 1993)*. Thus, in deciding a
motion to dismiss, the factual allegations of the complaint
must be accepted as true. *See Graves v. Lowery, 117 F.3d
723, 726 (3d Cir. 1997); Nami v. Fauver, 82 F.3d 63, 65
(3d Cir. 1996)*. In particular, the court looks to "whether
sufficient facts are pleaded to determine that the com-
plaint is not frivolous, and to provide defendants with
adequate notice to frame an answer." *Colburn v. Upper
Darby Twp., 838 F.2d 663, 666 (3d Cir.1988)*. However,
the court need not "credit a complaint's 'bald assertions' or
'legal conclusions' when deciding a motion to dismiss."
*Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3rd
Cir.1997)*. A court should dismiss a complaint "only if it
is clear that no relief could be granted under any set of
facts that could be proved consistent with the allegations."
*See Graves, 117 F.3d at 726; Nami, 82 F.3d at 65* (both
citing *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99,
2 L. Ed. 2d 80 (1957))*. Thus, in order to prevail, a moving
party must show "beyond [*15] doubt that the plaintiff
can prove no set of facts in support of his claim [that]
would entitle him to relief." *Conley, 355 U.S. at 45-46, 78
S. Ct. 99, 2 L. Ed. 2d 80 (1957))*.

After having reviewed Abbott's complaint, the par-
ties' submissions and relevant case law, the court con-
cludes that DexCom cannot show that "beyond doubt"
there exists "no set of facts" in support of Abbott's patent
infringement claim. The language of *section 271(e)(1)*
exempts potentially infringing activities "if performed
solely for uses reasonably related to the development of
information for FDA approval." *Telectronics, 982 F.2d at
1523*. Here, Abbott's complaint alleges that "[u]pon in-

formation and belief, the [DexCom] products displayed at
the [two] trade shows were manufactured for the purpose
of showcasing at the trade shows rather than for the pur-
pose of gathering information." (Compl. P 17.) Abbott's
complaint, therefore, alleges that DexCom's manufacture
and display of products at scientific conferences or trade
shows falls outside the safe harbor of *section 271(e)(1)*.
Based upon this allegation, and viewing the complaint in
the light most favorable to Abbott, the court is unwilling
to conclude [*16] at this juncture that no relief could be
granted under any set of facts that Abbott could prove
consistent with its patent infringement allegations. n5
Therefore, the court will deny DexCom's motion to dis-
miss Count II of the complaint.

n5 DexCom contends that the facts of the
present case are on "all fours" with the facts of
*Telectronics.* The court, however, finds that
DexCom's reliance is misplaced because, in
*Telectronics,* the Federal Circuit reviewed a dis-
trict court's grant of summary judgment for the
defendant, while here the court must decide a
motion to dismiss. As DexCom well knows, the
standard for granting a motion to dismiss is
markedly different from the summary judgment
standard. When deciding a *Rule 56* motion, the
court reviews "the pleadings, *depositions, answers
to interrogatories,* and *admissions on file,* together
with [any] affidavits," to determine whether "there
is no genuine issue as to any material fact and that
the moving party is entitled to judgment as a
matter of law." *Fed. R. Civ. P. 56(c)* (emphasis
added). In contrast, when deciding a motion to
dismiss, the scope of the court's review is limited
to the complaint. *See Pryor v. NCAA, 288 F.3d
548, 560 (3d Cir. 2002)* ("As a general rule, the
court may only consider the pleading that is at-
tacked by an *FRCP 12(b)(6)* motion in determin-
ing its sufficiency.") Therefore, *Telectronics* is
distinguishable in that the court made its deter-
mination after reviewing a more complete record
than that which the court is permitted to review
here. That is not to say that DexCom could not
successfully attack Abbott's claim at a later stage
of these proceedings. For example if, through
discovery, DexCom adduces facts indicating that
its conduct at the scientific conferences or trade
shows falls within the *section 271(e)(1)* safe har-
bor, the court will likely entertain a motion for
summary judgment at the appropriate time.

[*17]

**D. Motion to Stay**

DexCom has also filed a motion to stay the litigation pending reexamination of the patents-in-suit by the Patent and Trademark Office (the "PTO"). The decision to stay a case is firmly within the discretion of the court. *See Cost Bros., Inc. v. Travelers Indem. Co., 760 F.2d 58, 60 (3d Cir. 1985)*. This authority applies equally to patent cases in which a reexamination by the PTO has been requested. *Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)* (noting that "[c]ourts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.") (internal citations omitted). In determining whether a stay is appropriate, the court's discretion is guided by the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Xerox Corp. v. 3 Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999)* (citing cases); *cf. United Sweetener USA, Inc. v. Nutrasweet Co., 766 F. Supp. 212, 217 (D. Del. 1991)* [*18] (stating a similar test).

In opposing DexCom's motion, Abbott maintains that a stay would prevent it from seeking a preliminary injunction and enforcing its patent rights, thereby unduly prejudicing it and presenting it with a clear tactical disadvantage in the marketplace. The court is not persuaded. First, Abbott's argument is premised on its filing of a motion for preliminary injunction. Abbott, however, did not, and has not, filed any such motion, even though the FDA has recently approved DexCom's glucose monitoring product for marketing. Because Abbott has not filed a motion for preliminary injunction, its arguments relating to the court's rendering of an opinion on such a motion are moot. As such, the only other argument Abbott asserts with respect to undue prejudice is that it will be unable to enforce its patents while in reexamination. Abbott's position, however, assumes that the PTO will leave all of the more than 200 claims of the four patents-in-suit unaltered after reexamination. See *Applera Corp. v. Thermo Electron Corp.*, No. C.A. 04-1230 GMS, (D. Del. Dec. 28, 2005) (04-1230 D.I. 81 P 6). Further, while Abbott may suffer some prejudice from a stay, the court is [*19] not persuaded that a stay would *unduly* prejudice Abbott, or present any clear tactical disadvantage. Accordingly, the first factor militates in favor of granting the requested stay.

With respect to the second factor, Abbott argues that a stay will not simplify the issues, but prolong the litigation. According to Abbott, the only way to avoid prolonging the litigation would be if the reexamination resulted in the PTO invalidating all of the asserted claims of all of the patents-in-suit. The court cannot agree. Contrary to Abbott's position, the court finds that granting the stay

will simplify the issues and focus the litigation. For example, if the PTO determines that some or all of the claims of the of the four patents undergoing reexamination are invalid, then many of the issues in the litigation will become moot. Additionally, it is beyond dispute that the court, as well as the parties, would benefit from a narrowing of the variety of complex issues relating to the numerous claims at issue, which, if clearly defined, would streamline the discovery process and the remainder of the litigation. A stay, therefore, will conserve the resources of the parties and the court, thereby [*20] promoting efficiency. Moreover, the court would not run the risk of inconsistent rulings or issuing advisory opinions. See *Gioello Enters. Ltd. v. Mattel, Inc.,* No. C.A. 99-375 GMS, 2001 WL 125340, at *1 (D. Del. Jan. 29, 2001). The second factor, therefore, weighs in favor of granting the motion to stay.

Finally, the court finds that the third factor it must consider in its determination, i.e. whether discovery is complete and whether a trial date has been set, weighs in favor of granting the motion. In the present case, fact discovery is not scheduled to close until January 31, 2007 and, although already set, the trial is not scheduled to begin until October 9, 2007. n6 Thus, given its findings with respect to the first two factors, the court concludes that the balance of harms weighs in favor of granting a stay of this action. Accordingly, the court will grant DexCom's motion to stay.

n6 See Amended Scheduling Order, D.I. 71 PP 2, 8.

Dated: August 16, 2006

/s/ Gregory M. Sleet

UNITED STATES DISTRICT [*21] JUDGE

**ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

> 1. The defendant's Motion to Dismiss Abbott's Complaint (D.I. 5) is GRANTED in part and DENIED in part. The motion is GRANTED with respect to Count I of Abbott's complaint and DENIED with respect to Count II of Abbott's complaint.

> 2. The court shall dismiss Count I of Abbott's complaint without prejudice.

3. The plaintiff's Motion For Limited Jurisdictional Discovery and for a Corresponding Extension of the Briefing Schedule on DexCom's Motion to Dismiss (D.I. 9) is DENIED as moot.

4. The defendant's Motion to Strike the "Amended Complaint" and Renewed Motion to Dismiss Abbott's Complaint (D.I. 61) is GRANTED in part and DENIED in part. The motion to strike the "amended complaint" is GRANTED and the renewed motion to dismiss is DENIED as moot.

5. The plaintiff's Amended Complaint (D.I. 55) shall be stricken from the court's docket.

6. The defendant's Motion to Stay Pending Reexamination of the Patents-in-suit (D.I. 25) is GRANTED.

Dated: August 16, 2006

/s/ Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

# TAB 3

LEXSEE 2003 U.S. DIST. LEXIS 11917

**ALLOC, INC., a Delaware corporation, et al., Plaintiffs, v. UNILIN DECOR N.V., a Belgian company, et al., Defendants.**

**Civil Action No. 03-253-GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2003 U.S. Dist. LEXIS 11917*

**July 11, 2003, Decided**

**SUBSEQUENT HISTORY:** Motion granted by, Transferred by *Alloc, Inc. v. Unilin Decor N.V., 2006 U.S. Dist. LEXIS 78019 (D. Del., Oct. 26, 2006)*

**DISPOSITION:** [*1] Defendants' motion to stay litigation granted. Plaintiffs' motion to strike portions of answer and complaint dismissed, without prejudice.

**COUNSEL:** For Alloc Inc, Berry Finance NV, Valinge Aluminium AB, PLAINTIFFS: Francis Digiovanni, Connolly, Bove, Lodge & Hutz, Wilmington, DE USA.

For Unilin Decor NV, Quick-Step Flooring Inc, DEFENDANTS: Richard L Horwitz, David Ellis Moore, Potter Anderson & Corroon, LLP, Wilmington, DE USA.

For Unilin Decor NV, COUNTER-CLAIMANT: Richard L Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE USA.

For Unilin Decor NV, Quick-Step Flooring Inc, COUNTER-CLAIMANTS: David Ellis Moore, Potter Anderson & Corroon, LLP, Wilmington, DE USA.

For Alloc Inc, Berry Finance NV, Valinge Aluminium AB, COUNTER-DEFENDANTS: Francis Digiovanni, Connolly, Bove, Lodge & Hutz, Wilmington, DE USA.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Gregory M. Sleet

**OPINION:**

### MEMORANDUM AND ORDER

### I. INTRODUCTION

On March 5, 2003, Alloc, Inc. ("Alloc"), Berry Finance N.V. ("Berry"), and Valinge [*2] Aluminum AB, ("Valinge") (collectively "the plaintiffs") filed a complaint against Unilin Decor, N.V. ("Unilin") and Quick-Step Flooring, Inc. ("Quick-Step") (collectively "the defendants") alleging infringement of *U.S. Patent No. 6,516,579* ("the '579 patent"). The '579 patent is the latest in a series of continuation patents that include *U.S. Patent Nos. 5,706,621* ("the *'621 patent*"), 5,860,267 ("the '267 patent"), 6,023,907 ("the '907 patent"), and 6,182,410 ("the '410 patent").

The '621 patent is currently undergoing reexamination in the United States Patent and Trademark Office ("PTO"). Additionally, the Federal Circuit is considering infringement issues with regard to the '267, '907, and '410 patents after the International Trade Commission ("ITC") rendered a non-infringement decision in favor of Unilin and against the plaintiffs.

Presently before the court is the defendant's motion to stay litigation of the '579 patent pending the completion of both the '621 reexamination proceedings and the Federal Circuit's decision on the '267, '907, and '410 patents. After consideration of each of the factors involved, and for the reasons detailed below, the court will grant the motion [*3] to stay.

### II. BACKGROUND

The parties involved in the present action have attempted to resolve their patent infringement issues in many different forums, both in the United States and in Europe. Specifically, in July 2000, Pergo Inc. ("Pergo"), Unilin's licensee, brought a declaratory action in the District of Columbia with regard to the '267, '907, and '621 patents in response to the plaintiffs' threats of infringement litigation. Pergo additionally filed a request for reexamination of the '621 patent in the PTO. This reexamination is currently ongoing. The plaintiffs subsequently filed a complaint in the Eastern District of Wis-

consin asserting that Pergo and Unilin infringed the '267 and '907 patents. In response, Unilin filed its own declaratory judgment action in the District of Columbia, alleging that its product did not infringe the '267, '907, and '621 patents.

In December 2000, the plaintiffs initiated a proceeding in the ITC asserting that Unilin infringed the '267, '907, and '410 patents. Upon the filing of the ITC action, all of the district court actions between the two parties concerning the alleged infringement of the '267, '907, and '410 patents were stayed [*4] pursuant to *28 U.S.C. § 1659.* In November 2001, an ITC Administrative Law Judge ("ALJ") issued a decision finding that Unilin did not infringe the '267, '907, or '410 patents. The ITC affirmed the ALJ's decision in April 2002. The plaintiffs then appealed to the Federal Circuit, which heard oral argument on that case in March 2003. No decision has yet issued.

In the present case, the '579 patent is the only patent in dispute. However, as the court noted above, it is the latest of the continuation patents that stem from the original '621 patent. The '579 patent has never been reviewed by the PTO, the ITC, or any other court.

## III. DISCUSSION

The decision to stay a case is firmly within the discretion of the court. *See Cost Bros., Inc. v. Travelers Indem. Co., 760 F.2d 58, 60 (3d Cir. 1985).* This authority applies equally to patent cases in which a reexamination by the PTO has been requested. *Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)* (noting that "courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination. [*5] ") (internal citations omitted); *see also Emhart Indus. v. Sankyo Seiki Mfg., 1987 U.S. Dist. LEXIS 15033, 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987)* (recognizing that, "in passing legislation establishing the reexamination proceeding, Congress stated its approval of district courts liberally granting stays within their discretion."); *Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983)* (citing legislative history of reexamination statute).

In determining whether a stay is appropriate, courts are directed to consider the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Xerox Corp. v. 3 Comm Corp., 69 F. Supp.2d 404, 406 (W.D.N.Y. 1999)* (citing cases); *cf. United Sweetner USA, Inc. v. Nutrasweet Co., 766 F. Supp. 212, 217 (D. Del. 1991)* (stating a similar test).

In opposition to the defendants' motion to stay, the plaintiffs first argue that, since the '579 patent itself is not at issue [*6] in the reexamination proceedings, or in the Federal Circuit appeal, there is no need to stay the case before this court. *See* D.I. 21 at 7. The court must disagree because the plaintiffs cannot credibly argue that the patents are not alike in subject matter, as well as in many of their claims. This is so because, in general, "a continuing application is one filed during the pendency of another application which contains at least part of the disclosure of the other application and names at least one inventor in common with that application." *Transco Products, Inc. v. Performance Contracting, Inc., 38 F.3d 551, 555 (Fed. Cir. 1994).* Thus, a continuation application "claims the same invention claimed in an earlier application, although there may be some variation in the scope of the subject matter claimed." *Id.* Indeed, the plaintiffs themselves admit that the patents in question do have some terms in common. *See* D.I. 21 at 10. Therefore, even though the '579 patent does not contain precisely the same claims of the other patents that are under review or reexamination, there is a sufficient correlation among all of the patents for the court to conclude that a [*7] stay is appropriate.

Additionally, with regard to the issue of efficiency, it is beyond dispute that the court would benefit from a narrowing of the numerous complex issues relating to claims, which, if clearly defined, would streamline discovery and subsequent litigation. To this end, the reexamination of the '621 patent will greatly serve the purpose of defining the issues in this case. For example, the court will gain the benefit of the PTO's particular expertise in evaluating the prior art. *See Pegasus Development Corp. v. DirecTV, Inc., 2003 U.S. Dist. LEXIS 8052, 2003 WL 21105073, *2 (D. Del. May 14, 2003)* (citations omitted). Likewise, the court will also benefit from the reexamination process in that (1) many discovery issues relating to prior art may be alleviated; (2) the record of the reexamination likely would be entered at trial; (3) the issues, defenses, and evidence will be more easily limited in pre-trial conferences following a reexamination; and (4) the outcome of the reexamination process may encourage a settlement without further involvement of the court. *Id.* (citations omitted). Such a refinement of the issues will benefit both parties by reducing litigation costs. [*8] *See id.* This approach will also best conserve the court's scarce resources. *See id.* Similar benefits will likewise flow from the Federal Circuit's analysis of the '267, '907, and '410 patents.

The plaintiffs alternatively contend that the motion is premature because the two proceedings that have a potential impact on this case may be decided well before this case reaches the claim interpretation stage. *See* D.I. 21 at 5. However, if the decisions of the PTO and Federal Circuit are imminent, as the plaintiffs suggest, a stay at this time

would not unduly burden their case as the stay would then be of short duration.

Finally, the court notes that discovery in this case has not yet begun, nor has a discovery schedule been entered at this time. Likewise, the court has not yet set a trial date. Therefore, the stay will be entered before any party incurs substantial litigation-related expenses.

## IV. CONCLUSION

In light of the above considerations, the court concludes that a stay at this point in the case would not unduly prejudice the plaintiffs or create for them a clear tactical disadvantage. Indeed, a stay will allow the issues before the court to be further simplified [*9] and defined to the benefit of the parties, as well as the court.

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. The Defendants' Motion to Stay Pending the Reexamination by the U.S. Patent and Trademark Office and Ruling by the United States Court of Appeals for the Federal Circuit (D.I. 15) is GRANTED.

2. The parties shall advise the court of any decision that results from the PTO's re-examination of the '621 patent and any decision that results from the Federal Circuit's consideration of the '267, '907, and '410 patents within thirty (30) days of the date of each decision.

3. The Plaintiffs' Motion to Strike Portions of the Answer and Complaint (D.I. 11) is DISMISSED, without prejudice, and with leave to re-file should it become necessary following the stay.

Dated: July 11, 2003

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

# **TAB 4**

LEXSEE 1987 U.S. DIST. LEXIS 15033

**EMHART INDUSTRIES, INC., Plaintiff, v. SANKYO SEIKI MFG. CO., LTD., Defendant**

**No. 85 C 7565**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*1987 U.S. Dist. LEXIS 15033; 3 U.S.P.Q.2D (BNA) 1889*

**January 30, 1987, Decided**

OPINION BY: [*1]

KOCORAS

OPINION:

MEMORANDUM OPINION

CHARLES P. KOCORAS, UNITED STATES DISTRICT JUDGE

This matter comes before the Court on defendant, Sankyo Seiki's motion to stay the proceedings in this litigation pending a final determination regarding reexamination by the Patent and Trademark Office of the patent in suit. For the reasons stated herein, defendant's motion is granted.

FACTS

This is an action for patent infringement. Plaintiff, Emhart Industries, Inc. ("Emhart"), filed the complaint on August 28, 1985, alleging that defendant, Sankyo Seiki Mfg. Co., Ltd. ("Sankyo Seiki"), has infringed its patent (the "Voland" patent) for a "cam operated program timer" (U.S. Patent No. 3,727,015). No preliminary injunctive relief was sought. The parties have been engaged in discovery for almost one year, including depositions and document production in Japan. The discovery cut-off date of November 30, 1986, has passed, however, no pretrial order is in place and the Court has not considered any trial schedule for this case.

Defendant contends that during recent (September 1986) depositions of plaintiff's in-house patent counsel (Robert F. Meyer) and one of the alleged inventors of the Voland patent [*2] (Kurt Pauker) it discovered that two patents (the "Brown patents") owned by plaintiff, antedated the Voland patent and constituted prior art. The Brown patents were not cited to the Patent and Trademark Office ("PTO") during the prosecution of the Voland patent application. On September 29, 1986, defendant filed a request for reexamination of the Voland patent based, in part, upon the Brown patents. On December 5, 1986, the PTO granted the request on the grounds that it raised "substantial new questions of patentability." Presently pending before the Court is defendant's motion to stay the proceedings in this litigation, filed on December 11, 1986.

DISCUSSION

Reexamination is a relatively new procedure by which any person can request that the PTO reexamine or reevaluate the patentability of an unexpired U.S. patent. *35 U.S.C. § 302.* A request for such a reexamination must be based upon prior art patents or publications which raise "a substantial new question of patentability. Typically, the cited prior art patents or printed publications upon which such a request is based are ones which were not considered by the patent examiner during the processing of the patent application [*3] which resulted in the patent-in-suit. Once a reexamination request is granted, a Patent Examiner who is familiar with the technology involved with the patent conducts the reexamination and is obligated to do so "with special dispatch." *37 C.F.R. § 1.550(a).*

Determining the desirability of a staying district court proceedings pending the outcome of a reexamination proceeding before the PTO resides in the discretion of the district court. Rather than terminating the action, a stay operates to shift to the PTO a significant issue, patent claim validity, involved in the dispute before the Court. Shifting the validity issue to the PTO has many advantages, including:

1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.

2. Many discovery problems relating to prior art can be alleviated by the PTO examination.

3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

4. The outcome of the reexamination many encourage a settlement without the further use of the Court.

5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of [*4] the litigation.

6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.

7. The cost will likely be reduced both for the parties and the Court.

*Fisher Controls Co. Inc. v. Control Components Inc., 443 F. Supp. 581, 582, 196 U.S.P.Q. 817, 818-19 (S.D. Iowa 1977).* n1

> n1 This oft-quoted case was decided under the PTO's reissue proceeding then in effect, which was quite similar to the present reexamination proceeding except that institution of the proceeding could only be requested by the patentee. The advantages of shifting the validity issue to the PTO are the same though in both.

Moreover, in passing the legislation establishing the reexamination proceeding, Congress stated its approval of district courts liberally granting stays within their discretion: n2

The bill does not provide for a stay of court proceedings. It is believed by the committee that stay provisions are unnecessary in that such power already resides with the Court to prevent costly pre-trial maneuvering which attempts to circumvent the reexamination procedure. It is anticipated that these measures provide a useful and necessary alternative [*5] for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner.

H. R. Rep. No. 1307 Part I, 96th Cong., 2d Sess. 4, reprinted in [1980] U.S. Code Cong. & Ad. News 6460, 6463. (Emphasis added). See also *Ingro v. Tyco Industries, Inc., 227 U.S.P.Q. 69 (N.D. Ill. 1985)* (this Court granted a request for a stay of patent litigation pending the outcome of reexamination based, in part, on the above-quoted legislative history); P. Rosenberg, Patent Law Fundamentals § 15.09[3] at 15-167 (2d ed 1986) ("In cases

which have not progressed beyond . . . initial litigation stages, the reexamination procedure should be utilized") (Emphasis added).

> n2 Early versions of what became the reexamination statute expressly provided for a stay of court proceedings. S. 1679, 96th Cong., 1st Sess. § 310 (1979); H. R. 5075, 96th Cong., 1st Sess. § 310 (1979); S. 2446, 96th Cong., 2d Sess. § 310 (1980).

Plaintiff objects to a stay of the proceedings on four grounds. The Court is not persuaded by any of the plaintiff's arguments. First, plaintiff contends that there exists no adequate legal remedy for the loss of jobs [*6] and the possible destruction of its defrost timer business, which losses will allegedly follow from the delay caused by a reexamination proceeding in this case. The Court notes that, notwithstanding plaintiff's argument that monetary damages will not compensate for its losses, this is a suit for money damages and plaintiff has never sought preliminary injunctive relief from the Court. Moreover, it is not altogether clear that an injunction would, in fact, save plaintiff's defrost timer business. Defendant has submitted evidence suggesting that General Electric, defendant's largest customer, terminated Emhart as a supplier of defrost timers for reasons completely unrelated to the present suit.

Plaintiff's second argument is that defendant has delayed unnecessarily in filing its request for reexamination, and thus, its motion for stay should be denied. Plaintiff claims that the facts necessary to establish the defenses set forth in defendant's request for reexamination were known to defendant since November of 1985. In support of this assertion, plaintiff points out that on November 1, 1985, in response to plaintiff's Interrogatory 3(d), defendant indicated that:

All of the claims [*7] in the patent in suit are unenforceable because the patentees failed to draw to the attention of the Examiner of the application from which the subject issued the closest prior art known to the applicants, including the United States Patents Nos. 3,350,606, 3,500,005 [Brown] and 3,553,720 [Brown]. The question of the unenforceability of the patent in suit is under a continuing investigation, and hence this response will be supplemented as necessary. (Emphasis added).

Defendant does not deny that it knew of the Brown patents in November of 1985, nor that it suspected that the patents constituted prior art. However, defendant contends that it did not at that time know, nor could it have known, whether the Brown patents antedated the Voland patent and thus were legally available as prior art. Defendant argues that it was only during the depositions of

Case 1:06-cv-00297-GMS    Document 34    Filed 12/12/2006    Page 22 of 55

Page 3

1987 U.S. Dist. LEXIS 15033, *; 3 U.S.P.Q.2D (BNA) 1889

one of the alleged inventors of the Voland patent and of plaintiff's in-house patent counsel that it was established that the Brown patents actually constituted prior art. The record reflects that defendant promptly filed its request for reexamination after the conclusion of these depositions.

As the Court finds that the [*8] benefits of granting a stay in the present proceedings outweigh the burdens, it need not decide whether the defendant could actually have filed its request at an earlier date. The Court notes that the plaintiff has not alleged, nor is there any evidence to support a finding, that the defendant's request was made solely for the purpose of delaying the litigation. Rather, if defendant is "guilty" of any "crime," it is of dragging its feet in filing its otherwise valid request for reexamination.

Third, plaintiff contends that defendant's motion for stay should not be granted because this case has "substantially progressed." Plaintiff cites to Digital Magnetic Systems Inc. v. Ansley, where the court, while granting the requested stay, cautioned that the reexamination process should not be abused "by applying for reexamination after protracted, expensive discovery or trial preparation." 213 U.S.P.Q. 200, 290 (W.D. Okla. 1982). The Court recognizes that significant, costly discovery has already taken place. However, substantially no trial preparations have been carried out -- there is no pretrial order in place and no trial schedule has been set.

Moreover, it is significant [*9] here that defendant contends that it could not have filed its request for reexamination before it took the depositions of Robert Meyer and Kurt Pauker, whereupon it discovered that the Brown patents actually constituted prior art. The depositions of Pauker and Meyer were originally set for January 28, 1986, and May 19, 1986, respectively, but were postponed, at plaintiff's request, until September 1986. Defendant claims that plaintiff purposely delayed to prohibit defendant from establishing whether or not the Brown patents were legally available as prior art references. Clearly, based on defendant's response to plaintiff's Interrogatory 3(d), plaintiff knew that defendant was investigating the existence of prior art. Whatever plaintiff's reasons were for postponing these depositions, plaintiff will not now be heard to object to defendant's motion for stay on the grounds that too much time has passed since the commencement of this litigation.

Lastly, it should be noted that the same court that decided Digital, has subsequently granted a stay pending reexamination in a case that was much further advanced than the instant case. See Loffland Brothers Co. v. Mid-Western Energy Corp., [*10] 225 U.S.P.Q. 886 (W.D. Okla. 1985) (stay granted after significant discovery, pretrial conference and trial date set). See also Gould v. Control Laser Corp., 705 F.2d 1340, 217 U.S.P.Q. 985

(Fed. Cir. 1983), cert. denied, 104 S.Ct. 343 (1983) (stay granted five years after commencement of litigation and only 20 days before scheduled start of trial). In sum, the Court finds that granting a stay 18 months into this litigation, after admittedly significant discovery, but virtually no trial preparation, will not unduly prejudice the plaintiff, especially in light of the plaintiff's own delay. n3

n3 Plaintiff's reliance on the decision in Antonious Kamata-Ri & Co., Ltd., 205 U.S.P.Q. 294 (D. Md. 1979), for the assertion that this Court should not stay the proceedings in this case because it has been pending for over a year, is misplaced. Antonious may be distinguished from the instant case in that the court in Antonious had access to records of two other forums that had previously examined the validity of the patent in suit, making it less likely that the court would need the PTO's expert opinion. 205 U.S.P.Q. at 295. Moreover, the litigation in Antonious did not involve the issue of prior art. In fact, the court noted that where the issue of prior art was involved, the PTO's opinion could be "invaluable." Id. at 296. Lastly, the court in Antonious was primarily concerned with whether or not it should order the owner to file for reissue, rather than whether a stay should be granted pending reissue examination.

[*11]

Fourth, and finally, plaintiff claims that reexamination proceedings will not "solve anything with finality" because the PTO's decision on the patent's validity is not binding. Mem. Opp. at 5-6. This is simply not so. "A reexamination proceeding may result in the final cancellation of claims from the patent." Manual of Patent Examining Procedure § 2271 (1985). Of course, the patent owner may appeal the PTO's decision to the Board of Appeals and then to the Court of Appeals for the Federal Circuit. 35 U.S.C. § 145. Clearly, however, the end result of the reexamination proceedings will be to simplify the issues and reduce the complexity of trial.

Moreover, if the patent does survive the reexamination proceedings, the defendant has assured the Court that it will not contest the issues decided by the PTO, assuming that the plaintiff has been forthcoming and has cooperated fully during the proceedings. Reply at 13. Thus, a reexamination proceeding in this case may very well resolve significant issues of this litigation with finality. Based on the foregoing, the Court finds that the benefits of granting defendant's motion to stay outweigh the burdens of delay caused by a reexamination [*12] proceeding in this case. n4 Accordingly, defendant's motion to stay all further activities in connection with this action, pending a

1987 U.S. Dist. LEXIS 15033, *; 3 U.S.P.Q.2D (BNA) 1889

final determination in the reexamination proceeding, is granted.

n4 The Court notes in addition that where litigation has been stayed pending reexamination proceedings, the PTO will attempt to expedite

those proceedings. Manual of Patent Examining Procedures § 2286 (1985).

Dated: January 30, 1987

# TAB 5

LEXSEE 1986 U.S. DIST. LEXIS 29761

**ESSEX GROUP, INC. VERSUS SOUTHWIRE COMPANY**

**CIVIL NO. C-85-1923-A**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION**

*1986 U.S. Dist. LEXIS 29761*

**January 31, 1986**

**OPINION BY:** [*1]

O'KELLEY

**OPINION:**

ORDER

Presently before the court is a motion by the plaintiff to compel discovery. Also before the court is the defendant's motion to stay these proceedings pending reexamination by the United States Patent and Trademark Office (PTO) of U.S. Letters Patent No. *3,682,234* (234 patent). This action results from a complaint filed by the plaintiff on March 11, 1985, alleging infringement of the 234 patent by the defendant. The defendant answered, denying infringement of the 234 patent and challenging, inter alia, the validity and enforceability of the 234 patent. The defendant has also asserted several counterclaims against the plaintiff, including two counterclaims for infringement of U.S. Letter Patent Nos. *4,154,571* and *4,156,590* by the plaintiff.

The defendant bases its motion to stay these proceedings upon its recent request to the PTO to reexamine the 234 patent in light of several references which had not been placed before the PTO examiner at the time of the original application for the patent. *35 U.S.C. § § 301*-307. In determining whether a stay is appropriate, the court "must evaluate the possible damage, hardship and inequities to the parties [*2] to the lawsuit and the relationship of the stay to fulfillment of judicial objectives of simplification of the issues in question and trial of the case." *United Merchants & Mfrs. Inc. v. Henderson, 495 F.Supp. 444, 447, 210 U.S.P.Q. 274 (N.D. Ga. 1980)* (citations omitted).

While the defendant has requested a reexamination of the 234 patent by the PTO, it is not incumbent on the PTO to grant defendant's request. Under the procedures established by the PTO for reviewing requests for reex-amination, a decision as to whether to grant defendant's request should have been made on or before January 3, 1986. Defendant's Memorandum in Support of Motion to Stay, pages 8-9, 14 n.17. The court has not been informed by either party whether the PTO has as yet decided on defendant's request and, if so, whether the PTO has granted or denied that request.

The court is aware of the potential benefit of an expedited conclusion of this case which might flow from staying this case pending resolution of a PTO reexamination. The court also takes note that this case is in its earliest stages and that the PTO has developed expedited procedures for handling reexamination such as the one requested. [*3] While several counterclaims are present in this case that will remain unaffected by the reexamination, after balancing the likely benefits of a temporary stay against any potential harms, a stay of these proceedings would work to the advantage of both parties and of the court. The court, however, is also somewhat concerned with the delay in hearing about the PTO's decision of whether or not to grant the defendant's requested reexamination of the 234 patent.

Therefore, the court will issue a stay of these proceedings as to all pending claims and counterclaims either until such time as the PTO denies defendant's request for reexamination of the 234 patent or, should the PTO grant defendant's request, until such time as the court has a hearing on this matter. The parties are directed to notify the court immediately upon learning of the PTO's decision whether or not to grant defendant's requested reexamination. Further, the parties should arrange for a conference with the court as soon as is feasible after the PTO's decision in order to discuss the further course of this case.

The court having granted defendant's motion to stay this case in its entirety, the plaintiff's motion [*4] to compel discovery pursuant to *Fed.R.Civ.P. 37* is moot. Therefore, the court at this time denies plaintiff's motion.

1986 U.S. Dist. LEXIS 29761, *

Accordingly, the court grants defendant's motion to stay these proceedings until such time as the PTO either denies defendant's request for reexamination of the 234 patent or, should the PTO grant defendant's request, until the court hears this matter. The parties are directed to notify the court immediately upon learning of the PTO's decision concerning defendant's request for reexamination. Additionally, the court at this time denies plaintiff's motion to compel discovery.

IT IS SO ORDERED.

# TAB 6



Not Reported in F.Supp.2d                                                                        Page 1

Not Reported in F.Supp.2d, 2001 WL 125340 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**c**
Gioello Enterprises Ltd. v. Mattel,
Inc.D.Del.,2001.Only the Westlaw citation is
currently available.
United States District Court, D. Delaware.
GIOELLO ENTERPRISES LTD., Plaintiff,
v.
MATTEL, INC., Defendant.
**No. C.A. 99-375 GMS.**

Jan. 29, 2001.

Philip A. Royner, Potter, Anderson & Corroon
LLP, Wilmington, DE, James G. Goggin, Verrill &
Dana LLP, Portland, Maine, for Plaintiff, of counsel.
Robert W. Whetzel, Chad M. Shandler, Richards,
Layton & Finger, Wilmington, DE, Peter E. Heuser,
David A. Fanning, Charles H. DeVoe, Kolisch,
Hartwell, Dickinson, McCormick, & Heuser,
Portland, Oregon, for Defendants, of counsel.

*ORDER*

SLEET, J.
**\*1** On June 11, 1999, the plaintiff, Gioello
Enterprises Ltd. ("Gioello"), filed a complaint
against Mattel, Inc. ("Mattel") claiming
infringement of U.S. Patent 4,546,434 (the " '434
patent"). Mattel answered and filed a counterclaim
which Gioello, in turn, answered. Both parties filed
motions which are currently pending. Mattel filed a
request with the U.S. Patent and Trademark Office
(the "PTO") on November 9, 2000 for an
reexamination of claims 1-3 of the '434 patent. The
PTO granted Mattel's request on December 21,
2000, and issued a schedule for statements from the
parties (D.I.104). Currently before the court is
Mattel's motion to stay proceedings pending
reexamination (D.I.84).[FN1] Upon consideration of
the parties' submissions, the court will grant Mattel's
motion and stay the proceedings until further notice.

FN1. Although Mattel filed its motion

before the PTO granted its request, the
court will consider the PTO's actions.

In deciding whether to stay the proceedings, the
court's discretion is guided by the following factors:
(1) whether a stay would unduly prejudice Gioello
or present a clear tactical advantage for Mattel, (2)
whether a stay will simplify the issues, and (3)
whether discovery is complete and whether a trial
date has been set. *See Xerox Corp v. 3Comm Corp.,*
69 F.Supp.2d 404, 406 (W.D.N.Y.1999) (citing
cases); *cf. United Sweetner USA, Inc. v. Nutrasweet
Co.,* 766 F.Supp. 212, 217 (D.Del.1991) (stating a
similar test).

The PTO's recent decision to reexamine the '434
patent will simplify the issues in this case and focus
the litigation. Numerous courts have cited a number
of advantages of granting a stay pending PTO
reexamination: (1) all prior art presented to the
court at trial will have been first considered by the
PTO with its particular expertise, (2) many
discovery problems relating to the prior art can be
alleviated, (3) if patent is declared invalid, the suit
will likely be dismissed, (4) the outcome of the
reexamination may encourage a settlement without
further involvement of the court, (5) the record of
the reexamination would probably be entered at
trial, reducing the complexity and the length of the
litigation, (6) issues, defenses, and evidence will be
more easily limited in pre-trial conferences and (7)
the cost will likely be reduced both for the parties
and the court. *See, e.g., Braintree Laboratories,
Inc.,* Civ. A. No. 96-2459-JWL, 1997 WL 94237, at \*
9 (D.Kan. Feb. 26, 1997); *Hamilton Indus. v.
Midwest Folding Products Mfg.,* Civ. A. No.
89-C-8689, 1990 WL 37642, at \*1- \*2 (N.D.Ill.
March 20, 1990) (citing cases). All of these
potential advantages are present, to some degree, if
the court imposes a stay of the proceedings pending
the outcome of the PTO's reexamination.

Not staying the proceedings runs the risk of
inconsistent adjudications or issuance of advisory

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 2

Not Reported in F.Supp.2d, 2001 WL 125340 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

opinions. Presently, this case is scheduled for trial on April 13, 2001. According to the PTO's order granting the request for reexamination, it is possible that submission of statements will not be complete until April 12, 2001.[FN2] Additionally, the outstanding motions for summary judgment by Mattel claim invalidity and non-infringement-two issues the PTO's decision could render moot. Since the court must decide the summary judgment motions well in advance of trial, it would have to address the arguments raised before the PTO. Such a situation raises resource questions. As one court noted:

> FN2. The PTO's order of December 21, 2000 states that Gioello has up to two months to submit an optional response. If Gioello submits a response, Mattel has up to two months to submit a reply. Since no extensions will be granted, the court believes April 12, 2001-16 weeks from the date of the order is the maximum time allowable for written submissions to the PTO.

**\*2** ... if the parties continue to litigate the validity of the claims in this Court [sic], and the PTO subsequently finds that some or all of the claims in issue here are invalid, the Court [sic] will have wasted time and the parties will have spend additional funds addressing an invalid claim or claims. Thus, although the denial of a stay can have no effect whatsoever on past events, the grant of a stay will maximize the likelihood that neither the Court [sic] nor the parties expend their assets addressing invalid claims.
*Softview Computer Products Corp. and Ergo View Technologies Corp. v. Haworth, Inc.,* No. 97 Civ. 8815 KMW HBP, 2000 WL 1134471, at *3 (S.D.N.Y. Aug. 10, 2000). Since the PTO cannot stay the reexamination once a request has been granted, the court's issuance of a stay is the only way to avoid the potential for conflict. *See Hamilton,* 1990 WL 37642, at *2 (citing *Ethicon, Inc. v. Quigg,* 849 F.2d 1422 (Fed.Cir.1988).

The court finds the prejudice to Gioello is slight, if any. Gioello claims it is prejudiced both by Mattel's

dilatory tactics in not requesting an examination earlier and by it spending money on discovery that is nearly complete. Leaving aside timing arguments, the court finds no merit in this position. First, Gioello is not selling or actively licensing goods or services related to the '434 patent; money damages is an adequate remedy for any delay in redress. Second, both Mattel and Gioello have spent money on discovery. Third, Mattel is entitled by law to request a reexamination. *See* 35 U.S.C. §§ 302-307; 37 C.F.R. § 1.525. The fact that the request was granted means the PTO deems the '434 patent worthy of reexamination. It is not for the court to second guess the PTO's decision to reassess the prior art.

Given the possibility that the PTO's reexamination could materially affect the issues in this case, the court will deny Mattel's motions for summary judgment and Gioello's motion to strike without prejudice.[FN3] Although the could will hold a status conference in late April or early May, 2001, the parties should advise the court of any earlier developments in the PTO's reexamination.

> FN3. Upon the entry of a new scheduling order, the parties are free to re-file their motions.

Therefore, IT IS HEREBY ORDERED that:
1. Mattel's motion to stay the proceeding pending reexamination (D.I.84) is GRANTED. The proceedings are stayed from the date of this order until further notice.
2. Mattel's motion for summary judgment on invalidity (D.I.87) is DENIED without prejudice.
3. Mattel's motion for summary judgement on noninfringement (D.I.89) is DENIED without prejudice.
4. Gioello's motion to strike (D.I.91) is DENIED without prejudice.
5. The parties shall advise the court of any decision that results from the PTO's reexamination of the '434 patent.

D.Del.,2001.
Gioello Enterprises Ltd. v. Mattel, Inc.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 3

Not Reported in F.Supp.2d, 2001 WL 125340 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**


Not Reported in F.Supp.2d, 2001 WL 125340
(D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 7

LEXSEE 2004 U.S. DIST. LEXIS 16812

**MIDDLETON, INC., Plaintiff, vs. MINNESOTA MINING AND
MANUFACTURING COMPANY, Defendant.**

**No. 4:03-cv-40493**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
IOWA, CENTRAL DIVISION**

*2004 U.S. Dist. LEXIS 16812*

**August 24, 2004, Decided
August 24, 2004, Filed**

**DISPOSITION:**    [*1]    Defendant's motion for stay
granted.

**COUNSEL:** For MIDDLETON INC, plaintiff: Joseph A
Grear, George C Summerfield, Keith A Vogt,
STADHEIM & GREAR, CHICAGO, IL. Suzanne J
Levitt, DRAKE UNIVERSITY, DES MOINES, IA.
Jonathan G Bunge, BUNGE LAW FIRM PC, CHICAGO,
IL.

For MINNESOTA MINING AND MANUFACTURING
COMPANY, defendant: David M Swinton, AHLERS &
COONEY PC, DES MOINES, IA. William A Streff, JR,
David Kenneth Callahan, Mary E Zaug, Karen J Nelson,
KIRKLAND & ELLIS LLP, CHICAGO, IL. Kevin H
Rhodes, 3M INNOVATIVE PROPERTIES COMPANY,
ST PAUL, MN.

For MINNESOTA MINING AND MANUFACTURING
COMPANY, counter-claimant: David M Swinton,
AHLERS & COONEY PC, DES MOINES, IA. William
A Streff, JR, David Kenneth Callahan, Mary E Zaug,
Karen J Nelson, KIRKLAND & ELLIS LLP, CHICAGO,
IL. Kevin H Rhodes, 3M INNOVATIVE PROPERTIES
COMPANY, ST PAUL, MN.

For MIDDLETON INC, counter-defendant: Joseph A
Grear, George C Summerfield, Keith A Vogt,
STADHEIM & GREAR, CHICAGO, IL. Suzanne J
Levitt, DRAKE UNIVERSITY, DES MOINES, IA.
Jonathan G Bunge, BUNGE LAW FIRM PC, CHICAGO,
IL.

**JUDGES:** JAMES E. GRITZNER,    [*2]    JUDGE,
UNITED STATES DISTRICT JUDGE.

**OPINION BY:** JAMES E. GRITZNER

**OPINION:**

**ORDER GRANTING DEFENDANT'S MOTION
TO STAY**

This matter is before the Court on Defendant's Mo-
tion to Stay (Clerk's No. 170). Defendant brought the
motion as a result of a recently granted reexamination n1
of the patent-in-suit by the Patent and Trademark Office
("PTO"). Based on Defendant's request for expedited
relief, an oral hearing was held on Friday, August 13,
2004, via telephone. Attorney George C. Summerfield
appeared on behalf of the Plaintiff; attorneys David Cal-
lahan and Karen Nelson appeared on behalf of the De-
fendant. Following the hearing, the Court took the matter
under advisement and finds Defendant's motion is now
fully submitted and ready for ruling.

> n1 While the PTO officially granted an *inter
> partes* reexamination, counsel for Defendant
> noted at the hearing that this was clerical error,
> and the PTO is in the process of rectifying the
> mistake. The reexamination must necessarily be
> *ex parte* due to the age of the patent at issue. This
> change has no effect on the parties' arguments or
> the Court's analysis of the motion to stay.

[*3]

**PROCEDURAL          HISTORY          AND
BACKGROUND FACTS**

The Plaintiff, Middleton, Inc. ("Middleton"), com-
menced this action against the Defendant, Minnesota
Mining and Manufacturing Co. ("3M"), in the United
States District Court for the Northern District of Illinois,
Chicago Division, on October 17, 1996. After much liti-
gation activity in that district, the Honorable James F.

Holderman of the Northern District of Illinois transferred the action to this Court on August 29, 2003. Jurisdiction is proper pursuant to *28 U.S.C. § 1331*, the federal question statute, and *28 U.S.C. § 1338(a)*, as this case arises under the federal patent laws, *35 U.S.C. §§ 101 et seq.*

The lawsuit alleges infringement of a patent held by Middleton, specifically, *U.S. Patent No. 4,944,514* ("the *'514 patent*"), by 3M. Trial is scheduled for the week beginning October 12, 2004. The Court also has three summary judgment motions pending. The first motion was filed by Middleton and pertains to infringement. The second and third motions, filed by 3M, pertain to validity and infringement, respectively. 3M filed an application for reexamination n2 and learned [*4] on July 26, 2004, that the PTO had granted the request. The pending reexamination prompted the current motion to stay, which Middleton has resisted.

> n2 Out of courtesy, 3M made the Court aware of its pending application for reexamination. While the PTO was making its decision, the present action moved forward in accordance with the scheduling order.

## ANALYSIS

3M has moved to stay this matter based on the PTO's granted reexamination of the patent-in-suit. This case has a long and convoluted history even before the present circumstances giving rise to this motion. Prior to even coming to rest before this Court, this action proceeded from the United States District Court for the Northern District of Illinois to the Federal Circuit and back multiple times. Now, the present motion comes after eight years of litigation and with just over two months remaining before trial. Middleton resists the motion based primarily on the short time left for trial and the delay in seeking reexamination. Middleton also contends [*5] 3M lacks the authority to even bring the pending motion.

Briefly, the PTO recently granted n3 3M's request for reexamination of the *'514 Patent* based on the determination that the multiple independent prior art references identified by 3M in its application "raised substantial new questions of the patentability of claims 4-7," the patent claims at issue in the present infringement action. n4 Based upon this determination, 3M contends "it is now highly likely that the PTO will either declare these claims of [the *'514 Patent*] invalid, or require Middleton to narrow the claims to avoid the prior art references." See *Tap Pharm. Prods. v. Atrix Labs., Inc., 2004 U.S. Dist. LEXIS 3684, 2004 WL 422697, at *2 (N.D. Ill. March 4, 2004)* ("There is a significant chance that the PTO will either invalidate this patent or drastically decrease its scope.").

n5 3M contends the result of the reexamination could end or dramatically impact the remaining issues in this case, especially considering the PTO found all 13 references cited in the reexamination patent, either alone or in combination, relevant to patentability. Therefore, 3M requests the Court stay all proceedings in this case pending the outcome [*6] of the reexamination by the PTO. Specifically, 3M argues the stay should be granted because this will allow for the most efficient use of the Court's resources, it will simplify the issues for trial, and it will not unduly prejudice Middleton.

> n3 The determination was mailed by the PTO on July 19, 2004, and received by 3M on July 26, 2004.

> n4 The prior art references identified by 3M consist of the following: *U.S. Patent No. 3,785,102* ("Amos"); *U.S. Patent No. 4,151,319* ("Sackoff"); *U.S. Patent No. 4,543,765* ("Barrett"); *U.S. Patent No. 4,328,274* ("Tarbutton"); Russian Patent Publication SU 1,111,880 ("Shevchenko"); *U.S. Patent No. 3,665,543* ("Nappi"); Japanese Patent Document Sho 61-98834 ("Shirasu"); Unexamined German Patent Application Number 1,809,794 ("Wilson"); *U.S. Patent No. 3,788,941* ("Kupits"); *U.S. Patent No. 2,987,103* ("Yakubik"); *U.S. Patent No. 4,221,620* ("Milne"); *U.S. Patent No. 4,095,340* ("Kingsley"); and *U.S. Patent No. 4,115,917* ("Charon").

> n5 "Generally speaking, the PTO invalidates 10% of the patents it reexamines and amends the claims in 64%." *Tap Pharm. Prods., 2004 U.S. Dist. LEXIS 3684, 2004 WL 422697, at *2.*

[*7]

## A. Statutory Authority to Request a Stay

Middleton first argues that 3M lacks the statutory authority to request a stay. Middleton bases this assertion on an examination of the statutes governing patent reexamination. Pursuant to *section 318* of the Patent Statute,

> Once an order for *inter partes* reexamination of a patent has been issued under section 313, *the patent owner* may obtain a stay of any pending litigation which involves an issue of patentability of any claims of the patent which are the subject of the *inter partes* reexamination order,

unless the court before which such litigation is pending determines that a stay would not serve the interests of justice.

*35 U.S.C. § 318* (emphasis added).

Middleton claims this section clearly limits the rights set forth to those of the patent owner. In contrast, *section 311* of the Patent Statute provides that "*any person* at anytime may file a request for *inter partes* reexamination . . . ." *35 U.S.C. § 311(a)* (emphasis added). When Congress uses different terms in a statute, the presumption is that those terms have different meanings. See *Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 497, 120 L. Ed. 2d 379, 112 S. Ct. 2589 (1992).* [*8] Therefore, according to Middleton, while "any person" may file an *inter partes* reexamination request, only "the patent owner" may seek a stay of litigation once such a request is granted.

Further, courts generally refer to *Federal Rule of Civil Procedure 1* ("*Rule 1*"), allowing for "the just, speedy, and inexpensive determination of every action," when reciting their authority to grant a stay of proceedings. See, e.g., *W. Tenn. Chapter of Associated Builders & Contractors, Inc. v. City of Memphis, 138 F. Supp. 2d 1015, 1029 (W.D. Tenn. 2000).* Regulations cannot, however, trump the plain language of conflicting statutes. *Ellis v. GMAC, 160 F.3d 703, 709 (11th Cir. 1998)* (quoting *Robbins v. Bentsen, 41 F.3d 1195, 1198 (7th Cir. 1994)*); see also *Caldera v. J.S. Alberici Constr. Co., 153 F.3d 1381, 1383 n.** (Fed. Cir. 1998)* (finding that "statutes trump conflicting regulations"). Because the relevant statute provides that "the patent owner" can ask for a stay in the event of an *inter partes* reexamination, Middleton contends that *Rule 1* does not [*9] give the Court the broader authority to grant such a request by 3M, which is not the patent owner.

This contention is easily resolved as Middleton disregards the Court's inherent discretionary power to issue a stay. See *Softview Computer Prods. Corp. v. Haworth, Inc., 2000 U.S. Dist. LEXIS 11274, 2000 WL 1134471, at *2 (S.D.N.Y. Aug. 10, 2000)* (finding "there is no question that a district court in which an infringement action has been filed has the discretion to stay the infringement action pending the outcome of the reexamination proceeding") (citing *Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)*); see also *Robert H. Harris Co. v. Metal Mfg. Co., 1991 U.S. Dist. LEXIS 16086, 1991 WL 217666, at *3 (E.D. Ark. June 21, 1991)* ("Whether the action should be stayed pending the outcome of the re-examination proceeding before the PTO resides in the discretion of the court."). The Court has this discretion even though the reexamination procedure does not expressly provide for an automatic stay of parallel district

court proceedings. *Softview Computer Prods. Corp., 2000 U.S. Dist. LEXIS 11274, 2000 WL 1134471, at *2* (citations omitted); see also *Grayling Industries v. GPAC, Inc., 1991 U.S. Dist. LEXIS 16750, 1991 WL 236196, at *1 (N.D. Ga. March 25, 1991)* [*10] ("The decision whether to stay proceedings in district court while a reexamination by the PTO takes place, while not vested expressly in the discretion of the district court by the statute, has been recognized to be within the district court's inherent discretionary power.").

As the courts have recognized, "Congress stated its approval of district courts liberally granting stays within their discretion" when the committee stated "'it is believed by the committee that *stay provisions are unnecessary in that such power already resides with the Court* . . . .'" Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., 1987 WL 6314, at *2 (quoting H.R. Rep. No. 1307 Part I, 96th Cong., 2d Sess. 4, reprinted in 1980 U.S. Code Cong. & Ad. News 6460, 6463 (emphasis added)); see also *Fisher Controls Co. v. Control Components Inc., 443 F. Supp. 581, 581 (S.D. Iowa 1977)* ("The district court's power to stay proceedings has been drawn purposefully broad and is discretionary."). Indeed, "courts have routinely stayed infringement actions pending the outcome of reexamination proceedings," *Softview Computer Prods. Corp., 2000 U.S. Dist. LEXIS 11274, 2000 WL 1134471, at *11* (citations omitted), and Middleton has cited to no authority supporting the limitation it asserts. Accordingly, this Court finds it has the authority to issue a stay in the present matter if the circumstances weigh in favor of staying the proceedings. See *Gould v. Control Laser Corp., 705 F.2d 1340, 1341-42 (Fed. Cir. 1983).* n6

n6 In addition, as noted in footnote 1, this is an *ex parte* reexamination, while the statutes relied on by Middleton in raising this argument apply to *inter partes* reexaminations.

**B. Standard for Motion to Stay**

Generally, courts consider the following factors in determining whether to grant a stay: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Softview Computer Prods. Corp., 2000 U.S. Dist. LEXIS 11274, 12000 WL 1134471, at *2-3* (quoting [*12] *Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999)* (citations omitted)). In other words, based on these factors the Court determines whether the benefits of a stay outweigh the associated costs.

The advantages that may result from a stay of the district court proceedings pending completion of reexamination by the PTO include,

> "1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.
>
> 2. Many discovery problems relating to prior art can be alleviated by the PTO examination.
>
> 3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.
>
> 4. The outcome of the reexamination may encourage a settlement without the further use of the Court.
>
> 5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.
>
> 6. Issues, defenses, and evidence will be more easily limited in pretrial conferences after a reexamination.
>
> 7. The cost will likely be reduced both for the parties and the Court."

Emhart Indus., Inc., 1987 WL 6314, at *2 (quoting *Fisher Controls Co., 443 F. Supp. at 582 (S.D. Iowa 1977)). [*13] n7 Reexamination may result in the elimination of most, if not all, of the issues remaining in the pending litigation. See *Gould, 705 F.2d at 1342.* If not found invalid, the reexamination will at least likely result in a narrowing and simplifying of the issues before the Court. n8 See Loffland Bros. Co. v. Mid-Western Energy Corp., 1985 WL 1483, at *2 (W.D. Okla. Jan. 3, 1985). In addition, the technical expertise provided by the reexamination proceeding will be helpful to the Court on any issues that remain. See *Gould, 705 F.2d at 1342.*

> n7 "Although not binding on the Court, the PTO's determination will be admissible and will carry a presumption of validity." *Ralph Gonnocci Revocable Living Trust v. Three M Tool & Mach. Co., 68 U.S.P.Q.2d 1755, 1759 (E.D. Mich. 2003).*

> n8 This is because the scope of the patent claims, which the PTO may narrow or otherwise

limit, controls the outcome of any subsequent infringement analysis. See *Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 1344 (Fed. Cir. 2002)* (finding "an assessment of whether an accused device infringes claims of a patent necessarily involves both an identification and interpretation of the asserted claims, and a comparison of the properly interpreted claim limitations to the elements of the accused device").

[*14]

Plaintiff makes three primary arguments against issuance of a stay. First, Middleton argues the issuance of a stay will not promote judicial economy. Second, Middleton urges the Court to deny the stay based on 3M's delay in filing for reexamination. Third, Middleton contends it will be prejudiced if the stay is granted. In the alternative, if the Court determines a stay is warranted, Middleton requests the Court grant a stay only as to those issues before the PTO. Each of these contentions is summarized and discussed below.

### 1. Judicial Economy

Both parties accept that one factor in determining the propriety of a stay of proceedings in the face of reexamination is the judicial economy that such stay would promote. Middleton contends that, contrary to 3M's assertions, a stay would not promote judicial economy at all in this case because of the amount of preparation by the parties thus far. This matter has now been pending for eight years, and that fact alone would seem to argue strongly against a stay. However, despite the lengthy pendency of this matter in the Northern District of Illinois, the validity of the *'514 patent* has only been explored by the parties for a little over [*15] a year, in isolation hardly an unusual period of time for development of such issues.

According to Middleton, the court in Toro Co. v. L.R. Nelson Corp. ruled a stay was unwarranted under similar circumstances.

> This suit has been pending in litigation for almost 3 1/2 years. Before the motion for stay was filed, the court had under advisement a motion by defendant for summary judgment, which may well be dispositive of the issue of validity of asserted claims 14 and 15. Those factors militate against a stay at this stage of the proceedings.

> The pendency of this suit does not necessarily preclude any further proceedings which the Patent Office may choose to

pursue. It is the opinion of the court that its granting of a stay order would accomplish little, other than the delay of disposition of a suit which has, until now, run an overly protracted course.

*Toro Co. v. L. R. Nelson Corp., 223 U.S.P.Q. 636, 638 (C.D. Ill. 1984).*

Middleton contends that the factual circumstances impacting judicial economy in Toro and in the present case are vastly different than those involved in the cases cited by 3M. See *Tap Pharm. Prods., 2004 U.S. Dist. LEXIS 3684, 2004 WL 422697, at *1* [*16] ("Plaintiffs have known from the start of this case three months ago that the pending reexaminations could create grounds for a stay. As of yet, this case has not progressed beyond the initial pleadings stage; the parties have not engaged in any discovery and have not filed any other substantive motions."); *Ralph Gonnocci Revocable Living Trust, 68 U.S.P.Q.2d at 1758* ("This action has been pending for less than a year. Undoubtably the parties have spent considerable time and resources thus far - substantial discovery has been conducted and the parties have submitted witness lists and three lengthy summary judgment motions. Yet far more time and resources remain to be spent before this matter is concluded. Two responses to motions for summary judgment must be submitted, the Court has not begun to review those motions, and much remains to be done by the parties and the Court to prepare this case for trial."); *Softview Computer Prods. Corp., 2000 U.S. Dist. LEXIS 11274, 2000 WL 1134471, at *3* ("Although there has been a great deal of activity in this litigation to date, much remains to be done before the case is ready for trial. Discovery is not yet completed, extremely voluminous [*17] summary judgment motions have been served, the Markman hearing has not yet been held and the Pretrial Order has not yet been prepared."); *Robert H. Harris Co., Inc., 1991 U.S. Dist. LEXIS 16086, 1991 WL 217666, at *4* ("This action has been pending less than a year. Although it is set for trial next month, the Court is not persuaded that this a case which has 'run an overly protracted course' . . . The parties appear not to have engaged in expensive discovery or extensive pretrial preparation") (citations omitted); Emhart Indus., Inc., 1987 WL 6314, at *3 (noting that "substantially no trial preparations have been carried out -- there is no pretrial order in place and no trial schedule has been set"). Arguably, none of these cases was at the stage of litigation that the present case indicates.

In the present action, all summary judgment motions have been fully briefed, and discovery appears essentially complete. Accordingly, Middleton claims a stay at this point would do little to serve the interests of judicial economy, and would only have the effect of further delaying final resolution of this matter, which has already been pending far too long.

Additionally, Middleton [*18] contends 3M's reliance in part on Standard Havens Products, Inc. v. Gencor Industries, Inc. is misplaced as Middleton does not base its opposition to the present motion to stay on the proposition found to be faulty. See *Standard Havens Prods. v. Gencor Indus., 996 F.2d 1236, 1993 WL 172432, at *1 (Fed. Cir. May 21, 1993)* (reversing the lower court's decision denying a stay, as such decision was based upon the obviously incorrect proposition that a "reexamination decision can have no effect on this infringement suit even if the reexamination decision becomes final."). n9

> n9 Middleton also notes that this decision is unreported and, as such, "shall not be employed as precedent by this court, and may not be cited by counsel, except in support of a claim of res judicata, collateral estoppel, or law of the case." *Fed. Cir. R. 47.8.* However, the decision is relevant not as precedent but to demonstrate the final result of issues similar to those in the present case.

At least one court [*19] found the fact that discovery is complete and the case set for trial has been found to be the most compelling reason to justify denial of a motion to stay pending reexamination by the PTO. See *Enprotech Corp. v. Autotech Corp., 1990 U.S. Dist. LEXIS 2926, 1990 WL 37217, at *1-2 (N.D. Ill. March 16, 1990)* (finding these factors the most compelling and concluding the action was "too far along the road to justify halting the journey while the defendant explores an alternate route" in denying the motion to stay). Likewise, this is the most compelling argument made by Middleton in resisting the pending motion to stay.

In the present case, the litigation has been ongoing for over eight years. n10 The trial date is set and is scheduled for the week of October 12, 2004. In addition, several motions for summary judgment remain pending that may be dispositive of some or all of the issues remaining in the case. Discovery is completed, and the parties are most likely well into their trial preparation. Thus, the parties have already spent a considerable amount of time and money on the pending litigation. On its face, these facts seem to weigh against granting a stay.

> n10 As indicated in the text, most of the history of this case occurred in the Northern District of Illinois and the Federal Circuit through litigation activities promoted by both parties. The issue

now before the Court is of much more recent vintage.

[*20]

However, these facts should be weighed against the benefits of issuing a stay. As argued by 3M, the following factors weigh in favor of issuing a stay: (1) a stay will be the most efficient use of judicial resources by preventing duplication of effort; (2) the reexamination may simplify and narrow the issues in the case; and (3) the Court will be able to benefit from the expertise of the PTO. Moreover, a stay issued pending reexamination "is not for such a protracted or indefinite period" as reexamination proceedings are to "'be conducted with special dispatch.'" n11 Gould, 705 F.2d at 1341 (quoting 35 U.S.C. § 305). Thus, while some courts have denied a stay based on the end of discovery and the proximity of trial, see Toro Co., 223 U.S.P.Q. at 638; Enprotech Corp., 1990 U.S. Dist. LEXIS 2926, 1990 WL 37217, at *2, the ultimate determination is within the Court's discretion based on a weighing of the benefits of issuing a stay versus any added expenses resulting from the stay.

> n11 One study listed the average pendency of a reexamination to be 19 months. See Note, "Reexamination Reality: How Courts Should Approach a Motion to Stay Litigation Pending the Outcome of Reexamination", 66 Geo. Wash. L. Rev. 172, 192 app. A (Nov. 1997). This note is, however, over seven years old, and the parties were unable to indicate to the Court whether this estimate is accurate, though Defendant's counsel thought, but could not state definitively, that the average pendency has been shortened.

[*21]

In the present action, the Court finds the element of judicial economy does in fact weigh in favor of granting the motion to stay. First, a stay would preserve the costs of a trial on the merits that may be obviated by the results of the reexamination. Second, even if a trial is ultimately required, the Court can have all issues heard in one trial on the proper scope of the patent claims. In addition to limiting the issues at trial, the reexamination decision may also limit the issues in the currently pending dispositive motions. Finally, the Court will be able to use the expertise of the PTO in making further determinations as related to the proper patent claims. In that regard, the Court is influenced by the breadth of the reexamination and the number of prior art references under active review.

The Court acknowledges the considerable expense already endured by the parties in the present action but notes that these costs will not be recouped by denying a stay and proceeding to a trial. This may actually compound the parties' expenses if some or all of the issues need to be retried later as a result of the reexamination. In addition, the Court disagrees with Middleton's contention [*22] that only incremental resources will be expended if the action proceeds to trial. It is simply not efficient to rule on three motions for summary judgment, complete pretrial, and hold a full jury trial if all or part have to be redone. The apparent scope of the reexamination, the technical expertise of the PTO, and the relationship to the issues in this case suggest to the Court a great likelihood that the continuing work of this Court would be impacted by the reexamination. The judicial efforts that a stay would preserve outweigh any additional cost in staying the proceedings even at this late juncture.

## C. Filing for Reexamination

Middleton also argues that 3M's delay in filing reexamination warrants denying the motion. As noted above, 3M did not seek reexamination of the patent-in-suit until well after the commencement of the litigation. In addition, one of the references upon which 3M relied in seeking reexamination was one of its own patents. Under these circumstances, Middleton contends that it is an inevitable conclusion that 3M delayed unduly in seeking reexamination. n12

> n12 Middleton avers this is not the first time that 3M has used the reexamination procedure to engage in delay. For proof, Middleton cites to the decision in Freeman v. Minnesota Mining & Mfg. Co., in which the court, apparently anticipating a motion to stay from 3M, had the following to say:

>> Though not before the Court, it seems worthwhile to state the Court's view on granting a stay of court proceedings pending the PTO reexamination. In Digital Magnetic, the court commented that 'parties should not be permitted to abuse the [reexamination] process by applying for reexamination after protracted, expensive discovery or trial preparation.' . . . Discovery was concluded in this case seven months ago, and the first of the two suits was filed two and a half years ago. Moreover, 3M knew about all three of the documents on which its reexamination petition will be based no later than August 8, 1986. To allow 3M to now use the re-

examination process to get this case stayed would be to allow a defendant to use the reexamination as a mere dilatory tactic.

*Freeman v. Minnesota Mining & Mfg. Co., 661 F. Supp. 886, 888 (D. Del. 1987)* (citations omitted). However, 3M's actions in another case are not relevant to the present action, especially considering the court's statement in Freeman was *anticipatory* and not in reaction to any actual motion to stay filed by 3M, let alone any proof that 3M was so moving for the purpose of delaying or unduly protracting the litigation. 3M's motion in the present case will be analyzed on its own merits and under the circumstances of the present action.

[*23]

Courts have generally considered a delay in seeking reexamination in evaluating the propriety of a stay in light of such reexamination. Indeed, "the potential for abuse inherent in granting a stay where the petition for reexamination comes very late and without explanation is apparent." *Grayling Industries, 1991, U.S. Dist. LEXIS 16750, 1991 WL 236196, at *2.* For example, in Enprotech Corp., the defendant first raised the question of reexamination and an associated stay some 18 months after the commencement of litigation and four months before trial. *Enprotech Corp., 1990 U.S. Dist. LEXIS 2926, 1990 WL 37217, at *1.* That court, in denying the motion to stay, stated "we are too far along the road to justify halting the journey while the defendant explores an alternate route." *Id. at *2;* see also *Toro Co., 223 U.S.P.Q. at 638* (denying stay given three and a half year delay).

Middleton asserts again that the authority cited by 3M in support of granting a stay is inapposite on this issue. In Emhart Industries, Inc., the court found that although there was a delay in filing reexamination, that delay was the fault of the patentee in postponing needed discovery regarding the prior [*24] art. Emhart Indus., Inc., 1987 WL 6314, at *3 ("Whatever plaintiff's reasons were for postponing these depositions, plaintiff will not now be heard to object to defendant's motion for stay on the grounds that too much time has passed since the commencement of this litigation.").

With regard to the other authority cited by 3M, in no instance was the delay between the commencement of the suit and the request for reexamination nearly as long as in this case. See *Tap Pharm. Prods., 2004 U.S. Dist. LEXIS 3684, 2004 WL 422697, at *1* (reexamination requests were filed before the lawsuit began); *Ralph Gonnocci Revocable Living Trust, 68 U.S.P.Q.2d at 1756* (request for reexamination filed within two months of the defendant's counsel's notice of appearance, and within eight months of commencement of suit); *Robert H. Harris Co., 1991 U.S. Dist. LEXIS 160861991 WL 217666, at *4* (request for reexamination filed within one year of commencement of suit); Loffland Bros. Co., 1985 WL 1483, at *1 (request for reexamination filed within one year of commencement of suit); Gioello Enterprises Ltd. v. Mattel, Inc., 2001 WL 125430, at *1 (D. Del. Jan. 29, 2001) [*25] (request for reexamination filed within 18 months of commencement of suit); *Grayling Indus., Inc., 1991 U.S. Dist. LEXIS 16750, 1991 WL 236196, at *1* (reexamination request filed within two years of commencement of suit). n13

n13 It is unclear in the Softview Computer decision, also relied upon by 3M, how much time elapsed between the commencement of suit and the reexamination request. *Softview Computer Prods. Corp., 2000 U.S. Dist. LEXIS 11274, 2000 WL 1134471, at *1.*

3M seeks to justify its delay in filing for reexamination by arguing there was a discovery stay in place as to validity that was "implicitly" lifted on March 11, 2003. Middleton counters by stating that, in the first place, the prior art upon which 3M based its request for reexamination was not the result of any discovery efforts engaged in by 3M and that 3M has not taken a single deposition on the subject prior art after such art was identified. Middleton asserts that 3M could have filed for reexamination at the PTO at any time, notwithstanding any discovery stay [*26] imposed by a district court. Finally, even if 3M was somehow impeded by a discovery stay, it still took 3M over a year after the stay was "implicitly" lifted to file its reexamination request. Middleton contends that under the circumstances of the present case, a one-year delay is inexcusable, and 3M should not be allowed to benefit from its delay.

Middleton seemingly misses the point in arguing 3M's delay warrants denial of the motion to stay. More important than when the reexamination application was made is the purpose behind said application. Thus, instead of looking solely at when the application was made with regard to the pending litigation, the Court looks at whether the petition for reexamination was made with a dilatory purpose. See *Grayling Indus., Inc., 1991 U.S. Dist. LEXIS 16750, 1991 WL 236196, at *2-3;* Emhart Indus., Inc., 1987 WL 6314, at *3. While the timing of the application is relevant in making this determination, the Court also looks to the proffered reasons for the delay. See *Ralph Gonnocci Revocable Living Trust, 68 U.S.P.Q.2d at 1758* ("Plaintiff may be correct that [defendant] did not act swiftly in seeking reexamination.

2004 U.S. Dist. LEXIS 16812, *

Nothing [*27] in the record, however, indicates when [defendant] became aware of the prior art which is the basis for his request for reexamination. . . . Thus the Court cannot conclude that [defendant] unnecessarily delayed seeking a reexamination or that he is doing so now to stall this litigation."); *Grayling Indus., Inc., 1991 U.S. Dist. LEXIS 16750, 1991 WL 236196, at *3* (finding that "although it is not clear that Plaintiffs had good reason for the delay in petitioning the PTO for reexamination, neither has Defendant shown such egregiously dilatory conduct as would justify short-circuiting the reexamination procedure now that Plaintiff's have invoked it"). Moreover, if "the Court finds that the benefits of granting a stay in the present proceedings outweigh the burdens, it need not decide whether the defendant could actually have filed its request at an earlier date." Emhart Indus., Inc., 1987 WL 6314, at *3.

In the present action, Middleton has presented no evidence, beyond pointing out that one of the prior art references asserted by 3M was its own patent, that indicates 3M had knowledge of the prior art and could have made the request for reexamination much earlier. Due to the [*28] stay of discovery on issues related to the validity issue, 3M was not actively pursuing this issue. n14 Significantly, 3M had won a judgment of non-infringement on two different occasions in the Northern District of Illinois. Accordingly, 3M may have had little reason to pursue the issue of validity until the stay on discovery was lifted. 3M also argues that under the last decision from the Federal Circuit, the construction of the claims at issue was significantly broadened.

> n14 Middleton argues that 3M did not have its hands tied by the Illinois court but instead put all its eggs into the infringement basket, holding in abeyance any argument on validity even though 3M has alleged validity from the beginning.

The record indicates it was not until this decision, and the subsequent course of the proceeding, that 3M began to actively pursue the validity issue. In May 2003, 3M received information pursuant to discovery that was relevant to this issue. Based on this information, 3M was able to gather additional information. [*29] Upon determining the validity of the *'514 patent* was an issue, 3M drafted the reexamination application, notified the Court, submitted a motion for summary judgment on validity, and, as soon as the reexamination was granted, moved for a stay. The Court finds it is not unreasonable under all of the unique circumstances of this case that it took 3M nearly a year from this time to file for reexamination, particularly in light of the numerous prior art references discovered, both domestic and foreign.

The Court finds that any delay in filing for reexamination is not cause to deny the motion to stay. While 3M may be guilty of focusing too much attention on the infringement issue, it was led on that course by the proceedings in the action. As soon as validity became a very real issue, 3M did not unduly delay in moving for reexamination. Moreover, there is no evidence that 3M has moved for a stay solely for a dilatory purpose beyond Middleton's argument to the contrary.

**D. Prejudice to Middleton**

Pursuant to *section 318* of the Patent Statute, a court is not to issue a stay if it "would not serve the interests of justice." *35 U.S.C. § 318*. Middleton contends [*30] that because of the prejudice it would incur should a stay be granted, such interests would not be served. When Middleton first filed suit against 3M, the patent in suit had more than a decade of useful life remaining, whereas now it is due to expire in less than three years. If 3M's proposed stay is granted, Middleton claims that it is likely that there will be no life remaining in the patent in suit in the event this matter is revived following reexamination; however, this fact alone is not sufficient to deny the motion to stay. See *Tap Pharm. Prods., 2004 U.S. Dist. LEXIS 3684, 2004 WL 422697, at *1* (dismissing plaintiff's argument that patent may expire thereby depriving them of any injunctive remedy because patent may still expire before trial is completed).

3M answers by stating that monetary compensation is sufficient to remedy infringement. Middleton disagrees and asserts that while it has no intention of commer-cializing the *'514 patent*, it would be deprived of its right to exclude others under the patent, stating that 3M's position would be tantamount to a compulsory license for using the patented invention. The Federal Circuit has found this to be an inadequate remedy for infringement. [*31] See, e.g., *Reebok Int'l, Ltd. v. Baker, Inc., 32 F.3d 1552, 1557 (Fed. Cir. 1994); Hybritech Inc. v. Abbott Lab., 849 F.2d 1446, 1456-57 (Fed. Cir. 1988)*. According to Middleton, because it stands to lose its ultimate remedy for patent infringement in the event 3M's proposed stay becomes a reality, Middleton will be severely prejudiced by such a stay, and this warrants denial of 3M's motion.

At present Middleton is not, however, selling or marketing products under its patent. Indeed, it has never done so and thus has no market to protect. Under similar circumstances, a district court found "money damages is an adequate remedy for any delay in redress" where the patentee was not "selling or actively licensing goods or services related to" the patent in suit. Gioello Enterprises Ltd., 2001 WL 126350, at *2; see also Emhart Indus., Inc., 1987 WL 6314, at *2 (finding that "notwithstanding plaintiff's argument that monetary damage will not com-

pensate for its losses, this *is* a suit for money damages and plaintiff has never sought preliminary injunctive relief from the Court").

Middleton is not currently selling products [*32] related to the patent in issue and would be entitled to any money damages if infringement is ultimately found. Ultimately, the Court finds this is sufficient to protect Middleton from suffering any undue prejudice or a clear tactical disadvantage. Should the action proceed to trial following reexamination, the Court may still order appropriate injunctive relief. In addition, Middleton would be entitled to money damages if proven, and there is no immediate danger of not being able to collect said damages from 3M.

### E. Alternatively, Granting Stay Solely on Issues Before the PTO

In the alternative, if the Court issues a stay in light of the reexamination, Middleton urges that the stay be limited to those issues pending before the PTO as part of the reexamination proceedings, i.e., anticipation and obviousness. Thus, the issues of infringement, willfulness, damages, and inequitable conduct would continue before the Court under Middleton's plan. Under this proposal, any judgment would not become final until the PTO has ruled on the reexamination and the parties' appeal rights have been exhausted unless the Court makes the judgment final as to those issues tried, n15 thereby entitling [*33] the parties to appeal the judgment immediately.

n15 See *Fed. R. Civ. P. 54(b)*.

As concerns the issue of validity, 3M's request was for a reexamination proceeding pursuant to Chapter 30 of the Patent Statute. Pursuant to *section 315* of the Patent Statute,

> A third party requester whose request for an *inter partes* reexamination results in an order under section 313 is estopped from asserting at a later time, in any civil action arising in whole or in part under section 1338 of title 28, the invalidity of any claim finally determined to be valid and patentable on any ground which the third party requester raised or could have raised during the *inter partes* reexamination proceeding.

*35 U.S.C. § 315(c)*. In other words, in the event the PTO finds the subject claims patentable, 3M would be estopped

from returning to court to re-argue validity of those claims. Therefore, Middleton contends that staying only those issues before the [*34] PTO would be a practical solution that would provide Middleton with more timely relief on the remaining issues.

The PTO's reexamination could, however, affect more than just the validity issues before the Court. Indeed, a PTO decision that the *'514 Patent* is invalid could render moot the issues of validity *and* infringement. See Gioello Enterprises Ltd., 2001 WL 125340, at *1 (finding the PTO's decision could render moot the issues of non-infringement and invalidity before the court in pending motions for summary judgment); *ASCII Corp. v. STD Entertainment USA, 844 F. Supp. 1378, 1380-81 (N.D. Cal. 1994)* (finding stay was justified because if claims were cancelled in reexamination then the need to try the infringement issue would be eliminated); Loffland Bros. Co., 1985 WL 1483, at *2 ("The reexamination procedure has the potential to eliminate trial on the issue of patent infringement, should all of the patent's claims be cancelled."). "In addition, if a final decision of unpatentability means the patent was void *ab initio*, then damages would also be precluded." *Standard Havens Prods., 996 F.2d 1236, 1993 WL 172432, at *1* [*35] . The issues of inequitable conduct and willfulness may not be impacted by the PTO's determination, see *Enprotech Corp., 1990 U.S. Dist. LEXIS 29261990 WL 37217, at *1* (finding reexamination would not affect the inequitable conduct claim at issue), though to only proceed on these two issues would not serve the interests of justice. Therefore, the Court finds it would not be appropriate to stay only a portion of the pending issues.

### CONCLUSION

For the foregoing reasons, the Court hereby **grants** Defendant's Motion to Stay the Proceedings Pending Reexamination of *U.S. Patent No. 4,944,514* by the Patent and Trademark Office (Clerk's No. 170). The Court finds a high likelihood that results of the PTO's reexamination would have a dramatic effect on the issues before the Court, up to and including dismissal of the entire action if the patent claims are found to be unpatentable. In any event, the Court will benefit from the PTO's expertise and determination on reexamination, and Middleton will not be unduly prejudiced by the stay. Thus, under the unique circumstances of this case the Court finds the benefits of issuing the stay outweigh the arguments made by Middleton in resistance to [*36] the motion.

**IT IS SO ORDERED.**

Dated this 24th day of August, 2004.

JAMES E. GRITZNER, JUDGE

UNITED STATES DISTRICT COURT

# TAB 8

LEXSEE 2005 U.S. DIST. LEXIS 34067

**W. DAVID MOTSON, Plaintiff, v. FRANKLIN COVEY CO., Defendant.**

**Civil No. 03-1067 (RBK)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY, CAMDEN VICINAGE DIVISION**

*2005 U.S. Dist. LEXIS 34067*

**December 16, 2005, Decided**
**December 16, 2005, Filed**

**NOTICE:** [*1] NOT FOR PUBLICATION

**PRIOR HISTORY:** *Motson v. Franklin Covey Co., 2005 U.S. Dist. LEXIS 25169 (D.N.J., Oct. 24, 2005)*

**COUNSEL:** For W. DAVID MOTSON, Plaintiff: NORMAN ELLIOT LEHRER, CHERRY HILL, NJ.

For FRANKLIN COVEY CO., Defendant: ANTHONY J. DIMARINO, MCSHEA TECCE, P.C., PHILADELPHIA, PA.

For FRANKLIN COVEY CO., Counter Claimant: ANTHONY J. DIMARINO, MCSHEA TECCE, P.C., PHILADELPHIA, PA.

For W. DAVID MOTSON, Counter Defendant: NORMAN ELLIOT LEHRER, CHERRY HILL, NJ.

For W. DAVID MOTSON, Counter Claimant: NORMAN ELLIOT LEHRER, CHERRY HILL, NJ.

For AFFINITY INC., Counter Defendant: ANTHONY J. DIMARINO, MCSHEA TECCE, P.C., PHILADELPHIA, PA.

**JUDGES:** ROBERT B. KUGLER, United States District Judge.

**OPINION BY:** ROBERT B. KUGLER

**OPINION: KUGLER,** United States District Judge:

This matter comes before the court upon motion by Defendant Franklin Covey Co. to stay proceedings in the above-captioned case pending reexamination of the patent-in-suit by the Patent and Trademark Office ("PTO").

For the reasons set forth below, the Court will grant Defendant's motion.

A trial court may exercise its discretion in deciding whether to stay proceedings in a matter pending before it. *Landis v. North Am. Co., 299 U.S. 248, 254-55, 57 S. Ct. 163, 81 L. Ed. 153 (1936).* The authority to enter a stay [*2] applies equally to patent cases where reexamination by the PTO has been requested and granted. *Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)* (noting that courts have the authority to order a stay pending the conclusion of a PTO examination).

In deciding whether to grant a stay, the court must weigh the benefits of the stay against the costs. *Middleton, Inc. v. Minnesota Mining & Mfg. Co., 2004 U.S. Dist. LEXIS 16812, No. 03-CV-40493, 2004 WL 1968669, at *3 (S.D. Iowa Aug. 24, 2004).* In particular, the court must consider (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and the trial of the case; and (3) whether discovery is complete and a trial date has been set. *Id.* (citations omitted).

It is not clear that entry of a stay in this matter would unduly prejudice or present a clear tactical disadvantage to the plaintiff. In his opposition papers, Motson does not point to any undue prejudice he would suffer if the stay was granted. n1 Although the stay may delay the Court's determination as to the defendant's counterclaim of invalidity under *35 U.S.C. 112*, [*3] it would not be for such a protracted or indefinite period to constitute an abuse of discretion. See *Gould v. Control Laser Corp., 705 F.2d 1340, 1341-42 (Fed. Cir. 1983)* (noting that entry of a stay pending reexamination does not last so long as to constitute an abuse of discretion because (1) by statute the PTO reexamination must proceed with special dispatch and (2) stays to enable reexamination do not foreclose review on the merits by federal courts). Moreover, the reexamination has the potential to eliminate trial on the issue alto-

gether or at least reduce the costs associated with litigating it. See *Gould, 705 F.2d at 1342*; *Middleton, 2004 U.S. Dist. LEXIS 16812, 2004 WL 1968669, at *3.* And, if the PTO upholds the validity of plaintiff's patent, "the plaintiff's rights will only be strengthened, as the challenger's burden of proof becomes more difficult to sustain." *Pegasus Dev. Corp. v. Directv, Inc., 2003 U.S. Dist. LEXIS 8052, No. 00-1020-GMS, 2003 WL 21105073, at *2 (D. Del. May 14, 2003)* (citing *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc., 807 F.2d 955, 961 (Fed. Cir. 1986)*).

> n1 In Motson's two page opposition memorandum, he makes two arguments: (1) that the defendant's request for reexamination is a dilatory tactic, and (2) that the defendant's motion for a stay is premature because the PTO had not yet granted the defendant's request for reexamination. (Pl. Mem. at 1-2.) The PTO has since granted the request, thus rendering moot Motson's second argument in opposition to the motion for a stay.

[*4]

As mentioned above, the second factor weighs in favor of granting the defendant's motion because entry of a stay, pending reexamination by the PTO, may simplify or even eliminate the need for trial on the remaining validity challenge in this matter. See *Gould, 705 F.2d at 1342.* The reexamination procedure has the potential to either uphold or narrow the claims in the plaintiff's patent. Loffland Bros. Co. v. Mid-Western Energy Corp., No. 83-CV-2255, 1985 WL 1483, at *2 (W.D. Okla. Jan. 3, 1985). In any event, the technical expertise of the PTO examiner may be helpful to the Court should further consideration of the matter be necessary after reexamination. See id.

Finally, although discovery is complete and summary judgment has been decided, the court has not set a trial date nor has it issued a pre-trial order. Courts have previously entered stays in situations which are similar, if not more advanced, than the present case. See e.g., Loffland Bros., 1985 WL 1483, at *2 (stay granted after significant discovery, pretrial conference and trial date set); *Gould,*

*705 F.2d 1340* (stay upheld even where it was entered [*5] five years after commencement of litigation and only 20 days before scheduled start of trial). Although discovery and briefing expenses have already been incurred, a trial at this point on the sole remaining issue in the case may compound those costs unnecessarily if the PTO reexamination eliminates the need for a trial or creates a need to relitigate other issues. See *Middleton, 2004 U.S. Dist. LEXIS 16812, 2004 WL 1968669, at *6.*

Therefore, the balance of relevant factors weighs in favor of granting the defendant's motion. For the foregoing reasons, the Court will enter a stay of all proceedings in this matter pending reexamination of the patent-in-suit by the PTO.

The accompanying Order will issue today.

Dated: 12-16-05

ROBERT B. KUGLER

United States District Judge

**ORDER**

THIS MATTER having come before the Court upon motion by Defendant Franklin Covey Co. for a stay of all proceedings in the above-captioned case pending reexamination of *United States Patent No. 6,264,029* ("the patent-in-suit") by the Patent and Trademark Office ("PTO"); and the Court having considered the moving papers, and the opposition thereto; and for the reasons expressed in the Opinion issued this date; [*6]

IT IS HEREBY ORDERED that Franklin Covey Co.'s motion for a stay is **GRANTED;** and

IT IS FURTHER ORDERED that all proceedings in the above-captioned matter shall be stayed until such time as the PTO completes its reexamination of the patent-in-suit.

Dated: 12-16-05

ROBERT B. KUGLER

United States District Judge

# TAB 9

LEXSEE 2003 U.S. DIST. LEXIS 8052

**PEGASUS DEVELOPMENT CORPORATION and PERSONALIZED MEDIA COMMUNICATIONS, L.L.C., Plaintiffs v. DIRECTV, INC., HUGHES ELECTRONICS CORPORATION, THOMPSON CONSUMER ELECTRONICS, INC., and PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, Defendants. AND RELATED COUNTERCLAIMS**

**Civil Action No. 00-1020-GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2003 U.S. Dist. LEXIS 8052*

**May 14, 2003, Decided**

**SUBSEQUENT HISTORY:** As Amended September 4, 2003.

**PRIOR HISTORY:** *Pegasus Dev. Corp. v. Directv, Inc., 2002 U.S. Dist. LEXIS 6825 (D. Del., Apr. 18, 2002)*

**DISPOSITION:**    [*1]    Defendants' motion to stay pending patent reexamination granted. Plaintiffs' motion for leave to assert claim patent denied. Motions to dismiss denied.

**COUNSEL:** For Pegasus Development Corporation, Personalized Media Communications LLC, PLAINTIFFS: Rudolf E Hutz, Rudolf E Hutz, Connolly, Bove, Lodge & Hutz, Wilmington, DE USA.

For Directv Inc, Hughes Electronics Corporation, Thomson Consumer Electronics Inc, Thomson Multimedia, Inc, DEFENDANTS: Donald F Parsons, Jr, Mona A Lee, Morris, Nichols, Arsht & Tunnell, Wilmington, DE USA.

For Thomson Consumer Electronics Inc, DEFENDANT: Karen Jacobs Louden, Morris, Nichols, Arsht & Tunnell, Wilmington, DE USA.

For Philips Electronics North America Corporation, DEFENDANT: Steven J Balick, Steven T Margolin, Ashby & Geddes, Wilmington, DE USA.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Gregory Moneta Sleet

**OPINION:**

**MEMORANDUM AND ORDER**

**I. INTRODUCTION** [*2]

On December 4, 2000, Pegasus Development Corporation ("Pegasus") and Personalized Media Communications, L.L.C. ("PMC") filed a complaint against several defendants, alleging infringement of six patents, including *U.S. Patent Nos. 4,965,825* ("the '825 patent") and *5,335,277* ("the '277 patent"). Since that time, the original scheduling order has been revised several times. Currently, fact discovery is scheduled to close on August 22, 2003, and a trial is scheduled for February of 2004.

On February 4, 2003 and March 14, 2003, respectively, the defendant Thomson Consumer Electronics, Inc. ("Thomson") filed with the Patent and Trademark Office ("PTO") a request for *ex parte* reexaminations of the '825 and '277 patents. The request for reexamination of the *'825 patent* was granted on April 10, 2003. n1 Presently before the court is a joint motion by the defendants to stay the litigation pending the completion of the patent reexaminations (D.I. 459). After careful consideration of the parties' submissions, and for the reasons detailed below, the court will grant the motion.

n1 The court is not yet aware of a decision by the PTO regarding reexamination of the '277 patent.

[*3]

**II. DISCUSSION**

The decision to stay a case is firmly within the discretion of the court. *Cost Bros., Inc. v. Travelers Indem.*

*Co., 760 F.2d 58, 60 (3d Cir. 1985)*. This authority applies equally to patent cases in which a reexamination by the PTO has been requested. *Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)* ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.") (internal citation omitted); *see also Emhart Indus. v. Sankyo Seiki Mfg., 1987 U.S. Dist. LEXIS 15033, 3 U.S.P.Q. 2d 1889, 1890 (N.D. Ill. 1987)* ("In passing the legislation establishing the reexamination proceeding, Congress stated its approval of district courts liberally granting stays within their discretion."); *Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983)* (citing legislative history of reexamination statute). In determining whether a stay is appropriate, the court is guided by the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving [*4] party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Xerox Corp v. 3Comm Corp., 69 F. Supp.2d 404, 406 (W.D.N.Y. 1999)* (citing cases); *cf. United Sweetner USA, Inc. v. Nutrasweet Co., 766 F. Supp. 212, 217 (D. Del. 1991)* (stating a similar test).

In this case, there are two plaintiffs, four defendants, and several counter claimants, as well as six patents comprising dozens of claims. In addition, the written submissions in this case have been particularly voluminous; the briefing on claim construction alone, for example, constitutes 576 pages. *See* Report and Recommendation of Special Master Regarding Claim Construction at 2 (citing "copious briefing"). In these ways, the present suit is quite complex, although, perhaps, not extraordinarily so. The greater context of this suit is extraordinary, however: the plaintiffs have filed more than 300 related patent applications based upon an original patent application filed in 1981 and supplemented in 1987. Together, these applications contain an estimated 10,000 claims. Furthermore, as observed [*5] by the Special Master appointed in this case, the 1987 application alone constitutes over 300 columns of patent text and "is, by any measure, an extremely complex document." *Id.* at 2. These related applications may become relevant to the present case in respect to several issues including claim construction, enablement, adequacy of written description, indefiniteness, and inequitable conduct. *See id.* at 21. Thus, in this case, more than many, the court would benefit from a narrowing of the issues.

The reexamination process will serve this purpose. For example, the court will gain the benefit of the PTO's particular expertise, in that all prior art presented to the court will have been first considered by that agency. *See Braintree Laboratories, Inc. v. Nephron-Tech, Inc., 1997 U.S. Dist. LEXIS 2372, 1997 WL 94237, at *9 (D. Kan. 1997); Hamilton Indus., Inc. v. Midwest Folding Products Mfg., 1990 U.S. Dist. LEXIS 3138, 1990 WL 37642, at *1-2 (N.D. Ill. 1990)*. Other potential efficiencies resulting from the reexamination process are numerous: (1) many discovery problems relating to the prior art may be alleviated; (2) the record of the reexamination likely would be entered at trial, reducing the [*6] complexity and length of the litigation; (3) the issues, defenses, and evidence will be more easily limited in pre-trial conferences following a reexamination; (4) the outcome of the reexamination process may encourage a settlement without further involvement of the court; and (5) if the patent is declared invalid, the suit likely will be dismissed as to that patent. *Id.* These efficiencies will result in a reduced cost of litigation for the parties and more effective utilization of the limited resources of the court. *Id.*

Thus, a stay may result in a simplification or reduction of issues for the court's consideration, or it may dispense with the litigation entirely. These are considerable economies indeed, particularly in this case. Given the involved prosecution history of the various patents-in-suit and hundreds of related patents, the number of claim terms at issue, the inordinate amount of prior art references, and the PTO's conclusion that all of the challenged claims warrant reexamination, the court finds particular merit in permitting an additional layer of review by the PTO before expending further judicial resources. *See Digital Magnetic Systems, Inc. v. Ainsley,* [*7] *213 U.S.P.Q.290,290 (W.D.Okla. 1982)* ("Congress enacted the reexamination procedure to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts."); *Softview Computer Products Corp. v. Haworth, Inc., 2000 U.S. Dist. LEXIS 4254, 2000 WL 1134471, at *3 (S.D.N.Y. 2000)* ("The grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims."). Furthermore, the court notes that discovery is not complete, and the trial, although scheduled, is some nine months in the future. In light of all these factors, and considering that the reexamination process will proceed "with special dispatch," *35 U.S.C. 305*, the court concludes that a stay is the most compelling alternative.

The court recognizes that a stay will cause further delay in a case that has suffered several delays already, as well as considerable distress to the plaintiffs. The court is sensitive to the plaintiffs' right to have their day in court. Nonetheless, for the reasons already mentioned, the court is convinced that a stay is appropriate in this particular case. In addition, [*8] the court reminds the plaintiffs that they affirmatively invoked the rights of the patent statute; they can hardly be heard now to complain of the rights afforded others by that same statutory framework. Thomson is legally entitled to invoke the reexamination

mechanism, and the PTO has determined that reexamination is warranted. There is nothing facially untoward in that. Moreover, the court notes that if, after reexamination, the plaintiffs' patents are again upheld, the plaintiffs' rights will only be strengthened, as the challenger's burden of proof becomes more difficult to sustain. *See Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc., 807 F.2d 955, 961 (Fed. Cir. 1986)* (holding that upon reissue, the burden of proving invalidity is 'made heavier') (quoting *Interconnect Planning Corp. v. Feil, 774 F.2d 1132, 1139 (Fed. Cir. 1985))*. In this light, and given the particular circumstances of this case, the court cannot find that the prejudice to the plaintiffs is undue.

Objecting to a stay, the plaintiffs also have complained of dilatory conduct by the defendants, who, in turn, have accused the plaintiffs of "burying" the PTO in claims and prior [*9] art references. *See, e.g.,* Mem. of Plaintiffs in Opp. to Defs.' Joint Motion to Stay (D.I. 488) at 5-22 (detailing ways in which the defendants allegedly "have repeatedly acted to complicate and delay the resolution of this litigation"); Defs.' Joint Brief in Support of Motion to Stay (D.I. 460) at 4 ("Many of the Harvey patents had vast numbers of cited prior art references of record, effectively burying the most relevant ones.") and 7 ("It appears that PMC sought to 'overwhelm' the PTO and the Courts.").

As a brief response to the accusation of dilatory conduct, the court notes that Thomson's request for reexamination of the *'825 patent* comprised 2,610 pages; its request regarding the '277 patent totaled 4,736 pages. It is presumed that such an effort requires an enormous expenditure of time and other resources; thus, the timing of Thomson's reexamination requests does not, necessarily, reflect undue delay. Furthermore, as noted above, Thomson was legally entitled to invoke the reexamination procedure when it did. As to the defendants' repeated complaint that the plaintiffs overwhelmed the PTO with prior art references during prosecution of the patents-in-suit, the implications [*10] of such alleged conduct will be explored at another time in the litigation, if necessary. At this stage in the process, the court is satisfied that the PTO has found "substantial new questions of patentability" raised by each of the cited references, and has determined that all of the challenged claims of the *'825 patent* necessitate a reexamination. *See* PTO's Decision Granting Reexamination, Supp. Appendix to Defs.' Joint Brief in Support of Motion to Stay (D.I. 467) at 138. Although the court regrets a further delay in the present case, it is confident that the advantages of a stay outweigh the costs.

## III. CONCLUSION

Because the PTO's reexamination of one or more of the patents-in-suit may materially affect the issues in this case, the court will grant the defendants' motion to stay. The case is stayed pending a disposition of the PTO's reexamination of patent '825, and will be stayed pending reexamination of the '277 patent, if applicable. All pending motions will be denied without prejudice; the parties may refile them following the stay and upon the entry of a new scheduling order, if applicable.

Thus, for the aforementioned reasons, IT IS HEREBY ORDERED that: [*11]

> 1. The defendants' Motion to Stay Pending Reexamination by the U.S. Patent and Trademark Office (D.I. 459) is GRANTED. The proceedings are stayed from the date of this order until further notice.
>
> 2. The parties shall advise the court of any decision that results from the PTO's reexamination of the *'825 patent*, and any other decision of the PTO regarding reexamination of any of the other patents-in-suit.
>
> 3. The plaintiffs' Motion for Leave to Assert Claim 15 of U.S. Patent 4,965,825 (D.I. 399) is DENIED without prejudice.
>
> 4. Thomson's Motion to Dismiss or in the Alternative for Summary Judgment (D.I. 376) is DENIED without prejudice.
>
> 5. Phillips' Motion to Dismiss for Lack of Standing (D.I. 396) is DENIED without prejudice.

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

Date: May 14, 2003

# TAB 10

LEXSEE 1991 U.S. DIST. LEXIS 16086

## ROBERT H. HARRIS COMPANY, INC., PLAINTIFF v. METAL MANUFACTURING CO., INC., DEFENDANT

### Civil No. J-C-90-179

## UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF ARKANSAS, JONESBORO DIVISION

*1991 U.S. Dist. LEXIS 16086*

**June 20, 1991, Decided**
**June 21, 1991, Filed**

**JUDGES:** [*1]

George Howard, Jr., United States District Judge.

**OPINION BY:**

HOWARD

**OPINION:**

ORDER

Plaintiff brings this action alleging that defendant manufactures and sells a product which infringes plaintiff's patent. Defendant has filed a motion to dismiss for lack of personal jurisdiction and for improper venue. In the alternative, defendant asks that the Court transfer this action pursuant to *28 U.S.C. § 1404*(a). Defendant has also filed a motion for stay pending re-examination.

Motion to Dismiss or to Transfer

To determine whether the Court can exercise personal jurisdiction over defendant, the Court must find that jurisdiction is proper under the Arkansas long-arm statute and that the exercise of personal jurisdiction is consistent with due process. *Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 653 (8th Cir. 1982)*.

The Arkansas long-arm statute provides that a court may exercise personal jurisdiction over a non-resident for a cause of action arising from the defendant's transacting any business in this state. *A.C.A. § 16-4-101(C)(1)(a)*. The Arkansas Supreme Court has held that the term "transacting business" is more inclusive than the previous statutory provision of "doing [*2] business" and that the legislative intent is to expand jurisdiction to the limits permitted by the due process clause of the United States Constitution. *Dudley v. Dittmer, 795 F.2d 669, 672 (8th Cir. 1986)*.

Defendant states that its contacts with the state are too "attenuated" to comport with due process. Defendant also asserts that the Court cannot exercise personal jurisdiction over it unless plaintiff demonstrates that defendant has shipped the allegedly infringing product into Arkansas.

The Court disagrees. Defendant has purposefully availed itself of the privilege of conducting business in Arkansas. See *Burger King Corp. v. Rudzewicz, 105 S.Ct. 2174 (1985)*. Defendant has derived significant revenues from the sale of its products in Arkansas. It solicits business in Arkansas (including the sale of the allegedly infringing product) through the mailing of catalogs, magazine advertisements, and telephone contacts. The documentation provided by plaintiff demonstrates sufficient "minimum contacts" between the non-resident defendant and the forum state so that the exercise of personal jurisdiction over defendant is consistent with traditional [*3] notions of fair play and substantial justice. *International Shoe Co. v. Washington, 326 U.S. 310 (1945)*.

Defendant also argues that venue is inappropriate in this district. Defendant relies on the language of the patent venue statute, *28 U.S.C. § 1400*(b) which provides that an action for patent infringement may be brought in the judicial district where the defendant resides, or where defendant has committed acts of infringements and has a regular and established place of business.

The question of the meaning of the patent venue statute in light of the recent changes to the general venue statute, *28 U.S.C. § 1391*(c) was addressed in a recent decision. *VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574 (Fed. Cir. 1990)*. The court held that

the definition of "reside" in § 1391(c) applies to § 1400(b).

By order dated December 12, 1990, the Court stayed a decision on the motion to dismiss because of improper venue pending action by the United States Supreme Court on the petition for certiorari filed in VE Holding Corp. Certiorari in that case has recently been denied. *111 S.Ct. 1315 (1991)*.

As the Court noted in its December [*4] 12th order, the holding in VE Holding Corp. is dispositive of the venue issue. As defendant is subject to personal jurisdiction in this district, venue is proper here.

Defendant contends, in the alternative, that the Court should transfer the case to the Middle District of Florida.

Under *28 U.S.C. § 1404*(a), a court may transfer an action to any district where it might have been brought "for the convenience of the parties and witnesses, (and] in the interest of justice." The plaintiff's choice of forum is usually entitled to great weight and should not be disturbed unless the balance of the various factors is clearly in favor of the defendants. *Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947)*. However, "this choice is deserving of less weight when none of the operative facts of the action occur in the forum selected by the plaintiff." *National Mortgage Network, Inc. v. Home Equity Centers, Inc., 683 F.Supp. 116, 119 (E.D. Pa. 1988)*. In determining whether to exercise its discretion to transfer an action, the Court may consider a number of factors, including the convenience of the parties and the witnesses, the availability of judicial process [*5] to compel the attendance of unwilling witnesses, the governing law, ease of access to sources of proof such as the location of records and documents, the place where the events at issue occurred, and the place where the case could be tried more expeditiously and inexpensively. *Darchuk v. Kellwood Co., 47 FEP Cases 1259 (E.D. Ark. 1988); Kolko v. Holiday Inns, Inc., 672 F.Supp. 713 (S.D.N.Y. 1987)*.

The Court has weighed the factors and is persuaded that the balance of convenience or burden to defendants in this instance does not outweigh plaintiff's choice of forum. Both plaintiff and defendant will be somewhat burdened by having to obtain witnesses and documents from Florida. Plaintiff, however, contends that it is not financially able to prosecute its action in Florida.

In sum, the Court finds that defendant has not met its burden of demonstrating that transfer is warranted under *28 U.S.C. § 1404*(a).

Motion for Stay Pending Re-Examination

Defendant has filed a reexamination request with the United States Patent and Trademark Office (PTO) on June 7, 1991. The reexamination process is a relatively new procedure codified at *35 U.S.C. § §* [*6] *301*-307. When a petition for reexamination is filed, the PTO must decide within three months whether there is a substantial question of patentability. *35 U.S.C. § 303*(a). If a substantial question of patentability is found, the patent will be re-examined, and the patent owner will be given a reasonable period to respond. *35 U.S.C. § 304. See Freeman v. Minnesota Mining & Mfg. Co., 661 F.Supp. 886 (D.Del. 1987)*.

Only items of prior art are to be considered in the reexamination proceeding. "Typically, the cited prior art patents or printed publications upon which such a request is based are ones which were not considered by the patent examiner during the processing of the patent application which results in the patent-in-suit. Once a reexamination request is granted, a Patent Examiner who is familiar with the technology involved with the patent conducts the reexamination and is obligated to do so 'with special dispatch.' *37 C.F.R. § 1.550(a)*." *Ingro v. Tyco Industries, Inc., 227 U.S.P.Q. 69, 70 (N.D. Ill. 1985)*.

In this instance, defendant states that a recently discovered manual raises new questions of patentability with respect to plaintiff's [*7] patent. Defendant therefore has requested that Claims 1-8 of the Harris patent be reexamined.

Whether the action should be stayed pending the outcome of a reexamination proceedings before the PTO resides in the discretion of the court. The legislative history surrounding the establishment of the reexamination proceeding evinces congressional approval of district courts liberally granting stays.

The bill does not provide for a stay of court proceedings. It is believed by the committee that stay provisions are unnecessary in that such power already resides with the Court to prevent costly pretrial maneuvering which attempts to circumvent the reexamination procedure. It is anticipated that these measures provide a useful and necessary alternative for challengers and for patent owners to test the validity of the United States patents in an efficient and relatively inexpensive manner.

H.R. Rep. No. 1307 Part I, 96th Cong., 2d Sess. 4, reprinted in 1980 U.S. Code Cong. & Ad. News 6460, 6463.

A number of courts have recognized the advantages of staying a pending infringement action until completion of a reexamination request. In *Emhart Industries, Inc. v. Sankyo Keiki Mfg., 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987)*, [*8] the court enumerated the following advantages in granting a stay which would shift to the PTO the validity of a patent claim:

1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.

2. Many discovery problems relating to prior art can be alleviated by the PTO examination.

3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

4. The outcome of the reexamination may encourage a settlement without the further use of the Court.

5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

6. Issues, defenses, and evidence will be more easily limited in pretrial conferences after a reexamination.

7. The cost will likely be reduced both for the parties and the Court.

Similarly, in *Lofland Brothers Co. v. Mid-Western Energy Corp., 225 U.S.P.Q. 886, 887 (W.D. Okla. 1985),* the court noted that "the reexamination procedure has the potential to eliminate trial on the issue of patent infringement, should all of the patent's claims be cancelled. It is equally possible for all of the claims [*9] in plaintiff's patent to be upheld . . . In any event, the expert view of the Patent Office examiner will certainly benefit this Court."

Plaintiff objects to a stay. It argues that defendant seeks a stay solely to prolong the litigation and increase plaintiff's costs. In particular, plaintiff argues that it continues to be prejudiced by the existence of defendant in the marketplace. Plaintiff argues that the prejudice of the

delay would outweigh any benefit which might result from the reexamination procedure.

The Court has weighed the costs and benefits of granting a stay. This action has been pending less than a year. Although it is set for trial next month, the Court is not persuaded that this a case which has "run an overly protracted course." See *Toro Company v. L.R. Nelson Corp., 223 U.S.P.Q. 636, 638 (C.D. Ill. 1984).* The parties appear not to have engaged in expensive discovery or extensive pretrial preparation. Furthermore, plaintiff has sued for damages and has an adequate legal remedy. See *Ingro, supra.*

The Court is not persuaded that defendant has abused the reexamination process in an attempt to delay trial proceedings. The Court [*10] notes that the decision on whether defendant's request for reexamination is granted will be forthcoming; should it be denied, the case can immediately be replaced on the trial calendar.

Should the reexamination request be granted, some delay will result. The Court, however, is not of the opinion that the delay will be significant and finds that the benefits of the reexamination procedure far outweigh the prejudice to plaintiff resulting from the delay.

Thus, the Court grants defendant's motion for stay of proceedings pending resolution of its request for reexamination by the PTO. Defendant is directed to notify the Court as soon as the PTO acts on the request. The case will be removed from the July 29th trial calendar.

Accordingly, the motion to quash or dismiss for lack of jurisdiction or improper venue, or in the alternative, to transfer venue is denied. The motion for stay of proceedings or to continue is granted.

IT IS SO ORDERED this 20th day of June, 1991.

# TAB 11

LEXSEE 2006 U.S. DIST. LEXIS 46431

**WATLOW ELECTRICAL MANUFACTURING COMPANY, Plaintiff, vs. OGDEN MANUFACTURING COMPANY, Defendant.**

**Case No. 4:05CV2094 CDP**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION**

*2006 U.S. Dist. LEXIS 46431*

**July 10, 2006, Decided**
**July 10, 2006, Filed**

**COUNSEL:** [*1] For Watlow Electric Manufacturing Company, Plaintiff: Bryan K. WheelockBryan K. WheelockBryan K. Wheelock, HARNESS AND DICKEY, St. Louis, MO.

For Ogden Manufacturing Company, Defendant: Lisa A. PakeLisa A. PakeLisa A. Pake, HAAR AND WOODS, LLP, St. Louis, MO.

For Ogden Manufacturing Company, Counter Claimant: Lisa A. PakeLisa A. PakeLisa A. Pake, HAAR AND WOODS, LLP, St. Louis, MO.

For Watlow Electric Manufacturing Company, Counter Defendant: Bryan K. WheelockBryan K. WheelockBryan K. Wheelock, HARNESS AND DICKEY, St. Louis, MO.

**JUDGES:** CATHERINE D. PERRY, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** CATHERINE D. PERRY

**OPINION:**

### MEMORANDUM AND ORDER

This matter is before me on defendant Ogden Manufacturing Company's motion to stay this patent infringement suit pending reexamination of the patent at issue, U.S. Patent No. *4,934,831*, by the Patent and Trademark Office (PTO). Plaintiff Watlow Electric Manufacturing Company contends that the impending expiration of the *'831* Patent renders the imposition of a stay unduly prejudicial at this time. After reviewing the parties' briefs, I conclude that the benefits of a stay outweigh any potential for prejudice. Accordingly, I will grant Ogden's motion.

### Background

Watlow filed its complaint on November 7, 2005. Watlow withheld service of [*2] the complaint for the next four months while it attempted to negotiate a licensing agreement with Ogden. In a letter dated February 17, 2006, Ogden informed Watlow that it did not see any legal or factual basis for the complaint due to the similarity between the *'831* Patent and prior art disclosed in *U.S. Patent No. 4,018,624*. Ogden also stated that should Watlow proceed with the pending litigation, Ogden would seek reexamination of the *'831* Patent and a corresponding stay of the litigation.

Watlow served Ogden with a copy of its complaint on March 7, 2006. Ogden filed its answer and counterclaim on April 13, 2006. Watlow answered Ogden's counterclaim on May 8, 2006. On May 18, 2006, Ogden filed a request for an ex parte reexamination of the *'831* Patent pursuant to *35 U.S.C. § § 302-307*. n1 One day later, Ogden filed this motion to stay all proceedings pending reexamination of the *'831* Patent. On June 30, 2006, the PTO granted Ogden's request for an ex parte reexamination of the *'831* Patent.

> n1 As Ogden explains in its brief, the request for reexamination relies on U.S. Patent No. *3,942,242*. Although this is not the same patent cited in Ogden's February 17, 2006 letter to Watlow, Ogden maintains that the *'624* and *'242* patents are substantively the same.

[*3]

### Discussion

In a patent suit, courts "have inherent power to manage their dockets and stay proceedings, including the

authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)* (citations omitted). In fact, sponsors of the patent reexamination legislation favored stays by the district courts pending reexamination as a means of settling disputes quickly, lowering costs, and providing the courts with the PTO's expertise. *Lentek Int'l, Inc. v. Sharper Image Corp., 169 F.Supp.2d 1360, 1362 (M.D. Fla. 2001)* (citations omitted). Courts consider three factors when determining whether a stay should should be granted: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay of litigation will simplify the issues in question and facilitate the trial of the case; and (3) whether a stay would unduly prejudice the non-moving party or would present a clear tactical disadvantage for that party. *Middleton, Inc. v. Minnesota Mining and Manufacturing Co., 2004 U.S. Dist. LEXIS 16812, No. 4:03-CV-40493, 2004 WL 1968669, at *3 (S.D. Iowa August 24, 2004)* (citations [*4] omitted).

These first two factors weigh in favor of granting a motion to stay in this case. In fact, Watlow does not even address these two factors in its brief in opposition to Ogden's motion to stay. First, discovery has not begun and a trial date has not been set. Cf. *Soverain Software LLC v. Amazon.com, Inc., 356 F.Supp.2d 660, 662 (E.D. Tex. 2005)* (denying motion to stay that was filed one year after complaint had been filed, one week after the Markman hearing, and one month before the scheduled discovery completion date). The parties' *Rule 16* conference has been postponed pending resolution of this motion. In sum, the bare minimum amount of resources have been expended in this case thus far. See See *Tap Pharm. Prod., Inc. v. Atrix Labs., Inc., 2004 U.S. Dist. LEXIS 3228, No. 0C 3 7822, 2004 WL 422697, at *1 (N.D. Ill. March 3, 2004)* (granting stay where case had not progressed beyond the initial pleadings stage).

Second, there is a high likelihood that granting a stay will simplify the issues and facilitate the trial in this case. The validity of the *'831* Patent is a central issue before this Court and the PTO. As the Federal Circuit has recognized, "[o]ne purpose [*5] of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983).*

The PTO recently granted Ogden's request for reexamination. Statistics show that there is a high likelihood that at least some of the claims of the *'831* Patent will be amended. n2 By granting a stay at this juncture, the parties will save the expense of litigating issues that the PTO's experts may render moot. Additionally, any review of prior art that I must conduct will be enhanced by the PTO's expert opinion. See *In re Etter, 756 F.2d 852, 857 (Fed. Cir. 1985)* ("When the patent is concurrently involved in litigation, an auxiliary function [of the reexamination] is to free the court from any need to consider prior art without the benefit of the PTO's initial consideration.").

> n2 Both parties present statistics from the PTO indicating that 64% of ex parte reexamination result in changes to the patent claims.

[*6]

Watlow contends that third factor listed above weighs against granting a stay in this case. According to Watlow, a stay could effectively prohibit Watlow from enjoining Ogden's alleged infringement due to the impending expiration of the *'831* Patent. The *'831* Patent expires on March 20, 2009, roughly 32 months from the date of this order. Based on the most recent figures released from the PTO, the average pendency of an ex parte reexamination is 22.6 months. Watlow's own statistics suggest that the average patent case in my Court lasts 11.3 months. Together, these two numbers suggest that this matter should be resolved about the time the *'831* Patent expires. If the *'831* Patent expires before this case is resolved, Watlow would lose the right to enjoin Ogden's infringement and instead only be entitled to monetary damages.

While I am certainly sensitive to the prejudice that Watlow would suffer if it were denied the right to injunctive relief, Watlow's doomsday scenario is speculative, at best. First, Watlow fails to consider that the reexamination process will most likely narrow, if not eliminate, the issues that must be decided by this Court. Thus, the PTO's determination is likely [*7] to reduce the duration of any subsequent court proceedings. See *Tap Pharm., 2004 U.S. Dist. LEXIS 3228, 2004 WL 422697, at *1* (noting that reexamination process could simplify any subsequent court proceedings, thus making up for any delay). Second, as Ogden explains, the PTO has specific guidelines which call for the expedited handling of reexamination determinations in cases where litigation has been stayed pending reexamination. This suggests that the PTO statistics cited by Watlow may not apply in this case. Finally, Watlow underestimates my ability to address issues that may arise during the reexamination process. This includes the ability to order expedited discovery once the reexamination process is complete, or even lifting the stay should the PTO fail to address Ogden's reexamination request in a timely manner. In sum, these three factors suggest that Watlow's concern over the impending expiration date of the *'831* patent may be premature at this stage of the litigation and reexamination process.

2006 U.S. Dist. LEXIS 46431, *

For the foregoing reasons, I find the benefits to both parties and the Court that will result from a stay outweigh the potential for prejudice to Watlow.

Accordingly,

**IT IS HEREBY ORDERED** [*8]  that defendant Ogden Manufacturing Company's motion to stay [# 14] is granted. All proceedings in this suit are stayed pending reexamination of U.S. Patent No. *4,934,831* by the United States Patent and Trademark Office.

**IT IS FURTHER ORDERED** that the parties shall notify the Court within ten (10) days of any action by the PTO on the re-examination.

CATHERINE D. PERRY

UNITED STATES DISTRICT JUDGE

Dated this 10th day of July, 2006.