# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ROHM AND HAAS ELECTRONIC MATERIALS LLC, | § § § § § | |
| *Plaintiff,* | § § § | Civil Action No. 06-297-GMS |
| v. | § § | **REDACTED VERSION** |
| HONEYWELL INTERNATIONAL INC., | § § | |
| *Defendant.* | § § § § | |

## HONEYWELL INTERNATIONAL INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO STAY LITIGATION PENDING REEXAMINATION OF THE PATENTS

SKADDEN, ARPS, SLATE
  MEAGHER & FLOM, LLP
Four Times Square
New York, New York 10036
(212) 735.3000
Attorneys for Defendant
Counterclaim-Plaintiff
Honeywell International Inc.

SKADDEN, ARPS, SLATE
  MEAGHER & FLOM, LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899
(302) 651.3000
Attorneys for Defendant
Counterclaim-Plaintiff
Honeywell International Inc.

DATED: January 5, 2007

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ............................................................................................................................ 3

    I.      Honeywell Has Not Been "Hid[ing] From The Settlement Table" ......................... 3

    II.     Rohm And Haas Will Not Be Unduly Prejudiced By A Stay ................................. 6

    III.    It Is Of No Moment That Honeywell's Reexamination Requests Rely On Both "New" And Old Prior Art ............................................................................... 9

    IV.    There Is Nothing Sinister About Honeywell's Decision To File An *Ex Parte* Reexamination Request ................................................................................. 12

    V.     Honeywell Did Not "Mislead" The Court By Relying On PTO Statistics Relating to Reexamination Proceedings ............................................................. 13

    VI.    Rohm and Haas Concedes This Case Is "Just Getting Started" ......................... 14

CONCLUSION ...................................................................................................................... 16

## TABLE OF CASES AND AUTHORITIES

**CASES**                                                    **PAGE(S)**

*Applera Corp. v. Thermo Finnigan LLC,*
    C.A. No. 04-1230-GMS (D. Del. Dec. 28, 2005) ...........................................................7

*DSU Medical Corp. v. JMS Co.,*
    Case No. 04-1620, 2006 U.S. App. LEXIS 30511 (Fed. Cir. 2006) .............................4

*eBay, Inc. v. MercExchange, L.L.C.,*
    126 S. Ct. 1837 (2006)......................................................................................................7

*Lectrolarm Custom Services, Inc. v. Vicon Indus., Inc.,*
    2005 WL 2175436 (W.D. Tenn. Sept. 1, 2005).........................................................11

*Ralph Gonnocci Revocable Living Trust v. Three M Tool & Machine, Inc.,*
    68 U.S.P.Q. 2d 1755 (E.D. Mich. 2003)........................................................................2

*Remington Arms Co. v. Modern Muzzleloading, Inc.,*
    1998 WL 1037920 (M.D.N.C. Dec. 17, 1998) ...........................................................12

## AUTHORITIES

35 U.S.C. §§ 271(b) ................................................................................................................4

35 U.S.C. § 312(a) ................................................................................................................10

M.P.E.P. § 2242 ...............................................................................................................9,10

M.P.E.P. § 2258.01 .............................................................................................................10

M.P.E.P. § 2600 .................................................................................................................13

## INTRODUCTION

Harry Truman famously advised, "[i]f you cannot convince them, confuse them." Rohm and Haas has done its very best to follow this advice in opposing Honeywell's stay motion. In fact, Rohm and Haas' answering brief has no purpose other than to distract the Court's attention from the fact that all of the applicable factors weigh heavily in favor of a stay.

For example, Rohm and Haas' answering brief avers that Honeywell has presented a "misleading" description of PTO statistics. However, Rohm and Haas does not dispute Honeywell's observation in its opening brief that the PTO grants more than 94% of all reexamination requests. *See* Honeywell's Opening Brief In Support Of Its Motion To Stay ("Op. Br."), at Exhibit E. (D.I. 33) This already high statistical likelihood is further bolstered by the strong arguments – set forth in detail in the requests for reexamination attached to Honeywell's opening brief, and unrebutted by Rohm and Haas – that the asserted Patent claims are anticipated or rendered obvious by numerous prior art references, both "new" and "old".

Rohm and Haas' answering brief also does not dispute Honeywell's statement that nearly 3 in 4 patents emerge from reexamination with at least some of their claims voided, or materially changed. *See* Rohm and Haas' Answer Brief Opposing Honeywell's Motion To Stay ("Ans. Br."), at 16. (D.I. 38) This statistic predicts that many, if not most, of the Patent claims asserted in this case will be substantially different after reexamination, if they survive at all.[1] Indeed, Rohm and Haas implicitly acknowledges this point by stating "it is likely that *at least one* of Rohm and Haas' patents will survive the reexamination process." Ans. Br. at 19 (emphasis added). The question that neither the parties nor the Court can answer now is, "*which*

---

[1]   This statement is entirely consistent with Rohm and Haas' observation that only one in ten patents have all their claims voided in reexamination. *See* Ans. Br. at 16.

Patent, if any, and with *what* claims?" This is precisely the reason why a stay should be granted until reexamination is complete.

If any of Rohm and Haas' Patent claims do survive the reexamination process in a form that Rohm and Haas believes are still infringed by Honeywell's products, Rohm and Haas can return to this Court and litigate these claims in the appropriate legal and factual context. This context is likely to involve substantially different invalidity, infringement, and damages issues than those presented by Rohm and Haas' current Patent claims. Thus, it would be a waste of time, money and resources to proceed with this case now, especially in view of the limited activity in the case to date. *See, e.g., Ralph Gonnocci Revocable Living Trust v. Three M Tool & Mach., Inc.,* 68 U.S.P.Q.2d 1755, 1757 (E.D. Mich. 2003) ("if available and practical, [reexamination by the PTO] should be deferred to by the courts, especially where the infringement litigation is in the early stages.") (citation omitted).

The only legitimate issue that Rohm and Haas has identified from a stay is easily remedied. Specifically, as explained below, Honeywell is willing to engage in settlement discussions with Judge Thynge, whether or not the case is stayed in other respects. The other "prejudice" identified by Rohm and Haas -- the "delay" in obtaining an injunction while the reexamination is conducted -- is not undue prejudice at all. Not only is Rohm and Haas incorrect that it would be entitled to an injunction under the current caselaw even were its patent valid and infringed, but any delay here is the direct result Rohm and Haas' failure to pursue this litigation for over three and a half years after learning of Honeywell's alleged infringement and its own voluntary business decision to enter into an agreement with Intel

REDACTED                                        (*see* Ans. Br. at 13-15). It is because of

these *voluntary* actions, not the requested stay, that Rohm and Haas now finds itself in a tight

2

race with the expiration date of its Patents. This is not the type of "prejudice" that any Court has recognized as a legitimate basis for opposing a stay. The equities therefore favor granting Honeywell's motion to stay this case until reexamination proceedings are completed.

ARGUMENT

I.      **Honeywell Has Not Been "Hid[ing] From The Settlement Table"**

One of the main plot lines in Rohm and Haas' answer brief is the fiction that Honeywell's stay motion, as well as the timing of its reexamination requests, is part of a pervasive, sinister effort to delay this case and "hide from the settlement table." Ans. Br. at 5, 8. This argument is utter nonsense. It is Rohm and Haas, not Honeywell, who engaged in dilatory conduct.

Rohm and Haas concedes in its interrogatory responses "that it first became aware of Honeywell's infringement around the end of 2002 and the beginning of 2003 . . .." *See* Rohm and Haas' Response to Interrogatory No. 11 (attached hereto as Exhibit G). Belying its present claims of urgency, Rohm and Haas did *nothing* about this alleged infringement until June 2004 -- more than a year and a half later -- when it notified Honeywell that Honeywell's DUO 248 antireflective coating products potentially infringed the '128 Patent. *See* Op. Br. at Exhibit A.

Honeywell acknowledged receipt of Rohm and Haas' notice letter on June 11, 2004, and substantively responded to it on August 5, 2004. At that time, it explicitly informed Rohm and Haas:

> Our investigation to date leads us to believe that we do not infringe any claims of any of your patents and that their claims are invalid. If you have evidence to the contrary, please forward it . . . so that we may consider it. Likewise, if you would like us to consider a license as part of our investigation, please send us your proposal.

3

*See* August 5, 2004 letter from Steven J. Kirshner to Darryl P. Frickey (attached hereto as Exhibit H).

Rohm and Haas never provided infringement evidence, sent a license proposal or otherwise formally replied to Honeywell's August 2004 letter. Indeed, Rohm and Haas did not contact Honeywell until almost two more years later -- May 5, 2006 -- when it notified Honeywell out of the blue that it had filed, but not served, its Complaint in this action. This was three and a half years after coming to the belief that Honeywell was infringing. When Honeywell again requested a licensing proposal to resolve a dispute that it had assumed was over based on Plaintiff's four year's radio silence, Rohm and Haas offered an $^{REL}$royalty -- a figure that Intel, the parties' mutual customer, characterized as "ridiculous and unprecedented." *See* Rohm and Haas' License Proposal to Honeywell (attached hereto as Exhibit I).

Honeywell nevertheless remained at the bargaining table. Among other things, it insisted that Rohm and Haas discuss its infringement claims with Intel,          REDACTED
REDACTED          , and the only entity that could possibly be a direct infringer of Rohm and Haas' Patents, which claim coated substrates and methods for making them, rather than the antireflective coatings that Honeywell produces and supplies.[2]

---

[2]    Honeywell sells an antireflective composition to Intel, which is solely responsible for any subsequent processing steps involving coating this composition onto a substrate, or applying an overcoat of a photoresist composition. Thus, at most, Rohm and Haas can assert a claim for inducement or contributory infringement against Honeywell under 35 U.S.C. §§ 271(b) and (c). Apart from the question of whether there is any direct infringement by Intel, Honeywell believes that Rohm and Haas will not be able to prove induced infringement under new Federal Circuit precedent because it will be unable to show that Honeywell had the requisite intent to induce Intel to infringe the Patents when antireflective coating products to Intel. *See DSU Med. Corp. v. JMS Co.*, Case No. 04-1620, 2006 U.S. App. LEXIS 30511, *26 (Fed. Cir. 2006) (clarifying that the inducement standard requires knowledge of the patent and "evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities[.]"). Indeed, there is no possibility that Rohm and Haas can prove that Honeywell had the requisite intent prior to 2004, when Honeywell first learned of the Patents. Honeywell also believes Rohm and Haas' contributory infringement claim will fail because Intel
*(cont'd)*

4

Honeywell also continued to press settlement discussions with Rohm and Haas directly. Specifically, on November 2, 2006, Rebecca Liebert, Vice President and General Manager for Honeywell's Electronic Materials business unit, contacted Julie Planchet, a senior commercial executive at Rohm and Haas, to arrange a comprehensive settlement discussion at Rohm and Haas' facilities in Marlboro, Massachusetts involving commercial leaders, in-house counsel, and outside litigation counsel. Both sides were to provide detailed legal positions relating to non-infringement and damages issues at this meeting, which was eventually set for November 16, 2006.

On November 7, 2006, Ms. Planchet of Rohm and Haas advised Ms. Liebert of Honeywell that she would need to meet with Yi Hyon Paik, President of Rohm and Haas, in advance of the November 16 settlement meeting, because Mr. Paik would not be available on that date. On November 10, Ms. Liebert visited Mr. Paik at the Rohm and Haas office in Marlboro to discuss settlement. This meeting was not successful. As a result, on November 13, just three days before the planned settlement meeting that would involve both parties' counsel and commercial lenders, Rohm and Haas' in house counsel notified his counterpart at Honeywell that Rohm and Haas was canceling the November 16 settlement meeting, and that "all legal positions will be addressed in Court."

Between November 13 and November 30, 2006, Ms. Liebert initiated several additional discussions with Mr. Paik concerning potential settlement terms, but was unable to reach an agreement. Honeywell made a final attempt to settle the dispute just before it filed its reexamination requests on December 1, when Nance Dicciani, President of Honeywell's

---

*(cont'd from previous page)*
uses the accused products in "substantially noninfringing" ways, including application, *inter alia*, involving conventional, rather than chemically amplified, photoresists.

Specialty Materials business unit and a direct report to Honeywell International's CEO, contacted and made a final offer to Pierre Brondeau, a senior Rohm and Haas executive. This offer was also rejected. Thereafter, Honeywell filed its reexamination requests, which it had refrained from doing until then solely in order to avoid disrupting the parties' ongoing settlement discussions.[3]

## II.    Rohm And Haas Will Not Be Unduly Prejudiced By A Stay

Rohm and Haas also opposes Honeywell's stay motion on the grounds that it will be prejudiced by a stay because a stay (i) "would deny the parties the benefit of working with Magistrate Judge Thynge in February to explore settlement"; and (ii) would prevent Rohm and Haas from obtaining a permanent injunction against Honeywell post–trial. *See* Ans. Br. at 12-15. Neither of these arguments is persuasive.

The simple answer to the first argument is that Honeywell is willing to proceed with the February conference with Judge Thynge to discuss settlement, even if this case is otherwise stayed. Honeywell is also willing to participate in any mediation sessions that Judge Thynge might direct. Therefore, there is no prejudice to Rohm and Haas on this score. Rohm and Haas' second prejudice argument is also easily rebutted. Courts have not recognized a party's inability to enforce an injunction as a basis for "undue prejudice" in connection with a motion to stay pending reexamination. This is because a patent holder's right to enforce its patent, by injunction or otherwise, depends on the validity and scope of the patent – *i.e.*, the very

---

[3]    Rohm and Haas also insinuates that Honeywell should have filed its reexamination requests earlier, after it first concluded the Patents were invalid in 2004. *See* Ans Br. at 1, 7-9. This insinuation is meritless. Honeywell had no reason to file for reexamination before Rohm and Haas filed suit in May 2006. In fact, as discussed above, Honeywell thought the matter had been dropped when Rohm and Haas did not respond to its August 2004 letter denying infringement. After Honeywell was sued, it began to explore the possibility of filing for reexamination and notified Rohm and Haas and the Court of its intent to do so at the earliest possible date.

issues that the reexamination proceeding is likely to impact. For this reason, this Court recently

rejected a similar prejudice argument in *Applera Corp. v. Thermo Finnigan LLC*, C.A. No. 04-

1230-GMS (D. Del. Dec. 28, 2005):

> Thermos asserts that a stay will prejudice it in that it will be unable to enforce its
> patent. The court is not persuaded. First, Thermo's position assumes the PTO
> will leave the claims of the '784 patent unaltered after reexamination. Further,
> while Thermo may suffer some prejudice from a stay, the court is not persuaded
> that a stay would *unduly* prejudice Thermo, or present a clear tactical
> disadvantage. On the other hand, granting the stay will simplify the issues and
> focus the litigation.

The Court's comments in its *Applera* order are bolstered by the undisputed fact that 74% of all

reexaminations result in the cancellation or modification of at least some of the claims. *See* Op.

Br. at Exhibit D. Thus, the Patent claims are likely to emerge from reexamination in a materially

different form, if they emerge at all.

Rohm and Haas' argument of "undue prejudice" further assumes that Rohm and

Haas would be automatically entitled to a permanent injunction if its claims survive

reexamination and it prevails at trial. This argument might have been true in the past, but the

Supreme Court recently ruled that a patentee is only entitled to an injunction after trial if it can

satisfy the traditional four-prong test, including a showing of irreparable harm. *See eBay, Inc. v.*

*MercExchange, L.L.C.* 126 S. Ct. 1837, 1839-40 (2006).[4] Rohm and Haas will have difficulty

making the necessary showing here, since it voluntarily entered into an agreement with Intel

REDACTED

REDACTED

---

[4]    The test requires a plaintiff/patent holder, after proving infringement, to demonstrate: (1) that it has
suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate for that
injury; (3) that considering the balance of hardships between the plaintiff and defendant, a remedy in
equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.
126 S. Ct. at 1839 (2006).

In this regard, it is worth remembering that Rohm and Haas originally proposed to Honeywell that the *Markman* hearing in this case be set for January, 2008 (*see* Rohm and Haas' Proposed Timeline (attached hereto as Exhibit J)), almost two years after the Complaint was filed, and five years after it first became aware of Honeywell's alleged infringement. *See* Exhibit G. Had this proposal been adopted, it is highly unlikely the trial of this case would have been scheduled for March 2008. In such case, even assuming Rohm and Haas prevailed, that a permanent injunction was entered immediately after trial, and that there was no post-trial briefing or argument -- an unlikely scenario in the simplest of patent cases-- it would have been foreseeable, and arguably likely, that Rohm and Haas would not have been in a position to enforce the injunction         REDACTED         until after the expiration of its Patents. Despite this foreseeable possibility, Rohm and Haas *never* expressed any urgency or concern about the timing of this case until Honeywell filed its stay motion. Indeed, it was *Honeywell*, not Rohm and Haas, that proposed a more accelerated discovery and *Markman* schedule when the parties met and conferred pursuant to F.R.C.P. 26(f) to discuss the proposed scheduling order. Accordingly, Rohm and Haas should not be heard to complain now that a stay of these proceedings might result in a trial date shortly before the expiration of its Patents.

Rohm and Haas' ability to satisfy the test for an injunction is also questionable in light of the fact that to Honeywell's knowledge, Rohm and Haas does not market a competing resin that Intel could substitute for the product accused of infringement. Thus, money damages should afford Rohm and Haas adequate relief if it prevails at a trial. Notably, Rohm and Haas does not question Honeywell's ability to respond in damages if this case is stayed.

Rohm and Haas' claim of undue prejudice is further undermined by its decision to delay bringing suit against Honeywell for at least three years after the date that it first became

8

aware of the facts forming the basis of its Complaint. *See* Exhibit G. Rohm and Haas'

opposition brief provides *no explanation* to account for this time. This self-imposed delay,

coupled with Rohm and Haas' voluntary decision to give up its right to seek an immediate

injunction as the cost of doing business with the Intel (*see* Ans. Br. at 14-15), and *not* the stay

sought by Honeywell, are the reasons for the limited time window that Rohm and Haas will have

to enforce any injunction entered in this case before the Patents are scheduled to expire in

November 2011. Accordingly, the Court should not deny a stay on this basis.

### III.     It Is Of No Moment That Honeywell's Reexamination Requests Rely On Both "New" And Old Prior Art

Rohm and Haas also argues that Honeywell is not entitled to a stay because

Honeywell's reexamination requests "are largely based on art previously considered or

previously known to Honeywell[.]"[5] Ans. Br. at 9. This suggestion is both legally and factually

irrelevant.

As an initial matter, Honeywell's reexamination requests are based on the

proposition that the cited references, either alone or in combination, raise "substantial new

questions of patentability" with regard to each of the claims of the Patents. This is the legal

standard the PTO will apply in evaluating Honeywell's reexamination requests, not whether the

art cited in these requests "was previously considered or known to Honeywell." M.P.E.P. § 2242.

In this regard it is of no moment that certain art relied on by Honeywell may have been

---

[5]   Rohm and Haas contends that four references relied on in Honeywell's reexamination requests "were
originally considered by the examiner." Ans. Br. at 9. One of these references, *Green* (U.S. Patent No.
4,299,938) was not relied upon in *either* of the reexamination requests, but rather was included only as
an illustrative citation. It is for this reason that Honeywell's request "does not discuss the reference"
(*see* Ans. Br. at 9 fn. 2, and 10, fn. 4). *Jain* (U.S. Patent No. 4,863,827) and *Green* (U.S. Patent No.
4,413,052) – were discussed only during the prosecution of the grandparent application (*Jain*) and
parent application (*Green*) of the '128 patent (*i.e.*, the great-great-grandparent application (*Jain*) and
great-grandparent application (*Green*) of the '864 patent). The final reference, *Arnold* (U.S. Patent No.
4,910,122), was not substantively discussed by the examiner during the prosecution of any application
leading to the Patents.

previously identified to the PTO. The current PTO rules expressly state that reexamination requests can be based on art previously considered by the examiner. *See* M.P.E.P. § 2242; 35 U.S.C. § 312(a) ("The existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the Office or considered by the Office.") *See also* M.P.E.P § 2258.01 ("reliance on previously cited/considered art, i.e., 'old art,' does not necessarily preclude the existence of a substantial new question of patentability (SNQ) *that is based exclusively* on that old art. Rather, determinations on whether a SNQ exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis.") (emphasis added).

Moreover, Rohm and Haas' argument totally ignores the fact that most of the references cited in Honeywell's reexamination requests were *not* previously considered by the examiner. The references that Rohm and Haas claims were previously considered represent just 3 out of the 8 references relied on in the '128 reexamination request (*see* Op. Br. Exhibit B, at 3), and 2 out of the 15 references relied on in the '864 reexamination request (*see* Op. Br. Exhibit C, at 3-4). Rohm and Haas does not contend, nor could it, that the other 18 references cited by Honeywell were previously considered by the PTO, either alone or in combination with the "old" references that Rohm and Haas contends were previously considered.[6] The "new" references include several references that clearly anticipate the claims of both Patents.

---

[6]    With respect to the '128 reexamination request, the 5 references that undisputedly were *not* considered by the examiner are: *Brewer, Koshimo, Lin, Rohde,* and *Silverstein. See* Op. Br. Exhibit B, at 3. The 11 references that undisputedly were *not* previously considered by the examiner in connection with the '864 reexamination request are: *Brewer, Gleason, Koshimo, Lin, McKean, Nalamasu, Rohde, Silverstein, Takeda, Willson,* and *Yau. See* Op. Br. Exhibit C at 3-4.

Finally, Rohm and Haas' insinuation that Honeywell's reexamination requests are flawed because rely on references that Honeywell cited in the context of unrelated Honeywell applications, is preposterous. Ans. Br. at 10-11. Honeywell has no obligation, and cannot reasonably be expected, to recall the countless prior art references cited in its over 25,000 patents worldwide. In any event, as noted above, the issue is not whether Honeywell was previously aware of the art relied on in its reexamination requests, but rather whether this art raises "a substantial new question of patentability" *in the context of the Patents*, whether alone or in combination.

The two cases Rohm and Haas cites in support of its claim that "courts have declined to grant a stay pending reexamination when there is evidence that the moving party has known about the allegedly invalidating prior art well-before filing a request for reexamination", are readily distinguishable. Ans. Br. at 18. In *Lectrolarm Custom Servs., Inc. v. Vicon Indus., Inc.*, 2005 WL 2175436 (W.D. Tenn. Sept. 1, 2005), defendants first sought reexamination after fact and expert discovery had closed, and it was "undisputed that [they] were aware of the prior art cited in their request for reexamination *and its relevance to [Plaintiff's] claim of infringement at least five years before they filed their request.*" *Id.* at *4. Here, in contrast, discovery in this case "is just getting started[.]" Ans. Br. at 19. Moreover, to the extent that Honeywell "knew" about any of the references relied on in its reexamination requests by virtue of their being cited in unrelated Honeywell patent applications, Honeywell had no knowledge of their "relevance to Plaintiff's claim of infringement" until certain of these references were identified during the investigation Honeywell conducted after Rohm and Haas sent its notice letter in 2004. At that time, however, as noted above, Honeywell had no reason to seek reexamination because it was awaiting a licensing proposal from Rohm and Haas. When this proposal failed to arrive after a

11

multi-year period, Honeywell reasonably assumed the matter was concluded. Other references relied on by Honeywell were culled from numerous other references identified in searches conducted after this litigation was filed, and required time to analyze to determine their relevance to the asserted Patent claims. As soon as this analysis was substantially complete and Honeywell had made a decision to seek reexamination, Honeywell notified the Court and Rohm and Haas of its intention to do so. Accordingly, the facts here are nothing like the facts in *Lectrolarm.*

The facts in *Remington Arms Co. v. Modern Muzzleloading, Inc.*, 1998 WL 1037920 (M.D.N.C. Dec. 17, 1998) also are quite different from the facts presented here. In *Remington*, the defendant filed *ex parte* reexamination early in the proceedings, which the PTO denied. *Id.* at *3. After dispositive motions had been briefed and filed, a trial date was set, and fact and expert discovery had closed, the defendant tried to file a *second* reexamination request. *Id.* at *3. The *Remington* court recognized that stays pending reexamination are to be "liberally granted", and that courts "[g]enerally . . . grant stays where the case is in the early stages of litigation." *Id.* at *2. Nevertheless, the court declined to stay the litigation because the "late stage of the litigation" would effectively prevent judicial resources from being preserved by a stay. The court was also concerned that the defendant was using the reexamination process as a dilatory tactic because it filed a second request at an advanced stage of the litigation, *after* the PTO had already denied its first request. *Id.* at *2-3.

## IV.   There Is Nothing Sinister About Honeywell's Decision To File An *Ex Parte* Reexamination Request

Rohm and Haas also suggests that Honeywell improperly filed for *ex parte* reexamination, instead of *inter partes* reexamination, because it "refuses to be bound by the outcome of either reexamination, . . . so after two or more years it can return to this court and

12

continue to assert the same (or new) prior art even after losing the reexaminations." *See* Ans. Br. at 1. This argument is also nonsense.

What Rohm and Haas ignores is that not only is *inter partes* reexamination entirely "optional" under the M.P.E.P, *see* M.P.E.P. § 2600, but also the vast majority of reexaminations requested by third parties are of the traditional ex parte variety. *See* Op. Br. at Exhibit E (showing that, between 2001-2006, 1,387 *ex parte* reexamination requests were filed by third parties, compared to only 181 *inter partes* requests).

If Rohm and Haas' Patent claims are reexamined and reissued over the prior art cited in Honeywell's reexamination requests, Rohm and Haas will no doubt try to trumpet that fact to the jury and the Court to the extent Honeywell seeks to invalidate the Patents based on the same art. This is the reason why many defendants decide against seeking reexamination while patent litigation is pending. If anything, Honeywell's decision to take this risk weighs in favor of Rohm and Haas, which will have the playing field to itself during the *ex parte* reexamination proceedings.

## V.   Honeywell Did Not "Mislead" The Court By Relying On PTO Statistics Relating to Reexamination Proceedings

No doubt recognizing that PTO reexamination statistics favor Honeywell's position, Rohm and Haas claims that "Honeywell's statistics are misleading," and that "Honeywell can take no shelter behind its statistics." Ans. Br. at 17. The suggestion that Honeywell has somehow misrepresented PTO statistics relating to reexamination is completely without factual basis. Indeed, Rohm and Haas relies on the "flip side" of the very same statistics cited in Honeywell's opening brief.

For example, Honeywell argued in its opening brief that claims are cancelled or modified by the PTO in 74% of *ex parte* reexaminations. Op. Br. at Exhibit E. Rohm and Haas

13

recognizes the truth of these statistics (*see* Ans. Br. at 16-17), but attempts to discount their relevance by glossing over them and spinning them in a different way. Rohm and Haas argues that "nearly 1 in 4 patents emerge without any change" (Ans. Br. at 16-17). This only highlights Honeywell's point, which is that 3 out of 4 reexamined patents, or roughly 75%, are cancelled or emerge with modified claim language. *See* Op. Br. at Exhibit E. For this reasons, Rohm and Haas' assertion that "reexaminations overwhelmingly affirm the PTO's original decision to grant the patent at issue" (Ans. Br. at 16) is plainly false. If this were true, patents would generally emerge from reexamination unchanged. Rohm and Haas' assertion that "only 1 of 10 requests actually result in the cancellation of all claims" (Ans. Br. at 16) also proves nothing. For one thing, it is clearly consistent with the statements that Honeywell made about PTO reexamination statistics. More importantly, is it not necessary for al of the Patent claims to be cancelled for the reexamination to have a substantial impact on the pending litigation. It is more than sufficient if "at least one" of the Patents is voided, or if some or all of the amended claims are materially changed, as statistics suggest is likely.

## VI.    Rohm and Haas Concedes This Case Is "Just Getting Started"

Finally, although Rohm and Haas argues half-heartedly that "[a]ctive discovery is well underway" (Ans. Br. at 4), Rohm and Haas ultimately admits "this case is just getting started[.]" Ans. Br. at 19.

In fact, there can be no real dispute that this case is not in the earliest stages of litigation. Only written discovery has been served, and that process was initiated by Honeywell, *not* Rohm and Haas. (D.I. 26, 27, 28). Moreover, although the parties have provided written responses to discovery requests, no documents have been produced, and the parties have agreed to refrain from doing so to avoid unnecessary expense until this Court has ruled on the pending stay motion. No depositions have scheduled, and fact and expert discovery are not set to close

14

for many months. Finally, the Court is not scheduled to hold a *Markman* hearing until September 5, 2007 and trial will not occur until at least March 2008. Thus, a stay in this case should be granted.

## CONCLUSION

For the reasons set forth above and in Honeywell's opening brief, Honeywell respectfully asks that the Court stay this action pending the PTO's decision on Honeywell's requests for reexamination of the Patents, and pending the conclusion of any reexamination proceedings undertaken by the PTO as a result of these requests.

Respectfully submitted,

/s/ Jeremy D. Anderson
Robert S. Saunders (I.D. #3027)
Jeremy D. Anderson (I.D. #4515)
SKADDEN, ARPS, SLATE
   MEAGHER & FLOM, LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899
Tel: (302) 651.3000
Fax: (302) 651.3001


OF COUNSEL:
Constance S. Huttner
Emily J. Zelenock
Stacey L. Cohen
SKADDEN, ARPS, SLATE
   MEAGHER & FLOM, LLP
Four Times Square
New York, New York 10036
Tel: (212) 735.3000
Fax: (212) 735.2000

Dated:  January 5, 2007

# EXHIBIT G

**RESPONSE TO INTERROGATORY NO. 10:**

Rohm and Haas objects to interrogatory no. 10 (effectively no. 18) as seeking information protected by the attorney-client and work product exemptions to discovery. Rohm and Haas further objects that the interrogatory is overbroad in that it seeks information not relevant to this litigation. Without waiving its general and specific objections, Rohm and Haas states that oppositions related to the patents in suit were filed in the European Patent Office and the Japan Patent Office. Other than these oppositions, Rohm and Haas is unaware of any litigations or oppositions meeting the definitions of this interrogatory.

**INTERROGATORY NO. 11:**

State the date(s) on which Rohm and Haas first learned about each alleged infringing Honeywell product and describe how Rohm and Haas became aware of the alleged infringing activity.

**RESPONSE TO INTERROGATORY NO. 11:**

Rohm and Haas objects to interrogatory no. 11 (effectively no. 19) as premature as discovery is just beginning and Rohm and Haas has not had opportunity to review any Honeywell documents, analyze the Honeywell products at issue, or depose any Honeywell witnesses (or third party witnesses). Rohm and Haas further objects to this interrogatory as seeking information protected by the attorney-client and work product exemptions to discovery. Subject to its general and specific objections, Rohm and Haas states that it first became aware of Honeywell's infringement around the end of 2002 and the beginning of 2003 when publications describing SLAM and DUO 248 became

available, including but not limited to: Kennedy et al., Proc. SPIE, Vol. 5039, pp. 144-151 (2003), and Kennedy, SPIE 28th Annual Microlithography Conference, Feb. 23, 2003.

**INTERROGATORY NO. 12:**

Describe all work performed prior to the filing date of the Patents relating to any silicon-containing antireflective compositions, including, but not limited to: (a) any work supporting or otherwise relating to the statements made in col. 6, ll. 29-34 of the '128 patent and col. 6, ll. 28-33 of the '864 patent; and (b) any silicon-containing antireflective composition comprising an "anthracene material."

**RESPONSE TO INTERROGATORY NO. 12:**

Rohm and Haas objects to interrogatory no. 12 (effectively no. 20) as overly broad and inclusive of irrelevant subject matter that would be burdensome to obtain because it includes antireflective compositions that are not at issue in this litigation. Furthermore, Honeywell asks Rohm and Haas to "describe all work" without any limitation as to time, nature, or the distance from the activity within the patent in suit.

Without waving its general and specific objections, Rohm and Haas states that it is collecting relevant documents which will reflect information requested by this interrogatory insofar as it is limited to the asserted claims, and those documents when located, copied and numbered will, to the extent not objectionable, be made available to Honeywell under the terms and conditions specified by Rohm and Haas in its responses to Honeywell's document requests. Honeywell can as easily as Rohm and Haas, determine the information sought by this interrogatory pursuant to Fed .R. Civ. P. 33(d).

20

# EXHIBIT H

**Honeywell**

**Electronic Materials**
Honeywell
1349 Moffett Park Dr.
Sunnyvale, CA 94089
408-962-2000
408-980-1430 Fax

August 5, 2004

VIA FACSIMILE and FEDERAL EXPRESS
508-485-0113

Mr. Darryl P. Frickey
Director of Patents and Assistant Secretary
Rohm and Haas Electronic Materials, LLC
455 Forest Street
Marlborough, MA 01752

Dear Mr. Frickey,

This letter is in response to your recent correspondence on U.S. Patent No. 6,472,128 and its family member patents.

We have been diligently investigating this matter. Our investigation to date leads us to believe that we do not infringe any claims of any of your patents and that their claims are invalid. If you have evidence to the contrary, please forward it to me so that we may consider it. Likewise, if you would like us to consider a license as part of our investigation, please send us your proposal.

Further, as you may know, Honeywell has a significant patent portfolio in the area of anti-reflective coating, as well as in other areas of electronic materials technology. It may be the case that your organization could benefit from a license under Honeywell's portfolio. We can explore this as well if it would be of interest to Rohm and Haas.

Sincerely,

Steven J. Kirschner

Intellectual Property Counsel
and Assistant Secretary, Electronic Materials
Honeywell International, Inc.

cc: Paul Raymond

Printed with Soy Ink on
60% Recycled Paper, 30% Post-Consumer

# EXHIBIT I

# THIS FILE HAS BEEN REDACTED

# EXHIBIT J

### PROPOSED TIMELINE
*Rohm and Haas Electronic Materials LLC v. Honeywell International Inc.*
### Civil Action No. 06-297-GMS

**13 Oct 2006**    Service of Initial Set of Document Requests, Interrogatories, Requests for
Admission
50 Interrogatories (maximum each side)
35 Requests for Admission (maximum each side)
12 Fact Depositions (maximum each side)

**08 Dec 2006**    Responses to Initial Set of Document Requests, Interrogatories
Defendant to determine if it is relying on advice of counsel as a defense to
willful infringement

**12 Jan 2007**    Document Production Ends
(rolling production up until this date)
Privilege Log Due
Opinions of counsel (if applicable) due to be produced

**09 Mar 2007**    Fact Depositions Begin

**27 Apr 2007**    Fact Depositions End

**04 May 2007**    Joinder of Parties/Amendment of Pleadings/Responses to Contention
Interrogatories/Responses to Initial Set of Requests for Admission

**08 Jun 2007**    Opening Expert Reports Due

**06 Jul 2007**    Rebuttal Expert Reports Due

**03 Aug 2007**    Expert Depositions Begin

**31 Aug 2007**    Expert Depositions End

**05 Oct 2007**    Opening Briefs Case Dispositive Motions/Markman Due

**26 Oct 2007**    Answer Briefs Case Dispositive Motions/Markman Due

**09 Nov 2007**    Replies to Answer Briefs/Markman Due

**16 Nov 2007**    Joint Final Claim Chart Due

**__ Jan 2008**    Markman Hearing.

**Trial Date**    To be set by the Court
CB_490970_1.DOC