## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ROHM AND HAAS ELECTRONIC )
MATERIALS LLC )
                                   )
        Plaintiff, )        Civil Action No. 06-297-GMS
                                   )
        v. )
                                     )
HONEYWELL INTERNATIONAL INC. )        **REDACTED VERSION OF DI 78**
                                     )
        Defendant. )
_____ )

## PLAINTIFF ROHM AND HAAS ELECTRONIC MATERIALS LLC'S
## MEMORANDUM IN SUPPORT OF ITS
## MOTION TO ENFORCE THE SETTLEMENT AGREEMENT

CONNOLLY BOVE LODGE & HUTZ LLP

Rudolf E. Hutz (#484)
Daniel C. Mulveny (#3984)
1007 N. Orange Street
P. O. Box 2207
Wilmington, DE 19899-2207
(302) 658-9141

*Attorneys for Plaintiff*
*Rohm and Haas Electronic Materials LLC*

Dated: July 31, 2007

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................1

II.     NATURE AND STAGE OF THE PROCEEDINGS ...............................................1

III.    SUMMARY OF ARGUMENT ..........................................................................2

IV.     STATEMENT OF FACTS ...............................................................................4

        A.     The Parties Mutually Agreed to Settle this Case ...........................................4

                1.     The Parties reached an Agreement in Principle to Settle in
                       April 2007 .....................................................................................4

                2.     Settlement Discussions Briefly Broke Down in June, Then
                       Resumed and Concluded with a Formal Settlement
                       Agreement to Resolve the Litigation ................................................5

                3.     Full Agreement was Reached on All Terms of the
                       Settlement Agreement and the Parties Jointly Notified the
                       Court That They Had Reached an Agreement to Settle and
                       Dismiss this Case ...........................................................................5

        B.     Honeywell Now Refuses to Execute Its Copy of the Settlement
               Agreement Claiming it was Unaware of an Interview Summary
               that Allegedly Changes Everything ...........................................................6

                1.     In Agreeing to Settle This Case, the Parties Contemplated
                       the Possibility that Asserted Patent Claims May Be
                       Amended or Cancelled During Reexamination ..............................7

                2.     Honeywell Agreed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
                       ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ......................8

                3.     The Interview Summary Provides No Basis for
                       Honeywell's Purported Belief that *All* of the Claims of
                       *Both* Patents in Suit will be Disallowed ...........................................9

                4.     Honeywell's Lack of Awareness of the Interview Summary
                       is the Fault of Its Own Counsel ......................................................10

        C.     Honeywell's Refusal to Sign the Settlement Agreement is a Ploy to
               Renegotiate the Settlement Agreement ▮▮▮▮▮▮▮▮▮
               ▮▮▮▮ ...........................................................................................10

V.    ARGUMENT ...................................................................................................11

    A.    The Parties Have Agreed to Settle this Litigation and All Essential, and Even Non-Essential Terms Were Agreed To .......................................12

    B.    Rohm and Haas is Ready, Willing, and Able to Settle this Case and to Carry Out its Obligations Under the Settlement Agreement .................12

    C.    Honeywell Has No Legitimate Basis For its Refusal to Settle this Case ........................................................................................................12

    D.    Honeywell's Refusal to Sign the Settlement Agreement Warrants an Award of Rohm and Haas's Attorneys' Fees and Costs in Bringing this Motion .............................................................................15

VI.    CONCLUSION ..............................................................................................16

## TABLE OF AUTHORITIES

**Cases**

*Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970) ............................ 11, 12

*Hobbs v. American Investors Mgt., Inc.*, 576 F.2d 29, at 35 (3d Cir. 1978) ..................... 15

*Leonard v. University of Delaware*, 204 F. Supp.2d 784, 787 (D. Del. 2002) ........... 11, 15

## I.     INTRODUCTION

This case has been settled. After long negotiations, the Parties agreed to dismiss the case and enter into a patent licensing agreement. Both the basic principles and the precise wording of the settlement terms were written down and agreed to. The Parties jointly notified the Court that they had settled the case. All that remained was the ceremonial exchange of copies of the signed settlement agreement and a formal dismissal of the litigation.

Now, defendant Honeywell International Inc. ("Honeywell") refuses to honor its agreement and sign the settlement papers. Honeywell's grounds for refusal are set forth in its July 26, 2007 letter to this Court. (D.I. 75). These grounds, however, are meritless. Honeywell is merely trying belatedly to renegotiate the terms of a settlement it had agreed to.

Honeywell's refusal to sign the agreed-to papers requires plaintiff Rohm and Haas Electronic Materials LLC ("Rohm and Haas") to file this motion to enforce the agreement to settle the case and for an award of its attorneys' fees in bringing the motion. This is Rohm and Haas's memorandum in support of that motion.

## II.     NATURE AND STAGE OF THE PROCEEDINGS

On July 17, 2007, the parties reached an agreement and reduced to writing all terms of a Confidential Settlement Agreement with Mutual Release and Patent License. (Mulveny Decl. at ¶ 2, Ex. A ["Settlement Agreement"]). On July 18, 2007, the Parties jointly contacted the Court by telephone, and later by letter, stating that (1) "they have reached a settlement of the ... case," (2) the parties were exchanging signed copies of the agreement and, (3) after that process had been completed, the parties would submit a

stipulation of dismissal. (D.I. 74). Rohm and Haas had already signed the Settlement Agreement and faxed the signed copy to Honeywell on July 17th. (Mulveny Decl. at ¶ 3, Ex. B). Honeywell's "person that needs to sign the document" was then traveling, but Honeywell's counsel represented that Honeywell likely would sign and return the fully-executed Settlement Agreement by late afternoon, July 19th (Mulveny Decl. at ¶ 4, Ex. C).

Now, however, Honeywell refuses to execute its copy of the Settlement Agreement and the attached Stipulation of Dismissal. Its refusal is based on its alleged belief that Rohm and Haas's patents in suit will not emerge from reexamination with any allowed claims. (D.I. 75). However, both Rohm and Haas and Honeywell always recognized the possibility that the reexaminations might result in patent claims that did not cover Honeywell's products. Thus they negotiated for that contingency. They expressly stated in the Settlement Agreement exactly what the rights and obligations of the parties would be if that result came to pass.

Honeywell's refusal to execute the Settlement Agreement and to dismiss this case is baseless.

## III.    SUMMARY OF ARGUMENT

1.    The Parties mutually agreed to settle this case and to enter into the Settlement Agreement. Honeywell cannot seriously contest this fact because it jointly notified this Court on numerous occasions that the parties had agreed to settle the case. The Settlement Agreement is a valid and enforceable contract under Delaware law. It cannot now be unilaterally rescinded by Honeywell. Both parties agreed to be bound by

its terms. There is no dispute as to any term, let alone any material term. The terms are in writing and Honeywell cannot contest what they mean.

2.      Honeywell now refuses to execute the Settlement Agreement and the Stipulation of Dismissal. Honeywell is reneging on its bargain because it claims it was unaware of a Reexamination Interview Summary ("Interview Summary") prior to its admitted agreement. Honeywell claims that the Interview Summary portends the future cancellation of all the claims in both patents in suit. Honeywell also suggests that Rohm and Haas withheld the Interview Summary from Honeywell even though the Interview Summary shows service on Honeywell's counsel on July 12th. According to Honeywell, had it been aware of the Interview Summary, it never would have agreed to settle this case on the terms set forth in the Settlement Agreement.

3.      Honeywell's position is untenable for several basic reasons. First, the Settlement Agreement itself expressly contemplates the possibility that both of Rohm and Haas's patents in suit would emerge from reexamination without claims that cover Honeywell's accused products. The rights and obligations of the parties, if that occurred, are set out in detail in the Settlement Agreement. Thus, even if this unlikely result were to occur, Honeywell was well aware of that future possibility and took it into account when it agreed to settle. More specifically, ████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████. Second, the Interview Summary on which Honeywell relies does not support Honeywell's purported "new" belief that all of the claims of both patents in suit will be cancelled in reexamination. The Interview Summary simply reflects that no agreement was reached at an interview and that Rohm

3

and Haas would be filing further information for the Examiner's consideration. Third,
Rohm and Haas did not withhold the Interview Summary. By rule, the Interview
Summary was served by the United States Patent and Trademark Office ("PTO") on
Constance Huttner -- Honeywell's litigation and reexamination counsel -- and the
Interview Summary so notes. However, Ms. Huttner apparently failed to provide her
change of address to the PTO. But for Ms. Huttner's failure to update her address,
Honeywell would have been timely notified of the Interview Summary by the PTO.
Rohm and Haas had no obligation to re-serve Honeywell.

4.    Honeywell's unjustified refusal to sign the Settlement Agreement warrants
an award to Rohm and Haas of its attorneys' fees and costs incurred in bringing this
motion.

## IV.    STATEMENT OF FACTS

### A.    The Parties Mutually Agreed to Settle this Case

#### 1.    The Parties reached an Agreement in Principle to Settle in April 2007

Around the end of April 2007, the parties reached an agreement in principle to
settle the case. Based on this agreement in principle, the parties notified the Court of their
agreement, and on May 2, 2007, the parties submitted a joint stipulation requesting that
an amended Scheduling Order be entered to provide time to complete a formal settlement
agreement. (D.I. 55). This joint stipulation stated that "the parties have reached an
agreement in principle to settle the case." (*Id.*). The parties requested that the pretrial
schedule be stayed for 30 days. (*Id.*). A second joint stipulation to extend time was filed
on June 1st to provide more time to formalize a settlement agreement. (D.I. 56). Again,

the parties jointly stated that they had reached an agreement in principle to settle the case. (*Id.*).

### 2. Settlement Discussions Briefly Broke Down in June, Then Resumed and Concluded with a Formal Settlement Agreement to Resolve the Litigation

By mid-June, a dispute arose over the terms for the Settlement Agreement. By June 20th, the dispute appeared insurmountable and the parties broke off their negotiations. (Mulveny Decl. at ¶ 5, Ex. D, first page). The next day, however, the parties resolved their dispute and renewed their commitment to settle this case.

At Honeywell's request, Rohm and Haas prepared a draft Settlement Agreement. Discussions and negotiations proceeded to work out all of the terms to each party's satisfaction. To provide time to complete the Settlement Agreement, the parties submitted two additional joint stipulations for extension of time to the Court. (D.I. 72 and 73). In both joint stipulations, the parties informed the Court that (1) the parties had moved beyond an agreement in principle, (2) they had "reached an agreement to settle this case," and (3) the parties were in the process of completing and executing a formal written agreement acceptable to both. (*Id.*).

### 3. Full Agreement was Reached on All Terms of the Settlement Agreement and the Parties Jointly Notified the Court That They Had Reached an Agreement to Settle and Dismiss this Case

The negotiations and discussions for the terms of the Settlement Agreement concluded after a teleconference on July 17th. The parties reached a complete mutual agreement to *all* of the terms, not just the principle ones. Honeywell sent a draft to Rohm and Haas for review. (Mulveny Decl. at ¶ 6, Ex. E). The changes were accepted and incorporated into the Settlement Agreement. (Mulveny Decl. at ¶ 2, Ex. A). The

Settlement Agreement was then sent out for execution. (Mulveny Decl. at ¶ 7, Ex. F). Rohm and Haas immediately executed the Settlement Agreement. (Mulveny Decl. at ¶ 3, Ex. B). Honeywell stated that it would make a final review and then circulate for execution. (Mulveny Decl. at ¶ 8, Ex. G). The following day, on July 18th, Honeywell represented that Honeywell's "person that needs to sign the document" was then traveling, but that Honeywell likely would sign and return the fully-executed Settlement Agreement by late afternoon, July 19th. (Mulveny Decl. at ¶ 3, Ex. C). Also on July 18th, the parties jointly contacted the Court by telephone, and later by letter, stating that a complete agreement to settle the case had been reached. (D.I. 74). The parties explained that they were exchanging signed copies of the Settlement Agreement, and once completed, they would dismiss the case. (*Id.*).

There can be no dispute that both Rohm and Haas and Honeywell agreed to settle this case. Further, there can be no dispute that the agreement included a mutual promise by both parties to execute the Settlement Agreement and dismiss this case. Should Honeywell now try to deny that settlement was agreed to, Rohm and Haas reserves the right to place before the Court the complete record of all communications that led to the settlement.

**B.    Honeywell Now Refuses to Execute Its Copy of the Settlement Agreement Claiming it was Unaware of an Interview Summary that Allegedly Changes Everything**

Honeywell asserts that it never would have agreed to settle the case had it been aware of the Interview Summary. (D.I. 75). Based on what is said in the Interview Summary, Honeywell now claims that neither of the two patents in suit will emerge from reexamination with any allowed claims. (*Id.*). Further, Honeywell alludes that Rohm and

Haas somehow withheld the Interview Summary from Honeywell prior to the joint call where the parties announced to the Court that they had completed their agreement to settle the case. (*Id.*).

1.     **In Agreeing to Settle This Case, the Parties Contemplated the Possibility that Asserted Patent Claims May Be Amended or Cancelled During Reexamination**

Even if Honeywell were correct in thinking that the Interview Summary faithfully predicts the cancellation of all claims in both of the patents in suit, the Settlement Agreement expressly addresses what would occur in this situation. (Mulveny Decl. at ¶ 2, Ex. A at ¶¶ 3.5 and 3.7). The relevant paragraphs read as follows:



(*Id.*). The above provisions, which Honeywell and Rohm and Haas agreed to as part of the overall settlement of this case, deal with the possibility that ████████████ ███████████████████████████████████████████ ████████████████████ (*Id.*). The full rights and obligations of the parties, were those events to occur, were spelled out and agreed to in detail.

   2.    **Honeywell Agreed** ████████████████████ ███████████

After the parties notified the Court of the agreement in principle to settle in late April 2007, the parties negotiated further to draft the formal agreement. Honeywell prepared an initial "Draft Term Sheet for Settlement and License Agreement" and sent it for Rohm and Haas's review around May 11th. (Mulveny Decl. at ¶ 9, Ex. H ["Term Sheet"]). The Term Sheet included ██████████████████. (*Id.*, ¶ "Royalty"). Later, Honeywell clarified ████████████████████████ ████████████████████████. (Mulveny Decl. at ¶ 10, Ex. I) ("████████████████████████████████ ████████████████████"). Rohm and Haas inserted a provision that ████████████████████████████████████ on June 22nd. (Mulveny Decl. at ¶ 11, Ex. J, enclosed Patent License Agreement at ¶ 3.4). This provision was immediately agreed to by Honeywell and it was incorporated into the final Settlement Agreement and is shown below.



██████████████████████████████████████████████████████

(Mulveny Decl. at ¶ 2, Ex. A at ¶ 3.4, *and see* Mulveny Decl. at ¶ 12, Ex. K, enclosed

Patent License Agreement at ¶ 3.4).

      Honeywell thus agreed ████████████████████████████████

███████████████████████.

**3.    The Interview Summary Provides No Basis for Honeywell's Purported Belief that *All* of the Claims of *Both* Patents in Suit will be Disallowed**

      Honeywell refuses to sign the Settlement Agreement because it now allegedly

believes that the Interview Summary predicts the demise of *all* of the relevant claims in

*both* of the patents in suit. (D.I. 75) The Interview Summary does not support this belief.

      There are two patents in suit: U.S. Patent Nos. 6,472,128 ("the '128 patent") and

6,773,864 ("the '864 patent"). (D.I. 1, ¶¶ 8 and 9). In response to being sued, Honeywell

filed for separate reexaminations of both patents in suit. The Interview Summary was

issued in the reexamination of the '128 patent. To date, the PTO has not issued an office

action for the '864 patent. Thus, the Interview Summary relates only to one of the patents

in suit, not both as Honeywell suggests.

      Further, the substance of the Interview Summary is far short of a final rejection of

all relevant claims. The Interview Summary simply recites what occurred at the interview

and what the patent owner argued and promised. The Examiner states that until a

Supplemental Amendment is filed "to flush out the arguments," "[n]o agreement to

patentability of any of the claims was agreed to." (Mulveny Decl. at ¶ 13, Ex. L, last

page). Thus, even were the Interview Summary a material factor in Honeywell's refusal

to sign the Settlement Agreement, it is not a valid predictor of any end result of both reexaminations.

### 4.  Honeywell's Lack of Awareness of the Interview Summary is the Fault of Its Own Counsel

In its letter to the Court, Honeywell did not acknowledge that on July 12th the PTO served the Interview Summary on Ms. Huttner -- Honeywell's litigation and reexamination counsel. (*Compare* D.I. 75, fn.1 and Mulveny Decl. at ¶ 13, Ex. L, page 2). Apparently Ms. Huttner had not updated her contact information with the PTO because the Interview Summary was addressed to her old law firm. Ms. Huttner notified this Court of her change of address. (D.I. 51). Had Ms. Huttner provided the PTO with her current address, presumably Honeywell would have received the Interview Summary sooner.

Moreover, the PTO also sent Rohm and Haas's reexamination counsel a copy of the Interview Summary on the same date that it was sent to Honeywell. (Mulveny Decl. at ¶ 13, Ex. L, first and second page). There is no basis for Honeywell's veiled suggestion that Rohm and Haas somehow knew of the Interview Summary and that Honeywell had not received it, and withheld the Examiner's comments from Honeywell. Rather, from Rohm and Haas's standpoint, the Interview Summary was essentially a non-event given the Settlement Agreement, and Rohm and Haas assumed that Honeywell was receiving the PTO communications being sent to it.

### C.  Honeywell's Refusal to Sign the Settlement Agreement is a Ploy to Renegotiate the Settlement Agreement ████████████████

When announcing that Honeywell would not sign the Settlement Agreement, Honeywell's counsel contended that Honeywell had had a change of heart -- it now

believed that Rohm and Haas would no longer be able to recover past damages in the litigation. (Mulveny Decl. ¶ 14). ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████. Rohm and Haas refused to renegotiate the agreed-upon Settlement Agreement ████████████████████████████████. Instead, Rohm and Haas stated that it intended to move to enforce the settlement agreement. (*Id.*).

## V.    ARGUMENT

This Court has jurisdiction to enforce a settlement agreement entered into by the parties in a case currently pending before it. *Leonard v. University of Delaware*, 204 F. Supp.2d 784, 787 (D. Del. 2002) (citing cases). An agreement to settle a law suit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing. *Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970) (citing cases). To enforce the Settlement Agreement, this Court must determine whether the settlement agreement at issue is an enforceable contract under Delaware law. *Leonard*, 204 F. Supp.2d at 787. "Under Delaware law a contract 'comes into existence if a reasonable person would conclude, based on the objective manifestations of assent and the surrounding circumstances, that the parties intended to be bound by their agreement on all essential terms.'" *Id.* Stated another way, there is an enforceable contract if the parties have reached a definite agreement on all essential terms. *Id.* Here, all terms, whether or not essential, were reduced to writing and agreed to.

**A.**    **The Parties Have Agreed to Settle this Litigation and All Essential, and Even Non-Essential Terms Were Agreed To**

The Parties mutually agreed to settle the litigation by April 2006. In the various joint statements and writings to the Court, the parties consistently represented (until now) that they had agreed to settle the litigation and would terminate the litigation upon execution of a formal Settlement Agreement. (*e.g.* D.I. 74). This agreement to settle is binding. *Green*, 436 F.2d at 390. Honeywell must hold up its end of the bargain.

The parties negotiated the formal terms and reduced them to writing. They agreed to enter into the Settlement Agreement and there can be no issue about what it means. (*e.g.* D.I. 74). The Settlement Agreement is a binding contract under Delaware law because both parties fully agreed to all of the terms. Honeywell has admitted that it agreed to the terms. (Mulveny Decl. at ¶ 4, Ex. C and ¶ 8, Ex. G). Therefore, Honeywell is required to comply with its obligations under the Settlement Agreement.

**B.**    **Rohm and Haas is Ready, Willing, and Able to Settle this Case and to Carry Out its Obligations Under the Settlement Agreement**

As stated in the July 18th letter to this Court, Rohm and Haas is ready to settle this case and to carry out its obligations under the Settlement Agreement. It has signed the formal Settlement Agreement and forwarded it to Honeywell. All that stands in the way of completing the process is Honeywell's belated refusal to execute the Settlement Agreement and abide by its express written terms.

**C.**    **Honeywell Has No Legitimate Basis For its Refusal to Settle this Case**

Honeywell's articulated reason for refusing to sign the Settlement Agreement it negotiated is meritless. It now claims that, had it been aware of an Interview Summary

prior to July 17th, it never would have "signaled its agreement." This argument fails for five reasons.

First, even if Honeywell were justified in its "new" belief that no claims will ultimately issue from reexamination, Honeywell agreed to settlement terms that specifically accounted for this situation. From the very beginning, ████████████████

████████████████████████████████████████████████████████

██████████. This provision was memorialized in the final Settlement Agreement. Now Honeywell complains that it never would have agreed to settle this case given the potential that all of the patent claims of both patents in suit might be cancelled during reexamination. This is entirely inconsistent with Honeywell's prior agreement to settle this case ██████████████████████████████████████████████.

Second, under the circumstances of the agreed-to settlement, the Interview Summary was a non-event. It fails to support Honeywell's purported belief that it is now "significantly more likely that the patents will not emerge from reexamination with any allowed claims." The Interview Summary is not a final office action rejecting all claims. It is not even a formal office action. It is merely a statement that the Applicant (Rohm and Haas) and the Examiners have met, that certain references have been discussed, and the Applicant had promised to file a Supplemental Amendment. The Examiner issuing the Interview Summary concluded that no agreement -- one way or the other -- regarding the patentability of any of the pending claims had been reached at the interview. Further arguments were to be submitted and considered, after which another official action would issue.

Third, Honeywell extrapolates from the Interview Summary that *all* of the claims of *both* patents in suit will never be allowed, even after an appeal. The Interview Summary relates only to the '128 patent. The PTO has not even issued an office action in the '864 reexamination. There is no rational basis for Honeywell's purported belief that *all* of the claims of *both* patents will be held unpatentable.

Fourth, Honeywell's unawareness of the Interview Summary is the fault of its litigation and reexamination counsel. Honeywell's counsel changed firms during the course of this litigation and the reexaminations. While Honeywell's counsel filed a change of address notice in this case, apparently she did not update her contact information with the PTO. Thus, any "blame" for Honeywell being uninformed (if there is even a need to blame someone) lies exclusively with its own counsel.[1] Further, Rohm and Haas cannot be accused of withholding the Interview Summary from Honeywell because the Interview Summary shows that the PTO had mailed the Interview Summary to both parties on the same day. Rohm and Haas's reexamination counsel could only assume that Honeywell had timely received its copy of the Interview Summary. Rohm and Haas had no obligation to inquire as to whether Honeywell had actually received the PTO communications.

Last, Honeywell's "cheated" expectation of settling this case arises solely from Honeywell's hope that it now has a bargaining chip to renegotiate the Settlement Agreement. In offering to settle the case if Rohm and Haas ███████████████, Honeywell clearly signaled that it is trying to find leverage to change the

---

[1] If Honeywell's counsel did update her contact information with the PTO and some error occurred at the PTO, that is not the fault of Rohm and Haas.

material terms of the existing agreement. There can be no question that the parties long

ago agreed that Honeywell ███████████████████████████████. In fact,

during the negotiations Honeywell itself stressed that ████████████████

███████████████████████████████████

██████████████████. Settlement agreements are not "pliable

instruments, changeable and challengeable at will." *Leonard,* 204 F. Supp. 2d at 788.

Rather, they are "binding contracts." *Id.* Honeywell's transparent attempt to change

material terms of the Settlement Agreement after the fact should not be sanctioned.

Rather, Honeywell must be ordered to abide by its agreement to settle this case, to

execute the Settlement Agreement, to execute the Stipulation of Dismissal, and to make

the Lump Sum Payment (and to abide by all of its other obligations under the Settlement

Agreement).

**D.    Honeywell's Refusal to Sign the Settlement Agreement Warrants an Award of Rohm and Haas's Attorneys' Fees and Costs in Bringing this Motion**

Attorneys' fees and costs are not ordinarily recoverable, and unless specifically

authorized by statute, are awarded only in extraordinary cases. *Hobbs v. American*

*Investors Mgt., Inc.,* 576 F.2d 29, at 35 (3d Cir. 1978) (citations omitted). There are,

however, exceptions to this rule. Specifically, a court has "the power to assess attorneys'

fees for the willful disobedience of a court order as part of the fine to be levied on a

defendant ... and the authority to award attorneys' fees when the losing party has acted in

bad faith, vexatiously, wantonly, or for oppressive reasons." *Hobbs,* 576 F.2d at 35.

Honeywell's refusal to sign and abide by the Settlement Agreement is a vexatious effort

to renegotiate material elements of the settlement based on the alleged untimely

disclosure of the Interview Summary (that was its own fault) and warrants the award of attorneys' fees and costs.

There is no legitimate basis for Honeywell's refusal to execute the Settlement Agreement and to terminate this litigation. Rather, Honeywell is trying to abort settlement and to put this case back on the Court's calendar in an effort to extract further concessions from Rohm and Haas.[2] Such vexatious and bad faith actions cannot be condoned. Accordingly, Rohm and Haas is entitled to its attorneys' fees and costs incurred in bringing this entire matter to its previously agreed-to termination.

## VI. CONCLUSION

Rohm and Haas respectfully requests that its motion to enforce the Settlement Agreement be granted. Honeywell should be ordered to execute the Settlement Agreement and to effectuate the Settlement Agreement according to its terms, including the submission of a Stipulation of Dismissal. Finally, because of Honeywell's vexatious and unjustified behavior, Rohm and Haas should be awarded its attorneys' fees and costs expended in bringing this motion. A proposed Order is attached.

---

[2] Were this case to continue, the Court should issue a new scheduling order to enable the parties to prepare for trial in an orderly fashion. Rohm and Haas has concluded its document production and has responded to Honeywell's written discovery. Honeywell, however, has not completed its document production or responded to all of Rohm and Haas's written discovery. No depositions have been taken. A status conference to address scheduling would be necessary.

16

Respectfully submitted,


/s/ Rudolf E. Hutz
Rudolf E. Hutz (#484)
Daniel C. Mulveny (#3984)
1007 N. Orange Street
P. O. Box 2207
Wilmington, DE 19899-2207
(302) 658-9141
*Attorneys for Plaintiff*
*Rohm and Haas Electronic Materials LLC*


Dated:  July 31, 2007
555929_1.DOC

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2007, I electronically filed **PLAINTIFF ROHM**

**AND HAAS ELECTRONIC MATERIALS LLC'S MEMORANDUM IN**

**SUPPORT OF ITS MOTION TO ENFORCE THE SETTLEMENT AGREEMENT**

with the Clerk of the Court using CM/ECF which will send notification of such filing to

the following:

Email & Hand Delivery
James D. Taylor, Jr.
Buchanan Ingersoll & Rooney PC
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE 19801

I hereby certify that on July 31, 2007, I have mailed by Federal Express, the

document(s) to the following non-registered participant:

Email & FedEx
Constance S. Huttner
Buchanan Ingersoll & Rooney PC
One Chase Manhattan Plaza, 35th Floor
New York, NY 10005-1417

/s/ Rudolf E. Hutz
Rudolf E. Hutz (#484)
Daniel C. Mulveny (#3984)
1007 N. Orange Street
P. O. Box 2207
Wilmington, DE 19899-2207
(302) 658-9141
*Attorneys for Plaintiff*
*Rohm and Haas Electronic Materials*
*LLC*