**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

ROHM AND HAAS ELECTRONIC    :
MATERIALS LLC,    :
    :    Civil Action No. 06-297-GMS
Plaintiff,    :
    :    **REDACTED VERSION OF D.I. 84**
v.    :
    :
HONEYWELL INTERNATIONAL    :
INC.,    :
    :
Defendant.    :

**DECLARATION OF CONSTANCE S. HUTTNER, ESQ. IN SUPPORT OF
DEFENDANT HONEYWELL INTERNATIONAL INC.'S OPPOSITION TO
PLAINTIFF ROHM AND HAAS ELECTRONIC MATERIALS LLC'S
<u>MOTION TO ENFORCE THE PROPOSED SETTLEMENT AGREEMENT</u>**

I, Constance S. Huttner, Esq, hereby declare as follows:

1.    I am an attorney with Buchanan Ingersoll & Rooney, PC in New York, New York, counsel of record for Honeywell International Inc. ("Honeywell") in the above-captioned matter. I make this Declaration in support of Honeywell's Opposition to RHEM's Motion to enforce a purported settlement agreement between the parties supposedly reached on July 17, 2007.

***Honeywell's Desire For Prompt Notification Of New Developments In The Reexaminations***

2.    I have been an active participant in settlement negotiations with counsel for RHEM. Specifically, I have participated in conference calls with RHEM's counsel during which the parties discussed Honeywell's desire to be promptly notified of any new developments at the PTO regarding the patents under reexamination. Indeed, I specifically recall on several occasions, including on July 2, 2007, Honeywell's counsel asking RHEM's counsel whether anything new had happened at the PTO. Each time such inquiries were made to RHEM by

Honeywell, even through July 17, 2007 as discussed below, RHEM always responded that

RHEM had nothing new to report to Honeywell regarding the patents under reexamination.

***My New Law Firm and Changing My Address with the PTO***

      3.      Before accepting the position of Chair of Buchanan Ingersoll & Rooney, PC's

("Buchanan Ingersoll") Intellectual Property Litigation Department, I was a partner at Skadden,

Arps, Slate, Meagher & Flom LLP ("Skadden"), which was formerly Honeywell's counsel of

record in this litigation.  I moved my practice to Buchanan Ingersoll on February 27, 2007.

      4.      On April 9, 2007, the Examiner from the United States Patent and Trademark

Office ("PTO") reexamining RHEM's U.S. Patent No. 6,472,128 patent (the "'128 patent")

mailed a non-final rejection of all claims of the '128 patent to my former address at Skadden.  A

true and correct copy of the PTO's April 9, 2007 mailing is attached hereto as Exhibit 1.  On

April 12, 2007, a former colleague of mine forwarded me the April 9, 2007 mailing from the

PTO.  Immediately thereafter, I caused a change of address form to be filed with the PTO to

reflect my new law firm address and contact information.  A true and correct copy of the PTO's

stamped receipt postcard of my change of address form, dated April 19, 2007, is attached hereto

as Exhibit 2.  Shortly thereafter, my new contact information was included in the "Patent

Attorneys/Agents" database that is accessible to the public through the PTO website.  That

database shows my correct address and contact information at Buchanan Ingersoll.  A true and

correct copy of a screen print of my correct address and contact information in the "Patent

Attorneys/Agents" database is attached hereto as Exhibit 3.

      5.      Notwithstanding the fact that I timely filed of a change of address form with the

PTO to reflect my move to Buchanan Ingersoll, the PTO apparently mailed the summary of its

July 12, 2007 interview with RHEM's patent counsel regarding one of the patents under

reexamination (the "Interview Summary") again to my former address at Skadden. A true and correct copy of the Interview Summary is attached hereto as Exhibit 4.

6.    On Monday, July 23, Skadden forwarded the Interview Summary to me at Buchanan. It is my understanding that the Interview Summary was received by Skadden on Friday, July 20, 2007.

*The Events After July 12, 2007*

7.    On July 13, 2007, I received a call from RHEM's outside litigation counsel, Mr. Mulveny, who informed me that ███████████████████████████████ ███████████████████████████████ After the close of business on Friday, July 13, 2007, I received an e-mail from Mr. Mulveny setting forth RHEM's proposed new language for paragraph 2.2. This language, if accepted, ████████████████ ███████████████████████████ A true and correct copy of Mr. Mulveny's July 13, 2007 e-mail is attached hereto as Exhibit 5.

8.    On the morning of July 16, 2007, I called Mr. Mulveny to reject RHEM's proposed modification. Before I could communicate this rejection, however, Mr. Mulveny abruptly informed me that RHEM's modification was off the table. Given the history of the settlement negotiations and RHEM's prior conduct in staking out various positions in the settlement talks, I was quite surprised by RHEM's unprompted agreement on July 16 to drop entirely a point that it had requested.

9.    On July 17, 2007, I participated in a conference call with RHEM's counsel in the early afternoon. Uncharacteristically, RHEM gave up on the remaining issue relating to this draft with only minimal discussion. Also during the call, I asked RHEM's counsel whether there was anything new going on of which Honeywell should be aware and RHEM's counsel did not

say anything about the July 12 interview with the PTO Examiner, the Interview Summary, or RHEM's new draft claims, which became RHEM's Supplemental Amendment.

10.    After that July 17 conference call, I e-mailed RHEM's counsel a draft agreement "which includes the language that we tentatively agreed upon during our call." In that e-mail, I also noted that "*assuming honeywell is on board*, we *should* be able to execute today." (emphasis added). A true and correct copy of my July 17, 2007, 2:43 P.M. e-mail to RHEM's counsel and the attachment thereto is attached hereto as Exhibit 6.

11.    Later that day, Mr. Mulveny sent Honeywell a proposed settlement agreement after another teleconference between the parties. A true and correct copy of a July 17, 2007 e-mail from 3:38 P.M. from Mr. Mulveny to Scott D. Jacobson and me, among others, with the attachment thereto is attached hereto as Exhibit 7.

12.    I first learned about RHEM's July 12 interview with the PTO Examiner regarding the '128 patent on July 20, 2007. Until July 20, I had no knowledge about RHEM's interview with the PTO and was not aware of the existence of the Interview Summary. I understand that Honeywell learned about RHEM's July 12 interview with the PTO concerning the '128 patent by checking PAIR on July 20.

13.    On July 19, 2007, RHEM filed a Supplemental Amendment to the claims of the '128 patent -- the same patent RHEM had discussed with the PTO during the July 12 meeting with the Examiner.

14.    That same day, RHEM's reexamination counsel, Peter Corliss, mailed the Supplemental Amendment to my old Skadden address notwithstanding the fact that RHEM was well aware that I had moved from Skadden several months earlier. True and correct copies of the Supplemental Amendment and associated documents, including the certificate of service of

papers on me at Skadden by first class mail from RHEM's counsel, are attached hereto as Exhibit 8.

15.    The Supplemental Amendment was delivered to Skadden on July 26, 2007 and was forwarded to me the next day, July 27, 2007. *See* Ex. 8.

16.    On July 25, I e-mailed Mr. Mulveny in response to his e-mail to Honeywell's in-house counsel of earlier that day.  In that e-mail, I informed Mr. Mulveny that "[a]fter we last spoke, we learned from public PAIRS (not you or Darryl) about the interview with the examiner assigned to the '128 case.  This has created some problems with the settlement, which I understand our clients discussed between themselves this morning . . . ."  A true and correct copy of my July 25, 2007 e-mail exchange with Mr. Mulveny is attached hereto as Exhibit 9.

17.    On July 26, 2007, Mr. Mulveny called and informed me that RHEM was not interested in settling the litigation on the revised terms discussed between our clients.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

/s/ Constance S. Huttner
Constance S. Huttner, Esq.

# EXHIBIT 1



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,359 | 12/04/2006 | 6472128 | | 8757 |

53884       7590       04/09/2007
ROHM AND HAAS ELECTRONIC MATERIALS LLC
455 FOREST STREET
MARLBOROUGH, MA  01752

| EXAMINER |
|---|
| Stephen J. Stein |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3991 | IFW |

DATE MAILED: 04/09/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

 **UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

CONSTANCE S. HUNTER

SKADDEN ARPS SLATE MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK, NY 10036

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/008,359*.

PATENT NO. *6472128*.

ART UNIT *3991*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| **Office Action in Ex Parte Reexamination** | Control No. 90/008,359 | Patent Under Reexamination 6472128 |
|---|---|---|
| | Examiner Stephen J. Stein | Art Unit 3991 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a☒ Responsive to the communication(s) filed on <u>04 December 2006</u> .    b☐ This action is made FINAL.
c☒ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire <u>2</u> month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☒ Notice of References Cited by Examiner, PTO-892.    3. ☐ Interview Summary, PTO-474.
2. ☐ Information Disclosure Statement, PTO/SB/08.    4. ☐ _____ .

Part II    SUMMARY OF ACTION

1a. ☒ Claims *1-16* are subject to reexamination.
1b. ☐ Claims _____ are not subject to reexamination.
2. ☐ Claims _____ have been canceled in the present reexamination proceeding.
3. ☐ Claims _____ are patentable and/or confirmed.
4. ☒ Claims *1-16* are rejected.
5. ☐ Claims _____ are objected to.
6. ☐ The drawings, filed on _____ are acceptable.
7. ☐ The proposed drawing correction, filed on _____ has been  (7a)☐ approved  (7b)☐ disapproved.
8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).

   a)☐ All  b)☐ Some*  c)☐ None    of the certified copies have

   1☐ been received.

   2☐ not been received.

   3☐ been filed in Application No. _____ .

   4☐ been filed in reexamination Control No. _____ .

   5☐ been received by the International Bureau in PCT application No. _____ .

   * See the attached detailed Office action for a list of the certified copies not received.

9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

10. ☐ Other: _____

cc: Requester (if third party requester)
U.S. Patent and Trademark Office
PTOL-466 (Rev. 08-06)                Office Action in Ex Parte Reexamination                Part of Paper No. 20070405

Application/Control Number: 90/008,359                                    Page 2
Art Unit: 3991

## *Reexamination*

.1.      This is the first Office action in the Reexamination proceeding of Claims 1-16 of

U.S. 6,472,128 issued on October 29, 2002 to Thackeray at al. ('128 patent). The

application on which the patent was granted, 09/924,045, was filed on August 7, 2001

and is a continuation of 08/650,144, now US patent 6,451,504, filed April 30, 1996 and

which is a continuation of U.S. 07/792,482, now U.S. 6,165,697, filed November 15,

1999. The earliest effective filing date of the patent is November 15, 1999.

## *Procedural Posture*

2.      A request for Reexamination was filed on December 4, 2006 by the third party

Requester. An order for reexamination was granted on January 25, 2007. The patent

owner has not filed a statement under 37 CFR 1.530.

## *Representative Claims*

Claim 1.      A coated substrate comprising:

a substrate having thereon:

a coating layer of an antireflective composition, the antireflective composition

comprising a crosslinker and an anthracene material; and

a coating layer of a photoresist composition over the antireflective composition coating

layer.

Claim 5.      A method for forming a relief image on a substrate comprising:

applying on the substrate a layer of an antihalation composition comprising an

anthracene material; and

applying over the antihalation composition coating layer a photoresist composition.

Application/Control Number: 90/008,359                                                    Page 3
Art Unit: 3991

Claim 1 and 5 are independent claims. Claims 2-4 depend from claim 1 and claims 6-16

depend from claim 5.

### Double Patenting

3.      The nonstatutory double patenting rejection is based on a judicially created
doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the
unjustified or improper timewise extension of the "right to exclude" granted by a patent
and to prevent possible harassment by multiple assignees.   A nonstatutory
obviousness-type double patenting rejection is appropriate where the conflicting claims
are not identical, but at least one examined application claim is not patentably distinct
from the reference claim(s) because the examined application claim is either anticipated
by, or would have been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140
F.3d 1428, 46 USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29
USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir.
1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422
F.2d 438, 164 USPQ 619 (CCPA 1970); and *In re Thorington*, 418 F.2d 528, 163 USPQ
644 (CCPA 1969).
        A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d)
may be used to overcome an actual or provisional rejection based on a nonstatutory
double patenting ground provided the conflicting application or patent either is shown to
be commonly owned with this application, or claims an invention made as a result of
activities undertaken within the scope of a joint research agreement.
        Effective January 1, 1994, a registered attorney or agent of record may sign a
terminal disclaimer. A terminal disclaimer signed by the assignee must fully comply with
37 CFR 3.73(b).

4.      Claims 7, 11, 12 and 15 are rejected on the ground of nonstatutory obviousness-

type double patenting as being unpatentable over claims 1, 9 and 28 of U.S. Patent No.

5,851,738.  Although the conflicting claims are not identical, they are not patentably

distinct from each other because while the '128 patent does not explicitly claim that the

photoresist composition layer comprises a resin binder and a radiation sensitive

component, it would have been obvious to a person of ordinary skill in the art to make

the photoresist layer of the '128 patent comprise both a resin binder and a radiation

sensitive component since such photoresist compositions were known to be

Application/Control Number: 90/008,359                                    Page 4
Art Unit: 3991

conventionally made of novalak resins and light sensitive quinone compounds (radiation

sensitive components) (See for example U.S. 4,943,511 and U.S. 4,863,829).


### *Claim Rejections - 35 USC § 102*

5.     The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

>     A person shall be entitled to a patent unless –

>     (b) the invention was patented or described in a printed publication in this or a
>     foreign country or in public use or on sale in this country, more than one year
>     prior to the date of application for patent in the United States.

6.     **Claims 1-5 and 11-14 are rejected under 35 U.S.C. 102(b) as being**

**anticipated by U.S. Patent No. 4,935,320 (Rhode).**

      **Regarding claim 1**, Rohde discloses a coated material comprising (1) a

substrate that can bear a relief image, (2) a photostructable negative working adhesive

layer made of polyimide homo- and co-polymers, and (3) a self-supporting

photocrosslinkable film (photoresist layer) (See column 4, lines 10-15 and column 11,

lines 25-32).  Rhode further teaches that the adhesive layer may contain anti-halo dyes

additives (an additive which provides antireflective and antihalation properties) (See

column 31, lines 5-12 and column 11, lines 27-51). Rhodes further teaches that the

polyimide homo- and co-polymers which are useful in the both the adhesive layer and

photocrosslinkable film layer are formed from repeating units of formula (Ia) and (Ib):

(See column 11, lines 27-54).

Application/Control Number: 90/008,359                                    Page 5
Art Unit: 3991

In these formulas, X and X' are the same or different divalent radicals of aromatic

diamines, and Z' is a tetravalent aromatic radical (See column. 4, lines 59-62) and Z' is

preferably one of five aromatic moieties, one of which is anthracene. Rohde also

describes other anthracene-containing copolymers, represented by formula (II) and (III)

(See column 11 lines 43-68). The anthracene embodiments of these formulas are

specifically described at column 26, line 36 - column 27, line 49). Rhode further

discloses that the polyamide polymer class of adhesives may include an organic

chromophoric polyazide (an azide crosslinker) (See column 13, lines 13-27).

   **Regarding claim 2**, as stated above, Rhode discloses that the adhesive layer

may include a crosslinker as well as resins. Rhode further discloses that the coated

material is exposed to light (See columns 1 and 2). Such cross-linkers will inherently

crosslink with the resins contained in adhesive layer when exposed to light or heat.

   **Regarding claim 3**, Rhode discloses that the adhesive layer may include copper

onium salt (a thermal acid generator) (See column 16, lines 45-67).

   **Regarding claim 4**, Rhode discloses that the antireflective layer may be placed

over silicon wafer substrates (microelectronic wafer substrate) (See column 33, lines

17-18).

   **Regarding claim 5**, as stated above, Rhode discloses applying an adhesive

layer comprising anti-halo dyes and an anthracene containing polymers (antihalation

layer) on a substrate and applying a self-supporting photocrosslinkable film (photoresist

layer) over the adhesive layer (See column 11, lines 28-68, column 26, lines 36-53,

column 32, lines 37-48).

Application/Control Number: 90/008,359                                    Page 6
Art Unit: 3991

**Regarding claim 11,** as stated above, Rhode discloses that the antihalation

adhesive layer comprises copper onium salts (thermal acid generators) (See column,

·16, lines 51-53).

**Regarding claim 12,** Rhode discloses that the antireflective layer may be placed

over silicon wafer substrates (microelectronic wafer substrate) (See column 33, lines

17-18).

**Regarding claim 13,** Rohde discloses exposing a substrate coated with an

antihalation adhesive layer and a photoresist layer to actinic radiation and thereafter

developing them with developer to produce a relief image on the photoresist layer (See

column 32, lines 32-48).

7.    **Claims 1, 2 and 4-8, 12 and 13 are rejected under 35 U.S.C. 102(b) as being**

**anticipated by U.S. Patent No. 4,863,827 (Jain).**

**Regarding claim 1,** Jain discloses a process for forming a multilevel

photosensitive element consisting of a substrate coated with a first a layer and a second

photosensitive layer (photoresist layer) (See abstract and column 17, lines 51-48 and

column 18, lines 64-68).  The first photosensitive layer is formed using an alkali soluble

resins such as novalak or polyvinyl phenol resin, an o-quinonediazide compound, and

an acid catalyzed cross-linker compound (See column 16, line 49 - column 17, line 30).

The quinonediazides included in the first photosensitive composition layer are

represented by the structure:

Application/Control Number: 90/008,359                                    Page 7
Art Unit: 3991



wherein R1= 1,2-benzoquinone-2-diazide-4-sulfonyl; 1,2-naphthoquinone-2-diazide-4-

sulfonyl; or 1,2-anthraquinone-2-diazide-4-sulfonyl (anthracene compounds) (See

column 10, lines 2-27). When these diazides are exposed to actinic radiation, they

generate an acid that catalyzes a crosslinking reaction between the alkali soluble resin

and the crosslinker compound (See column 5, lines 1-7). The degree of crosslinking

may be controlled by adjusting the dosage and temperature of the post-exposure bake,

but if no post-exposure bake is used, the first photoresist layer behaves as a

conventional positive resist (See column 2, lines 53-68). Jain still further discloses that

additives such as organic dyes and adhesion promoters may be added to the first

photosensitive layer before it is coated on the substrate and that dyes help provide

increased resolution by inhibiting the back scattering of light off the substrate so that the

first photosensitive layer is thereby rendered. Thus, the first photosensitive layer is a

layer with antihalation and antireflective properties (See column 17, lines 59-64 and

column. 18, lines 4-6).

   **Regarding claim 2**, as stated above, Jain discloses that the first layer contains

crosslinkers (See column 16, lines 49-53, column 4, lines 17-19 and example 1).

   **Regarding claim 4**, Jain discloses that the first layer is place over a silicon wafer

(microelectronic substrate) (See column 31, line 32).

Application/Control Number: 90/008,359                                    Page 8
Art Unit: 3991

**Regarding claim 5,** as discussed above, Jain discloses a process of applying

antihalation compositions, including antihalation/antireflective layers containing

anthracene materials, on a silicon substrate, and also discloses applying photoresist

over the layer (See column 18, lines 4-6, column 10, lines 2-27 and column 1, lines 67-

68).

**Regarding claim 6,** as stated above, Jain discloses crosslinking the antihalation

layer prior to applying the photoresist layer (See column 4, lines 17-19 and Example 1).

**Regarding claim 7,** Jain discloses exposing the first photosensitive composition

(antihalation layer) to actinic radiation through an image mask and developing to

remove the exposed portion of said first photosensitive composition (See column 5,

lines 29-32).

**Regarding claim 8,** Jain discloses removing the exposed portion of said first

photosensitive composition (etching) (See column 5, lines 29-32).

**Regarding claim 12,** Jain discloses that the first layer is place over silicon wafer

(a microelectronic wafer) (See column 31, line 32).

**Regarding claim 13,** Jain discloses exposing that the first photosensitive

composition (antihalation layer) to actinic radiation (activating radiation) through an

image mask and developing (treated with a developer) to remove the exposed portion of

said first photosensitive composition (See column 5, lines 29-32).


8.       **Claims 5 and 12 are rejected under 35 U.S.C. 102(b) as being anticipated by**

**U.S. Patent No. 3,888,702 (Koshimo).**

Application/Control Number: 90/008,359                                  Page 9
Art Unit: 3991

**Regarding claim 5**, Koshimo discloses a substrate for electronic materials (a microelectronic wafer) coated with an adhesive layer and a polyamide photoresist layer of the adhesive  (See column 8, lines 10-17 and column 9, lines 62-64). Koshimo further discloses that  "[i]t is desirable, therefore, to provide a light-absorbing layer or antihalation layer between the photosensitive polyamide layer and support layer. A dispersion or solution of a suitable dye or pigment in a resin having adherence to the support may be used to provide such a layer" and that the disclosed antihalation layer comprises a resin binder and a suitable dye, such as an anthroquinone dye like anthroquinone violet (anthracene compound) (See column 8, Lines 59-67).

**Regarding claim 12,** as stated above, Koshimo discloses that the coating may be used on electronic materials (microelectronic substrates) (See column 9, lines 62-64).

### *Claim Rejections - 35 USC § 103*

9.    The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

**10.    Claims 5 and 12-16 are rejected under 35 U.S.C. 103(a) as being unpatentable over U.S. 4,910,122 (Arnold) in view of U.S. Patent 3,888,702 (Koshimo).**

**Regarding claim 5**, Arnold discloses antihalation/antireflective compositions comprising a polymeric resin, such as a polyimide resin (See column 2, lines 19-27), and an organic dye to absorb reflected light resulting from the exposure of an over coated photoresist layer (See column 4, lines 26-28). Arnold states that many dyes can be used in the disclosed invention, and that the dye should be selected to absorb at the wavelength of the radiation used to the expose the photoresist (See column 4, lines 26-28). Arnold still further discloses spin-coating the antihalation composition on a silicon wafer, applying a layer of photoresist over the antihalation composition, exposing the resulting coated substrate to activating radiation, developing the exposed photoresist, then etching the coated substrate using an oxygen plasma (See column 4, lines 39-57; examples 1 and 2, col. 5, lines 1-55). Arnold does not specifically disclose the use of an anthracene in the antireflective layer.

Koshimo discloses a substrate for electronic materials coated with an adhesive layer and a polyamide photoresist layer of the adhesive  (See column 8, lines 10-17 and column 9, lines 62-64-64). Koshimo further discloses that  "[i]t is desirable, therefore, to provide a light-absorbing layer or antihalation layer between the photosensitive polyamide layer and support layer. A dispersion or solution of a suitable dye or pigment in a resin having adherence to the support may be used to provide such a layer" and that the disclosed antihalation layer comprises a resin binder and a suitable dye, such as an anthroquinone dye like anthroquinone violet (anthracene compound) (See column 8, Lines 59-67).

Application/Control Number: 90/008,359                              Page 11
Art Unit: 3991

Therefore, it would have been obvious to a person of ordinary skill in the art at

the time of the invention to use an anthracene compound such as anthroquinone dye as

a disclosed by Koshimo for the radiation absorbing organic dye material of Arnold

because it is disclosed to be a suitable dye for use in an equivalent light absorbing (anti-

reflective) layer.

**Regarding claim 12,** as stated above, Arnold discloses spin-coating the

antihalation composition on a silicon wafer (microelectronic wafer) (See column 4, lines

39-57; examples 1 and 2, col. 5, lines 1-55).

**Regarding claim 13,** Arnold discloses exposing the photoresist layer to light of

the known required wavelengths (activating radiation) and then developing with a

photoresist developer (See column 4, lines 39-57; examples 1 and 2, col. 5, lines 1-55).

**Regarding claim 14,** Arnold discloses that the photoresist may be removed with

a short plasma etch cycle (See column 4, lines 49-57).

**Regarding claim 15,** Arnold discloses that the plasma etching of the photoresist

may be performed with oxygen plasma (a plasma gas) (See column 4, lines 49-57).

**Regarding claim 16,** Arnold discloses that both the photoresist layer and the

underlying film (the antihalation/antireflective layer) may be removed with a short

plasma etch cycle (See column 4, lines 49-54). Thus, the antihalation layer must

necessarily be penetrated by the oxygen plasma gas.

11.    **Claims 9 and 10 are rejected under 35 U.S.C. 103(a) as being unpatentable**
**over U.S. Patent No. 4,863,827 (Jain) as applied to claim 7 above and further in**
**view of U.S. 4,910,122 (Arnold).**

**Regarding claim 9,** as stated above, Jain discloses a process for forming a
multilevel photosensitive element consisting of a substrate coated with a first
photosensitive layer comprising anthracene and having antihalation properties and a
photoresist layer over the photosensitive layer.  Jain further discloses that the
photosensitive antihalation layer is cross-linked layer prior to applying the photoresist
layer and then the photoresist is subsequently exposed to actinic radiation through an
image mask and developed (treated with a developer) to remove the exposed portion of
the first photosensitive composition. Jain does not specifically disclose that that the
areas bared of photoresist are upon treatment with the developer, exposed to plasma
gas.

Arnold discloses a process of coating antihalation compositions on a substrate
and applying a layer of photoresist over the antihalation composition, followed by (1)
exposing the resulting coated substrate to activating radiation, (2) developing the
exposed photoresist, and (3) etching the coated substrate using an oxygen plasma (a
plasma gas)(See column 4, lines 49-57).  Arnold further discloses that using a dry etch
process, such as a plasma etching process, allows the vehicle (portions of the
antihalation layer) to be rapidly removed (See column 3, lines 48-53).

It would have been obvious to a person of ordinary skill in the art at the time of
the invention to use oxygen plasma (a plasma gas) as disclosed by Arnold as the

Application/Control Number: 90/008,359                                    Page 13
Art Unit: 3991

etchant for removing the developed areas of the antihalation layer of Jain since dry

etching techniques such as oxygen plasma etching are disclosed to be a rapid method

of etching during manufacture.

**Regarding claim 10,** Arnold discloses that both the photoresist layer and the

underlying film (the antihalation/antireflective layer) may be removed with a short

plasma etch cycle (See column 4, lines 49-54). Thus, the antihalation layer must

necessarily be penetrated by the oxygen plasma gas.

### Conclusion

12.    Claims 1-16 are rejected.

### Litigation Reminder

13.    The patent owner is reminded of the continuing responsibility under 37 CFR

1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent

proceeding, involving Patent No. 6,472,128 throughout the course of this reexamination

proceeding.  The third party requester is also reminded of the ability to similarly

appraise the Office of any such activity or proceeding throughout the course of this

reexamination proceeding.  See MPEP §§ 2207, 2282 and 2286.

Application/Control Number: 90/008,359                                    Page 14
Art Unit: 3991

### *Future Correspondence*

14.     Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Stephen Stein whose telephone number is 571-272-

1544. The examiner can normally be reached on Monday through Friday from 8:30 a.m.

to 5:00 p.m. If the attempts to reach the examiner are unsuccessful, the examiner's

supervisor, Deborah Jones can be reached by dialing 571-272-1535.  The official fax

number for the organization where this application is assigned is 571-273-9900.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free).

**All** correspondence relating to this *ex parte* reexamination proceeding should be
directed as follows:

By **U.S. Postal Service Mail** to:

> Mail Stop *Ex Parte* Reexam
> ATTN:  Central Reexamination Unit
> Commissioner for Patents
> P.O. Box 1450
> Alexandria, VA  22313-1450

By FAX to:     (571) 273-9900
               Central Reexamination Unit

Application/Control Number: 90/008,359                                    Page 15
Art Unit: 3991


By hand to:   Customer Service Window
              Randolph Building
              401 Dulany St.
              Alexandria, VA  22314


April 6, 2007

*signature*

Stephen J. Stein
Primary Examiner
Art Unit 3991

Conferee *signature*

Conferee *signature*

KILEY STONER
CRU EXAMINER-AU 3991

DEBORAH D. JONES
SPRE-AU 3991
CENTRAL REEXAMINATION UNIT

# EXHIBIT 2

**Receipt Postcard**

April 19, 2007

**The following was/were received in the U.S. Patent and Trademark Office on the date stamped hereon:**

Dkt. Clerk Initials

☒ Change of Address - Constance Huttner

☐ ☐ ☐ ☐ ☐

☐ ☐ ☐ ☐ ☐ ☐

☐ ☐ Charge $_____ to Deposit Account
☐ ☐ Charge $_____ to credit card. Form PTO-
2038 is attached
☐ ☐ ☐ ☐ ☐ ☐    Filed by Certificate of Mail

O.I.P.E  IAP44
APR 1 9 2007
PATENT & TRADEMARK OFFICE

EXHIBIT 3

**United States Patent and Trademark Office**

Home  Site Index  Search  FAQ  Glossary  Guides  Contacts  eBusiness  eBiz alerts  News  Help

Javascript required to view site-wide navigation bar. >> **View Alternative Site Navigation**

Boards & Counsel > OED > Patent Attorney/Agent Search > Search Results > Detailed Information

| Last Name | Huttner |
|---|---|
| First Name | Constance |
| Middle Name | S |
| Suffix | |
| Firm Name | Buchanan, Ingersoll & Rooney, PC |
| Address | 1 Chase Manhattan Plaza<br>35th Floor |
| City | New York |
| State/Province | NY |
| Postal Code | 10005-1417 |
| Country | US |
| Primary Telephone | (212) 440-4426 |
| Registration Number | 35903 |
| Attorney/Agent | ATTORNEY |
| Date Registered as Attorney | 10/06/1992 |

# EXHIBIT 4

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,359 | 12/04/2006 | 6472128 | | 8757 |

53884       7590       07/12/2007

ROHM AND HAAS ELECTRONIC MATERIALS LLC
455 FOREST STREET
MARLBOROUGH, MA  01752

| EXAMINER |
|---|

| ART UNIT | PAPER NUMBER |
|---|---|

DATE MAILED: 07/12/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

 **UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

CONSTANCE S. HUNTER

SKADDEN ARPS SLATE MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK, NY 10036


# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/008,359*.

PATENT NO. *6472128*.

ART UNIT *3991*.



Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).


Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| **Ex Parte Reexamination Interview Summary** | Control No. 90/008,359 | Patent Under Reexamination 6472128 |
|---|---|---|
| | Examiner Stephen J. Stein | Art Unit 3991 | |

All participants (USPTO personnel, patent owner, patent owner's representative):

(1) _Stephen J. Stein (Examiner)_          (3) _Peter Corliss (Patent Owner's Representative)_

(2) _Dwayne Jones (Examiner)_          (4) _Jim Thackeray (Inventor)_

Date of Interview: _12 July 2007_

Type:  a)☐ Telephonic   b)☐ Video Conference
     c)☒ Personal (copy given to: 1)☐ patent owner   2)☒ patent owner's representative)

Exhibit shown or demonstration conducted:  d)☐ Yes   e)☒ No.
  If Yes, brief description: _____

Agreement with respect to the claims  f)☐ was reached.   g)☐ was not reached.   h)☒ N/A.
Any other agreement(s) are set forth below under "Description of the general nature of what was agreed to..."

Claim(s) discussed: _Amended claims 1-16 and proposed new claims_ .

Identification of prior art discussed: _U.S. 4,863,827 (Jain), U.S. 3,884,702 (Koshimo), U.S. 4,935,320 (Rohde)_.

Description of the general nature of what was agreed to if an agreement was reached, or any other comments:
_See Continuation Sheet._

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims patentable, if available, must be attached.  Also, where no copy of the amendments that would render the claims patentable is available, a summary thereof must be attached.)

A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION MUST INCLUDE PATENT OWNER'S STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.  (See MPEP § 2281). IF A RESPONSE TO THE LAST OFFICE ACTION HAS ALREADY BEEN FILED, THEN PATENT OWNER IS GIVEN **ONE MONTH** FROM THIS INTERVIEW DATE TO PROVIDE THE MANDATORY STATEMENT OF THE SUBSTANCE OF THE INTERVIEW (37 CFR 1.560(b)). THE REQUIREMENT FOR PATENT OWNER'S STATEMENT CAN NOT BE WAIVED. **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

cc: Requester (if third party requester)

Examiner's signature, if required

Continuation of Description of the general nature of what was agreed to if an agreement was reached, or any other comments:

Patent owner requested an interview after filing of an amendment to discuss the amendment and prior art. With regard to the Koshimo and Jain prior art references, patent owner argued that while the references disclosed anthroquinone compounds in the anti-reflective layers, the references did not discloses anthrocene. Patent owner further pointed out that anthroquinone is not the same as anthrocene. With regard to the Rohde prior art reference, patent owner argued that the Rohde taught only negative acting polyimide while patent owners amended independent claims 1 and 5 require a positive-acting photoresist. Patent owner stated that they would provide evidence to the lack of or difficulty in having positive acting photolithographic polyimides. It was further argued that new independent claim 24 was patentably distinct from Rohde since Rohde disclosed exposing the photolithographic polyimide in the 340nm plus area of the spectrum, while claim 24 requiress exposing the photoresist at 248nm. Patent owner finally proposed amending new independent claim 28, to specify that the crosslinking step of the antihalation layer occurs prior to applying the photoresist layer. It was argued that this method was patentably distinct from the method described in Rohde, since in Rohde the cross-linking step occurs after the polyimide film is applied. Patent owner agreed to file this amendment in supplemental amendment and to further flush out the arguments. No agreement to patentability of any of the claims was agreed to.

# EXHIBIT 5

REDACTED

# EXHIBIT 6

REDACTED

# EXHIBIT 7

REDACTED

# EXHIBIT 8

In re Application:
Thackeray et al.

Application No.: 90/008,359                Confirmation No.: 8757

Filed: December 4, 2006                     Art Unit: 3991

For:  ANTIHALATION COMPOSITIONS             Examiner: S. Stein


## CERTIFICATE OF SERVICE

I, Peter F. Corless hereby certify that in connection with the above-identified application copies of the following filed with the U.S. Patent and Trademark Office on July 19, 2007:

    Supplemental Amendment
    Amendment Transmittal Letter


are being deposited with the United States Postal Service on July 19, 2007, in an envelope with first class postage addressed to:

    Constance S. Huttner
    Skadden Arps Slate Meagher & Flom LLP
    Four Times Square
    New York, New York  10036


Peter F. Corless (Reg. 33860)
EDWARDS, ANGELL, PALMER & DODGE LLP
P.O. Box 55874
Boston, MA  02205
(617) 439-4444

PTO/SB/97 (09-04)
Approved for use through 07/31/2006. OMB 0651-0031
U. S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| Application No. (if known): 09/924,045 | Attorney Docket No.: 406785C(70329) |

# Certificate of Transmission under 37 CFR 1.8

I hereby certify that this correspondence is being facsimile transmitted to the United States Patent and Trademark Office.

on _____July 19, 2007_____ -
Date

_____
Signature

Peter F. Corless
Typed or printed name of person signing Certificate

33,860                                    (617) 517-5557
Registration Number, if applicable          Telephone Number

Note:   Each paper must have its own certificate of transmission, or this certificate must identify each submitted paper.

Supplemental Amendment (8 pages)
Amendment Transmittal (1 page)
Copy of Certificate of Service (1 page)

2

| AMENDMENT TRANSMITTAL LETTER | | | Docket No.<br>40678-5C(70329) |
|---|---|---|---|
| Application No.<br>90/008,359-Conf. #8757 | Filing Date<br>December 4, 2006 | Examiner<br>S. J. Stein | Art Unit<br>3991 |

Applicant(s): James W. Thackeray

Invention: ANTIHALATION COMPOSITIONS

### TO THE COMMISSIONER FOR PATENTS

Transmitted herewith is an amendment in the above-identified application.

The fee has been calculated and is transmitted as shown below.

| CLAIMS AS AMENDED | | | | | |
|---|---|---|---|---|---|
| | Claims Remaining After Amendment | Highest Number Previously Paid | Number Extra Claims Present | Rate | |
| **Total Claims** | 0 | - 20 | = 0 | x 50.00 | 0.00 |
| **Independent Claims** | 0 | - 3 | = 0 | x 200.00 | 0.00 |
| Multiple Dependent Claims (check if applicable) ☐ | | | | | |
| Other fee (please specify): | | | | | |
| **TOTAL ADDITIONAL FEE FOR THIS AMENDMENT:** | | | | | 0.00 |

[x] Large Entity                    ☐ Small Entity

[x] No additional fee is required for this amendment.

☐ Please charge Deposit Account No. _____ in the amount of $ _____.
A duplicate copy of this sheet is enclosed.

☐ A check in the amount of $ _____ to cover the filing fee is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

[x] The Director is hereby authorized to charge and credit Deposit Account No. 04-1105
as described below. A duplicate copy of this sheet is enclosed.

    [x] Credit any overpayment.

    [x] Charge any additional filing or application processing fees required under 37 CFR 1.16 and 1.17.

                                                                  Dated:     July 19, 2007

Peter F. Corless
Attorney/Agent Reg. No.: 33,860

EDWARDS ANGELL PALMER & DODGE LLP
P.O. Box 55874
Boston, Massachusetts 02205
(617) 517-5557

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being transmitted by facsimile to the Patent and Trademark Office, facsimile no. (571) 273-8300, on the date shown below.

Dated: July 19, 2007          Signature: _____          (Peter F. Corless)

621485

Docket No.: 40678-5C
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application:
Thackeray et al.

Application No.: 90/008,359                Confirmation No.: 8757

Filed: December 4, 2006                    Art Unit: 3991

For:  ANTIHALATION COMPOSITIONS            Examiner: S. Stein

## SUPPLEMENTAL AMENDMENT

MS *Ex Parte* Reexam
ATTN: Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

### INTRODUCTORY COMMENTS

On June 11, 2007, Applicants file a response to the Office Action mailed from the United States Patent and Trademark Office on April 9, 2007 in the above-identified application.

By the present Supplemental Amendment, Applicants supplement that response of June 11.

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Remarks** begin on page 6 of this paper.

Application No. 90/008,359                 2                 Docket No.: 40678-5C

### Amendments to the Claims

(currently amended)        Claim 1.        A coated substrate comprising:

 a substrate having thereon:

 a coating layer of an antireflective composition, the antireflective composition comprising a crosslinker and an anthracene material; and

 a coating layer of a positive-acting photoresist composition over the antireflective composition coating layer.


(original)    Claim 2.    The substrate of claim 1 wherein the antireflective composition coating layer is crosslinked.


(original)    Claim 3.    The substrate of claim 1 wherein the antireflective composition comprises a thermal acid generator.


(original)    Claim 4.    The substrate of claim 1 wherein the substrate is a microelectronic wafer.


(currently amended)        Claim 5.        A method for forming a relief image on a substrate comprising:

 applying on the substrate a layer of an antihalation composition comprising an anthracene material;

 applying over the antihalation composition coating layer a positive-acting photoresist composition.


(original)    Claim 6.    The method of claim 5 wherein the antihalation composition coating layer is crosslinked prior to applying the photoresist composition.


(original)    Claim 7.    The method of claim 6 wherein the photoresist composition is imaged with activating radiation and the imaged photoresist composition is treated

Application No. 90/008,359                 3                 Docket No.: 40678-5C

with a developer to provide a photoresist relief image.

(original)    Claim 8.    The method of claim 7 wherein areas bared of photoresist upon treatment with the developer are etched.

(original)    Claim 9.    The method of claim 7 wherein areas bared of photoresist upon treatment with the developer are exposed to a plasma gas.

(original)    Claim 10.    The method of claim 9 wherein the plasma gas penetrates the antihalation composition coating layer.

(original)    Claim 11.    The method of claim 5 wherein the antihalation composition comprises a thermal acid generator.

(original)    Claim 12.    The method of claim 5 wherein the substrate is a microelectronic wafer.

(original)    Claim 13.    The method of claim 5 wherein the photoresist composition is imaged with activating radiation and the imaged photoresist composition is treated with a developer to provide a photoresist relief image.

(original)    Claim 14.    The method of claim 13 wherein areas bared of photoresist upon treatment with the developer are etched.

(original)    Claim 15.    The method of claim 13 wherein areas bared of photoresist upon treatment with the developer are exposed to a plasma gas.

(original)    Claim 16.    The method of claim 15 wherein the plasma gas penetrates the antihalation composition coating layer.

(new)    Claim 17.    The method of claim 6 wherein the photoresist composition is imaged with radiation having a wavelength of 100 nm to 300 nm.

Application No. 90/008,359              4              Docket No.: 40678-5C

(new)    Claim 18.    The method of claim 6 wherein the photoresist composition is imaged with radiation having a wavelength of 248 nm.

(new)    Claim 19.    The method of claim 7 wherein the photoresist layer is imaged with radiation having a wavelength of 100 to 300 nm.

(new)    Claim 20.    The method of claim 7 wherein the photoresist layer is imaged with radiation having a wavelength of 248 nm.

(new)    Claim 21.    The method of claim 5 wherein the photoresist composition is a chemically amplified positive-acting photoresist composition.

(new)    Claim 22.    The method of claim 18 wherein the photoresist composition is a chemically amplified positive-acting photoresist composition.

(new)    Claim 23.    The substrate of claim 1 wherein the photoresist composition is a chemically amplified positive-acting photoresist composition.

(new)    Claim 24.    A method for forming a relief image on a substrate comprising:

applying on the substrate a layer of an antihalation composition comprising an anthracene material;

applying over the antihalation composition coating layer a photoresist composition; and

exposing the applied photoresist composition to patterned radiation having a wavelength of 248 nm.

(new)    Claim 25.    The method of claim 25 wherein the antihalation composition is crosslinked prior to applying the photoresist composition over the antihalation composition layer.

Application No. 90/008,359          5          Docket No.: 40678-5C

(new)        Claim 26.      The method of claim 24 wherein the photoresist composition is a chemically-amplified positive-acting photoresist composition.

(new)        Claim 27.      The method of claim 25 wherein the photoresist composition is a chemically-amplified positive-acting photoresist composition.

(new)        Claim 28.      A method for forming a relief image on a substrate comprising:

applying on the substrate a layer of an antihalation composition comprising an anthracene material;

crosslinking the antihalation composition layer; and

applying over the crosslinked antihalation composition coating layer a photoresist composition.

(new)        Claim 29.      The method of claim 28 further comprising imaging the photoresist composition with activating radiation and treating the imaged photoresist composition with a developer to provide a photoresist relief image.

(new)        Claim 30.      The method of claim 29 wherein areas bared of photoresist upon treatment with the developer are etched.

(new)        Claim 31.      The method of claim 29 wherein areas bared of photoresist upon treatment with the developer are exposed to a plasma gas.

Application No. 90/008,359                6                Docket No.: 40678-5C

## REMARKS

Claims 1-31 are pending herein. Claim 28 has been amended to add "crosslinked" antihalation layer and thus recites "applying over the crosslinked antihalation composition coating layer a photoresist composition." No new matter has been added by that amendment. For instance, support for the amendment appears e.g. in the original claims of the application.

**Patent Owner's Statement of Interview:**

The undersigned and Dr. Thackeray appreciate the time and helpful comments provided by Examiners Stein and Jones during the interview on July 12, 2007. At that time, the amendment of claim 28 as made herein was discussed to provide further clarity. The Rhode document also was discussed. The Examiners agreed that U.S. Patent 4,863,827 (Jain) and U.S. Patent 3,884,702 (Koshimo) do not disclose anthracene materials.

**Supplemental Response:**

Claims 1-5 and 11-14 were rejected under 35 U.S.C. 102 over Rhode (U.S. Patent 4,935,320). The rejection is traversed.

Claims 1 and 5 (the only rejected independent claims) each calls for a "positive-acting photoresist."

The Rhode document does not describe use of positive photoresists. Rather, the Rhode document reports use of a negative composition only. See, for instance, column 32 of Rhode.

Indeed, it has been recognized that polyimide compositions are more typically employed as negative-acting compositions. Enclosed is a copy of an article "HD Micro Puts Out Positive Polyimide," Electronic News (June 19, 200), which states "Virtually all the polyimides (before now) have been negative tone polyimides …."

Application No. 90/008,359               7               Docket No.: 40678-5C

The Rhode document also does not teach or suggest subject matters of the new claims.

For instance, new independent claim 24 recites "exposing the applied photoresist composition to patterned radiation having a wavelength of 248 nm." The Rhode document reports higher exposure wavelengths. See Rhode at column 2, lines 50-53.

New independent claim 28 recites "crosslinking the antihalation composition layer; and applying over the crosslinked antihalation composition coating layer a photoresist composition." Such crosslinking and application of a photoresist composition is not disclosed in Rhode.

Accordingly, the rejection is properly withdrawn. See *In re Marshall,* 198 USPQ 344, 346 (CCPA 1978) ("[r]ejections under 35 U.S.C. §102 are proper only when the claimed subject matter is identically disclosed or described in the prior art.").

It is believed the application is in condition for immediate allowance, which action is earnestly solicited.

Respectfully submitted,

By _____
Peter F. Corless
    Registration No.: 33,860
EDWARDS ANGELL PALMER & DODGE
    LLP
P.O. Box 55874
Boston, Massachusetts 02205
(617) 439-4444
Attorneys/Agents For Applicant

# HD Micro Puts Out Positive Polyimide

— 6/19/2000

**Electronic News**

HD MicroSystems LLC said it has developed a **positive photodefinable polyimide** that will save chipmakers process costs and mask steps.

HD Micro, a joint venture between DuPont Co. and Hitachi Chemical Co. Ltd., introduced its **HD-8000 polyimide** developed for single mask, stress buffer passivation applications such as DRAMs, SRAMs, logic devices and microprocessors. The polyimide layer is applied to a wafer on top of the final passivation layer in the last production step before back grinding, dicing and packaging.

"All of the DRAM manufacturers use the overcoat technology for protection," noted Ioan Matthews, a chief scientist for HD Micro. About half of logic device manufacturers currently utilize a polyimide layer, he said.

"Virtually all of the polyimides (before now) have been negative tone polyimides," Matthews said. Since chipmakers moved to positive, as opposed to negative, resists in the 1980s, this has meant an extra set of mask steps is necessary to apply a final polyimide layer to a wafer. "With DH-8000, they can use the masks they've already created," Matthews said.

"The negative tone systems out there require solvent developers, and that requires a special, additional track," added Craig Schuckert, global product manager for HD Micro. With the positive tone HD-8000, which doesn't contain NMP, a chemical commonly found in polyimides that is not compatible with deep-ultraviolet resists, maintaining a separate track and the associated disposal steps are not longer necessary, Schuckert said.

HD-8000 can be processed in fabs using both deep-ultraviolet and I-line photoresists, according to HD Micro. The company said that with an aspect ratio of two to one, HD-8000 is capable of imaging 4 micron features in 8 micron cured films, making it ideal for use as a silicon nitride etch dry mask. HD-8000 has a cure cycle of 90 minutes, a glass transition temperature of 300 degrees Celsius and a cured film thickness range of 5 to 10 microns. It can be patterned with both I-line and G-line steppers. HD Micro expects to begin shipment of the new polyimide in the third quarter of this year.

© 2007, Reed Business Information, a division of Reed Elsevier Inc. All Rights Reserved.

# EXHIBIT 9

REDACTED