## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROHM AND HAAS ELECTRONIC MATERIALS LLC | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 06-297-GMS |
| | : | |
| v. | : | **REDACTED VERSION OF D.I. 85** |
| | : | |
| HONEYWELL INTERNATIONAL INC. | : | |
| | : | |
| Defendant. | : | |

**DECLARATION OF SCOTT D. JACOBSON, ESQ. IN SUPPORT OF DEFENDANT HONEYWELL INTERNATIONAL INC.'S OPPOSITION TO PLAINTIFF ROHM AND HAAS ELECTRONIC MATERIALS LLC'S MOTION TO ENFORCE THE PROPOSED SETTLEMENT AGREEMENT**

I, Scott D. Jacobson, Esq, hereby declare as follows:

### I.    BACKGROUND

1.    I am an in-house attorney at Honeywell International Inc. ("Honeywell") in Morristown, New Jersey.  Specifically, I am an Intellectual Property Counsel for Honeywell's Electronic Materials Business within the Specialty Materials Division.  I have been the primary Honeywell in-house counsel working with outside counsel in this litigation, which involves alleged infringement by Honeywell of two U.S. patents owned by Rohm and Haas Electronic Materials LLC ("RHEM") -- United States Patents Nos. 6,471,128 (the "'128 patent") and 6,773,864 (the "'864 patent") (collectively, the "patents in suit").  I am also the primary in-house counsel at Honeywell in connection with the reexamination of the patents in suit by the United States Patent and Trademark Office's ("PTO").  I make this Declaration in support of Honeywell's Opposition to RHEM's

Motion to enforce a purported settlement agreement between the parties offered to Honeywell by RHEM on July 17, 2007.

2.     On or about December 1, 2006, Honeywell requested reexamination of the patents in suit by the PTO.  In its requests, Honeywell focused the PTO's attention on a substantial body of prior art, not previously considered during the original examination of the patents, that discloses each and every element of RHEM's alleged inventions. Honeywell informed the Court of Honeywell's reexamination requests in a letter dated December 5, 2006.  A true and correct copy of Honeywell's December 5, 2006 letter to the Court is attached hereto as Exhibit 1.

3.     In December, 2006, as advised in Honeywell's December 5, 2006 letter to the Court, Honeywell filed a motion to stay this litigation pending reexamination of the patents in suit by the PTO.  Honeywell's stay motion is fully briefed and is presently pending before the Court.

4.     On January 30, 2007, Honeywell informed the Court that the PTO had granted Honeywell's request for reexamination on all claims of the '128 patent on January 25, 2007.  A true and correct copy of Honeywell's January 30, 2007 letter to the Court (without the PTO attachment) is attached hereto as Exhibit 2.

5.     On March 26, 2007, Honeywell informed the Court that the PTO had granted Honeywell's request for reexamination on all claims of the '864 patent on March 23, 2007.  A true and correct copy of the parties' joint March 26, 2007 letter to the Court is attached hereto as Exhibit 3.

6.     Honeywell believes that the PTO will invalidate or substantially modify all claims of both patents in suit.  The events during and the outcome of the

reexamination proceedings in the PTO will have a dramatic impact on the issues to be decided in this case.

7.      Indeed, in an April 16, 2007 letter from Honeywell's counsel to the Court, Honeywell informed the Court that the PTO had rejected all of the claims of the '128 patent on the grounds that each claim is invalid over the prior art cited in Honeywell's reexamination request.  In response to the PTO's rejection of the claims of the '128 patent, RHEM has filed both amended and supplemental amended claims with the PTO, thereby admitting that the originally issued claims are invalid.

8.      Different examiners at the PTO are reexamining the patents in suit and they are at different stages of the reexamination process.  Specifically, based on the information available to Honeywell, no action has been taken by the PTO with respect to the '864 patent (other than agreeing that there is a substantial question of patentability).  In contrast, as discussed herein, some significant recent activity has taken place involving the '128 patent, including a meeting between RHEM's reexamination counsel and PTO examiners that occurred on July 12, 2007, after RHEM had filed its first response to the PTO's first office action rejecting all claims of that patent.

9.      The Examiner who participated in the interview prepared an Interview Summary indicating that he did not agree to allow any claims and that RHEM was preparing yet another amendment to try to persuade the Examiner to allow the rejected claims.

## II.    THE NEGOTIATION AND DRAFTING OF THE PROPOSED SETTLEMENT AND PATENT LICENSE AGREEMENT

10.     The negotiations of a proposed settlement of this dispute have lasted more than three months.  At several different points in time during the settlement talks, there

was a distinct possibility that no settlement would be reached because of RHEM's

attempts to renegotiate a point that had been previously resolved or RHEM's

unwillingness to compromise on a particular point.  RHEM's negotiation approach

changed dramatically after July 12, 2007.

11.     In April, 2007, the parties commenced serious discussions concerning the

possibility of settling this dispute.  As of April, 2007, ███████████████████████

███████████████████████████████████

12.     The vast majority of the settlement negotiations occurred between the

parties' respective in-house and outside litigation counsel; there were very few direct

communications between business people from the two companies.

13.     Although most of the negotiations were conducted by the parties' in-house

and outside counsel, it was always understood that businesspeople would need to approve

any proposed settlement negotiated by counsel.  Specifically, it was always understood

that a senior officer with authority to bind each company would need to approve any

written settlement agreement negotiated and prepared by counsel, which would be

evidenced by that person's signature affixed to a written agreement.  It was also my

understanding that no settlement would be binding upon Honeywell until the parties

exchanged executed settlement agreements.

14.     I am not authorized to bind Honeywell to any settlement with RHEM,

which RHEM's counsel certainly understood from our communications during the

settlement discussions.

15.     On May 11, 2007, I e-mailed RHEM's in-house counsel, Darryl Frickey, a

draft "key term sheet for a Settlement and License Agreement to resolve the dispute

between Rohm and Haas and Honeywell." A true and correct copy of my May 11, 2007 e-mail to Mr. Frickey and the attachment thereto is attached hereto as Exhibit 4.

16.     Ten days later, on May 21, 2007, I sent Mr. Frickey an e-mail asking when he "thought Rohm and Haas would have feedback on the Key Terms document that we [Honeywell] sent on May 11." Later that evening, Mr. Frickey responded to me stating, "Your document is currently under review by the business and I expect a reply later this week. Unfortunately, business travel seems to be a bit of an obstacle." A true and correct copy of this May 21, 2007 e-mail exchange between Mr. Frickey and me is attached hereto as Exhibit 5.

17.     On May 29, 2007, RHEM e-mailed Honeywell its revisions to Honeywell's proposed key term sheet. RHEM added a number of paragraphs to the draft document, including a paragraph titled "Reexamination." A true and correct copy of RHEM's May 29, 2007 e-mail with the attachment thereto is attached hereto as Exhibit 6.

18.     The parties participated in a teleconference on June 5, 2007 to discuss RHEM's revisions to Honeywell's draft key term sheet. During that teleconference, Mr. Frickey informed me and the other Honeywell participants that should the parties wish to proceed to the document drafting stage, RHEM's counsel would prepare a draft patent license and settlement agreement for Honeywell's review and consideration.

19.     Between June 6 and June 14, the parties exchanged numerous e-mails regarding various open issues, ███████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████.

5

20.    Between June 17 and 19, the parties exchanged more e-mails.  Prior to that, RHEM had agreed that: ████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████ However, on or about June 18, 2007, after agreeing to the above, RHEM drastically changed its position and insisted that ██████████████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████

21.    By June 20, 2007, the parties had reached an impasse with respect to several issues, had not yet even exchanged a draft settlement agreement, and had resumed litigation.

22.    Honeywell ultimately agreed to continue negotiations despite RHEM's radical change in position and insistence on the above issues.

23.    On Friday, June 22, 2007, RHEM's outside litigation counsel sent Honeywell draft settlement and patent licensing agreements for Honeywell's review. The draft patent license agreement included a paragraph 3.5 ("Reexamination"), ██████ ██████████████████████████████████████████████████ ██████ A true and correct copy of RHEM's June 22, 2007 e-mail and attachments thereto is attached hereto as Exhibit 7.

24.    One June 26, 2007, I sent RHEM's in-house counsel Honeywell's edits on RHEM's draft patent license agreement.  Honeywell added a sentence to paragraph 3.5, which provided, ████████████████████████████████████████████

6

████████████████████████████████████████

████████████ (emphasis added)  A true and correct copy of my June 26, 2007 e-mail

and the attachment thereto is attached hereto as Exhibit 8.

25.     On Thursday, June 28, 2007, RHEM e-mailed comments and edits to

Honeywell's June 26 draft documents.  With respect to Honeywell's addition to paragraph

3.5, RHEM's cover e-mail in point four provided: ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████ A true and correct copy of RHEM's June 28, 2007 e-mail and

attachment thereto is attached hereto as Exhibit 9.

26.     The RHEM June 28 draft of the patent license agreement struck

Honeywell's language requiring copies of ███████████████████████

████████████████████████████████████

████████████ and replaced that language with the following: ████████████

████████████████████████████████████████

████████████████████████████████████

████████████ *See* Exhibit 9, ¶ 3.5.

27.     The parties participated in another teleconference on July 2, 2007.  The

purpose of the teleconference was to discuss the issues in the June 28 draft of the

agreement.  The importance of RHEM notifying Honeywell of all developments at the

PTO was one of the many issues discussed during this teleconference. In fact, during this teleconference, RHEM's counsel and I got into a heated debate about the importance of receiving rapid notice of all of RHEM's communications with the PTO. RHEM's counsel argued that the PTO documents would be available on PAIR, the publicly available database on the PTO website, so they questioned why Honeywell required notice from RHEM. I responded to RHEM's counsel by informing them that the PTO does not always post documents timely, if at all, on its website and that relying upon PAIR would not be sufficient given the importance of all reexamination documentation to Honeywell – not just the PTO's final office action letter. I further told RHEM's counsel that there was no administrative burden because all that RHEM needed to do was to instruct its reexamination counsel to copy Honeywell on all documents sent to or received by the PTO. After resisting for at least fifteen minutes, RHEM ultimately agreed to this point during this teleconference.

28.    Additionally, during this July 2, 2007 teleconference, I asked RHEM's counsel whether there had been any new developments at the PTO concerning the patents in suit, to which they responded no. Indeed, I asked RHEM's counsel at several different times during the settlement negotiations whether there had been any new developments at the PTO concerning the patents under reexamination. RHEM's counsel consistently replied that there had been no new developments at the PTO regarding the patents in suit.

29.    On July 2, 2007, after the teleconference of earlier that day, RHEM's outside counsel e-mailed Honeywell "the latest draft reflecting our discussions today." Paragraph 3.5 of the July 2 draft agreement included revised language requested by Honeywell ███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

Specifically, the RHEM revised paragraph 3.5 of the draft agreement provided in part:

██████████████████████████████████████████████

████████████████████████████████████████████

████████████████     A true and correct copy of RHEM's July 2, 2007 e-mail and the

attachment thereto is attached hereto as Exhibit 10.

30.     On July 6, 2007, Honeywell e-mailed RHEM with limited changes to

RHEM's last version of the document, including minor edits to paragraph 3.5.

31.     Two days later, on July 9, 2007, RHEM sent Honeywell its latest draft of

the proposed settlement agreement.

32.     Between July 9 and 12, I collected comments from Honeywell on the

latest draft agreement from RHEM.

33.     On Thursday, July 12, I e-mailed RHEM Honeywell's collective

comments on the latest draft agreement.  Honeywell edited paragraph 3.5 to provide:

███████████████████████████████████████████████

████████████████████████████████████     (emphasis added).

A true and correct copy of Honeywell's July 12, 2007 e-mail and attachment is attached

hereto as Exhibit 11.

34.     On July 13, RHEM introduced another change to another previously

agreed upon term ████████████████████████████████████

███████████████ ████████████████████████████

████████████████████████████████████████

9

████████████████████████████████████████

████████████████

35.     I understand that on Monday, July 16, RHEM's counsel withdrew RHEM's proposed change to paragraph 2.2 without prompting.

36.     On Monday, July 16 at 10:51 A.M., after the teleconference between outside counsel for RHEM and Honeywell, RHEM e-mailed Honeywell another version of the draft agreement that ████████████████████████████████████

████████████████████████████████████████

████████████████     A true and correct copy of this July 16, 2007 e-mail and attachment thereto is attached hereto as Exhibit 12.

37.     On July 16 at 6:32 P.M., RHEM's counsel e-mailed me seeking Honeywell's comments on the draft agreement that RHEM had circulated earlier that day. Mr. Mulveny's e-mail further stated, "I would like to call the Court tonite [sic] to leave a message that an agreement has been reached and that the parties will be working to execute the agreement tomorrow."  A true and correct copy of this July 16, 2007 e-mail is attached hereto as Exhibit 13.

38.     On July 17, the parties circulated additional drafts of the proposed settlement agreement.

39.     After a teleconference call between the parties in the early afternoon of July 17, at 3:38 P.M., RHEM's counsel e-mailed Honeywell a revised version of the proposed "Confidential Settlement Agreement With Mutual Release And Patent License Between Rohm And Haas Electronic Materials LLC And Honeywell International Inc."

(the "Proposed Settlement Agreement"). The cover e-mail attaching the Proposed

Settlement Agreement states as follows:

> Connie, Scott, and Darryl:
>
> Enclosed is the FINAL version based on our teleconf. earlier today and the
> version Connie sent to me at 2:45p today. I think we're done. Please
> circulate and if there's no further changes, execute.
>
> Connie, once you hear from Scott that it is to be executed, let's set up a
> call to Judge Sleet and break the news.

Paragraph 3.5 of the Proposed Settlement Agreement provides:



A true and correct copy of the July 17,

2007 e-mail and attachment thereto is attached hereto as Exhibit 14.

    40.    At 3:44 P.M. on July 17, I replied to Mr. Mulveny's July 17 e-mail

indicating that I would "make a final read, and if it is consistent with my expectations, I

will circulate for execution." A true and correct copy of my July 17, 2007 e-mail is

attached hereto as Exhibit 15.

    41.    Later that afternoon, RHEM e-mailed Honeywell stating that the

agreement had been signed by RHEM even though Honeywell indicated that it would

sign the Agreement first; RHEM also faxed its executed signature page to Honeywell on

July 17 and sent the original to Honeywell's in-house counsel by overnight delivery.

True and correct copies of the July 17, 2007 e-mail and the July 17 facsimile are attached

hereto as Exhibit 16. Mr. Frickey's July 17 facsimile stated that RHEM looked forward

to receiving a signed agreement from Honeywell.

    42.    On July 18 at 10:10 A.M., RHEM's outside litigation counsel e-mailed me

stating, "We're trying to set up a teleconference to inform the Court about the settlement

this morning. Can you tell me when you expect to get the signed Agreement for Honeywell?" A true and correct copy of Mr. Mulveny's July 18, 2007 e-mail is attached hereto at Exhibit 17.

43.     I promptly responded to Mr. Mulveny by e-mail with the following language in an e-mail:

> Likely tomorrow. Nance Dicciani, Specialty Materials President, is the person that needs to sign the document. She is currently traveling and I am trying to track her down. Her assistant told me that she will not be able to receive the document today, but I am making arrangements to try and get it to her tomorrow and then get it back to you by tomorrow late afternoon. I have not been able to get the document yet because of travel schedules. Thanks for your patience, Scott.

A true and correct copy of my July 18, 2007 e-mail to Mr. Mulveny is attached hereto also at Exhibit 17.

44.     I followed up later with another e-mail that evening informing Mr. Mulveny that I was having "a hard time tracking down Nance on her business trip. I was told that she will be returning to the office on Monday, so in the worst case, I should be able to get this to her on Monday." A true and correct copy of my July 18, 2007 e-mail to Mr. Mulveny is attached hereto also at Exhibit 17.

45.     Dr. Dicciani has neither approved nor executed the Proposed Settlement Agreement. To date, nobody from Honeywell has executed RHEM's July 17, 2007 Proposed Settlement Agreement.

## III.    HONEYWELL DISCOVERS THAT RHEM WITHHELD INFORMATION MATERIAL TO THE PROPOSED SETTLEMENT

46.     Throughout the negotiation of the proposed settlement, I routinely checked PAIR for any new developments concerning either of the patents under reexamination. I also asked outside counsel to do the same.

12

47.     I checked PAIR on July 16 and 17 at various times during each day.

48.     On July 18, I was about to be out of the office on vacation starting on July 19, so I showed a Honeywell paralegal how to search for reexamination documents on PAIR. I instructed the paralegal to check the website at the beginning and end of each day on Thursday and Friday, July 19 and 20, respectively.

49.     When I was on vacation, I was informed that on the morning of July 20, Honeywell learned from checking PAIR that RHEM had participated in a meeting with the PTO examiners on July 12 regarding the '128 patent (the "July 12 Interview"). I learned that on July 20, 2007, the PTO had posted on PAIR an Interview Summary of the events that had transpired at the July 12 Interview (the "Interview Summary"). A true and correct copy of the Interview Summary is attached hereto as Exhibit 18.

50.     The Interview Summary indicated that "[n]o agreement to patentability of any of the claims was agreed to." *See* Exhibit 18.

51.     The Interview Summary also noted that RHEM had requested the interview with the examiners after it had filed an amendment to the claims of the '128 patent, which it had done in June, 2007. *See* Exhibit 18.

52.     Further, the Interview Summary noted that a copy of the summary was given to RHEM's representative and patent counsel, Peter Corliss, at the Interview, who attended the July 12 Interview with the patent's co-inventor and RHEM employee. *See* Exhibit 18.

53.     The Interview Summary indicated that RHEM had discussed filing a supplemental amendment with additional "evidence" in an attempt to secure agreement

from the PTO on the patentability of some of the claims in the '128 Patent. *See* Exhibit 18.

54.    On July 31, 2007, Honeywell also learned from PAIR that on July 19, 2007, RHEM had filed a Supplemental Amendment to the claims of the '128 patent, which apparently had been discussed with the examiners. As with the July 12 Interview, RHEM never mentioned the filing of the Supplemental Amendment to Honeywell. A true and correct of the Supplemental Amendment is attached hereto as Exhibit 19.

55.    On July 25, 2007, I understand that Dr. Rebecca Liebert, Honeywell's Vice President and General Manager, called Mr. Paik to advise him that Honeywell had learned about the July 12 Interview and its outcome, despite RHEM's efforts to keep this information quiet until the parties' had concluded their deal. As a result, she told him that

56.    Honeywell refused to sign the Proposed Settlement Agreement of July 17 because the deal no longer made sense in light of the July 12 Interview, the existence of which RHEM concealed from Honeywell during the final stages of the settlement negotiations. Specifically, it is unlikely that RHEM will emerge from the reexamination proceedings with valid claims against Honeywell under the patents in suit. Accordingly, a fact relating to Honeywell's decision whether to settle this dispute with RHEM has changed,

14

██████████████████████████████████████████

█████████████████████████

57.     Additionally, Honeywell no longer wishes to resolve the matter with RHEM on the terms set forth in the July 17 Proposed Settlement Agreement because of RHEM's bad faith in withholding information from Honeywell that is material to the settlement discussions.

58.     The outcome of the July 12 Interview, from Honeywell's perspective, is further evidence that RHEM will not have any allowable claims under either of the patents in suit upon the conclusion of the reexamination proceedings.

59.     Had Honeywell known about the July 12 Interview on July 17 or 18, I would not have approved the terms of the Proposed Settlement Agreement on behalf of the legal department.  Any approved agreement would still require approval and execution by Honeywell's Dr. Nance Dicciani, President of the Specialty Markets division, which RHEM understood perfectly well.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

/s/ Scott D. Jacobson
Scott D. Jacobson, Esq.

15

# EXHIBIT 1

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

———

TEL: (212) 735-3000

FAX: (212) 735-2000

http://www.skadden.com

DIRECT DIAL
(212) 735-2038
DIRECT FAX
(917) 777-2038
EMAIL ADDRESS
CHUTTNER@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEWARK
PALO ALTO
RESTON
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO

December 5, 2006

***VIA HAND DELIVERY***
The Honorable Gregory M. Sleet
U. S. District Court for the
  District of Delaware
844 North King Street
Wilmington, DE 19801

RE:    *Rohm and Haas Electronic Materials LLC v. Honeywell International Inc.*, Case No. 06-297-GMS

Dear Judge Sleet:

We write on behalf of Honeywell International Inc. ("Honeywell") in connection with the above-captioned patent infringement litigation. Your Honor will recall that we advised you at the last Scheduling Conference on November 1, 2006, that we intended within thirty days to seek a reexamination of at least one of the two patents that the Plaintiff has asserted in this litigation -- U.S. Patent Nos. 6,472,128 B2 and 6,773,864 B1. We have now complied with this representation by filing requests for reexamination of both patents in suit on December 1, 2006.

As discussed at the Conference, we plan to ask Your Honor to stay this litigation pending the outcome of the reexamination proceedings we have asked the PTO to initiate, if the Plaintiff will not agree to a voluntary stay of proceedings. We anticipate that we will promptly file our stay motion after discussing it with Plaintiff's counsel this week.

Very truly yours,

/s/ Constance S. Huttner

Constance S. Huttner

cc:    Rudolf E. Hutz, Esq.
       Daniel C. Mulveny, Esq.

# EXHIBIT 2

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

DIRECT DIAL
(302) 651-3116
DIRECT FAX
(888) 329-9462
EMAIL ADDRESS
JDANDERS@SKADDEN.COM

ONE RODNEY SQUARE
P.O. BOX 636
WILMINGTON, DELAWARE 19899-0636
———
TEL: (302) 651-3000
FAX: (302) 651-3001
www.skadden.com

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

January 30, 2007

***VIA CM/ECF & HAND DELIVERY***
The Honorable Gregory M. Sleet
U.S. District Court for the
    District of Delaware
844 North King Street
Wilmington, DE 19801

RE:     *Rohm and Haas Electronic Materials LLC v. Honeywell*
        *International Inc.*, Case No. 06-297-GMS

Dear Judge Sleet:

    We write on behalf of Honeywell International Inc. ("Honeywell") in connection with the above-captioned patent infringement litigation. As you are aware, we submitted to the PTO requests for reexamination of both of the patents that the Plaintiff has asserted in this litigation -- U.S. Patent Nos. 6,472,128 B2 and 6,773,864 B1 (hereinafter the "'128 Patent" and "'864 Patent", respectively), and filed a motion to stay the litigation pending reexamination. We are writing now to apprise the Court that the PTO has granted Honeywell's request for reexamination on *all claims* of the '128 Patent. For your consideration, we have attached the PTO's order granting the request for reexamination, which includes a discussion of the prior art raising a "substantial new question of patentability".

    In addition, and as a follow-up to our January 17, 2007 letter, we are writing to inform you that "reexamination preprocessing" for the '864 Patent was completed and transferred to the Group Art Unit ("GAU") on January 29, 2007. The filing date for the '864 reexamination request is listed as January 19, 2007, which means that the PTO must decide whether to grant the '864 reexamination request by April 19, 2007. In view of the fact that the PTO decided to grant the

'128 reexamination request less than 3 weeks after the '128 reexamination request was transferred to the GAU, we believe that it is likely that the PTO will make a decision on the '864 request before that date. Moreover, given the strength of the '864 reexamination request and the PTO's decision to grant reexamination of the related '128 Patent, we are confident that the PTO will grant reexamination of the '864 Patent.

These developments strengthen the arguments set forth in Honeywell's briefs in support of its motion to stay the litigation pending reexamination. Accordingly, we believe that the motion to stay should be granted. We will keep the Court apprised of any further developments.

Respectfully submitted,

*/s/ Jeremy D. Anderson*

Jeremy D. Anderson (I.D. 4515)

Enclosure

cc:    Rudolf E. Hutz, Esq.
       Daniel C. Mulveny, Esq.

2

# EXHIBIT 3

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE RODNEY SQUARE
P.O. BOX 636
WILMINGTON, DELAWARE 19899-0636
──────
TEL: (302) 651-3000
FAX: (302) 651-3001
www.skadden.com

DIRECT DIAL
302-651-3116
DIRECT FAX
302-651-3001
EMAIL ADDRESS
JDANDERS@SKADDEN.COM

FIRM/AFFILIATE OFFICES
──────
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
──────
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

March 26, 2007

**VIA CM/ECF & HAND DELIVERY**

The Honorable Gregory M. Sleet
U.S. District Court for the District of Delaware
844 N. King Street
Wilmington, DE 19801

> RE:  Rohm and Haas Electronic Materials v. Honeywell
>       International Inc., Case 1:06-cv-00297-GMS

Dear Judge Sleet:

In anticipation of the discovery teleconference scheduled for March 28, 2007 at 2 p.m. in the above captioned matter, the parties jointly submit the following items to be presented to the Court:

Plaintiff's Issues:

- Defendant's refusal to produce the items that it agreed to produce in response to Plaintiffs' Requests for Documents, Electronically-Stored Information, and Things (Nos. 1-90).

Defendant's Issues:

- The PTO has granted reexamination on *both* of the two patents-in-suit. The PTO granted reexamination of U.S. Patent No. 6,472,128 on January 25, 2007. On Friday, March 23, the PTO granted reexamination of U.S. Patent No. 6,773,864.

- Defendant has asked Plaintiff to voluntarily extend the deadlines under the present Scheduling Order for disclosing opinions of counsel (currently, April 2, 2007), and completing fact discovery (currently June 1, 2007). Specifically, Defendant has asked Plaintiff to agree that fact discovery can be completed, if necessary, during the times currently allotted under the Scheduling Order for *Markman* proceedings and expert discovery. Under Defendant's

The Honorable Gregory M. Sleet, U.S.D.J.
March 26, 2007
Page 2

proposal, all discovery would be completed by January 7, 2008. The dates currently set under the Scheduling Order for *Markman* proceedings, dispositive motions, and trial would remain the same, so that the Court's schedule would not be affected.

- The sole purpose of Defendant's request is to avoid unnecessary expense to the parties, while allowing the Court sufficient time to rule on Defendant's motion to stay this case pending the outcome of reexamination proceedings.

- Plaintiff has not provided any reason for its refusal to agree to Defendant's proposal for a short extension of the current fact discovery deadlines.

Thank you for your Honor's consideration.

Respectfully,

*/s/ Jeremy D. Anderson*

Jeremy D. Anderson (I.D. 4515)

cc:    Rudolf E. Hutz, Esq.
       Daniel C. Mulveny, Esq.
       Constance S. Huttner, Esq.
       Emily J. Zelenock, Esq.

# EXHIBIT 4

REDACTED

# EXHIBIT 5

REDACTED

# EXHIBIT 6

REDACTED

EXHIBIT 7

REDACTED

# EXHIBIT 8

REDACTED

.

# EXHIBIT 9

REDACTED

# EXHIBIT 10

REDACTED

# EXHIBIT 11

REDACTED

# EXHIBIT 12

REDACTED

# EXHIBIT 13

REDACTED

# EXHIBIT 14

REDACTED

# EXHIBIT 15

REDACTED

# EXHIBIT 16

REDACTED

# EXHIBIT 17

REDACTED

# EXHIBIT 18

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,359 | 12/04/2006 | 6472128 | | 8757 |

53884    7590    07/12/2007

ROHM AND HAAS ELECTRONIC MATERIALS LLC
455 FOREST STREET
MARLBOROUGH, MA  01752

| EXAMINER |
|---|

| ART UNIT | PAPER NUMBER |
|---|---|

DATE MAILED: 07/12/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

CONSTANCE S. HUNTER

SKADDEN ARPS SLATE MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK, NY 10036

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/008,359*.

PATENT NO. *6472128*.

ART UNIT *3991*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| Ex Parte Reexamination Interview Summary | Control No.<br>90/008,359 | Patent Under Reexamination<br>6472128 |
|---|---|---|
| | Examiner<br>Stephen J. Stein | Art Unit<br>3991 | |

All participants (USPTO personnel, patent owner, patent owner's representative):

(1) Stephen J. Stein (Examiner)          (3) Peter Corliss (Patent Owner's Representative)

(2) Dwayne Jones (Examiner)              (4) Jim Thackeray (Inventor)

Date of Interview: 12 July 2007

Type:  a)☐  Telephonic  b)☐  Video Conference
       c)☒ Personal (copy given to:  1)☐ patent owner    2)☒ patent owner's representative)

Exhibit shown or demonstration conducted:  d)☐ Yes  e)☒ No.
   If Yes, brief description: _____

Agreement with respect to the claims  f)☐  was reached.  g)☐  was not reached.  h)☒  N/A.
Any other agreement(s) are set forth below under "Description of the general nature of what was agreed to…"

Claim(s) discussed: Amended claims 1-16 and proposed new claims .

Identification of prior art discussed: U.S. 4,863,827 (Jain), U.S. 3,884,702 (Koshimo), U.S. 4,935,320 (Rohde).

Description of the general nature of what was agreed to if an agreement was reached, or any other comments:
See Continuation Sheet.

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims
patentable, if available, must be attached.  Also, where no copy of the amendments that would render the claims
patentable is available, a summary thereof must be attached.)

A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION MUST INCLUDE PATENT OWNER'S
STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.  (See MPEP § 2281). IF A RESPONSE TO THE
LAST OFFICE ACTION HAS ALREADY BEEN FILED, THEN PATENT OWNER IS GIVEN **ONE MONTH** FROM THIS
INTERVIEW DATE TO PROVIDE THE MANDATORY STATEMENT OF THE SUBSTANCE OF THE INTERVIEW
(37 CFR 1.560(b)). THE REQUIREMENT FOR PATENT OWNER'S STATEMENT CAN NOT BE WAIVED. **EXTENSIONS
OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

cc: Requester (if third party requester)          Examiner's signature, if required

Continuation of Description of the general nature of what was agreed to if an agreement was reached, or any other comments:

Patent owner requested an interview after filing of an amendment to discuss the amendment and prior art. With regard to the Koshimo and Jain prior art references, patent owner argued that while the references disclosed anthroquinone compounds in the anti-reflective layers, the references did not discloses anthrocene. Patent owner further pointed out that anthroquinone is not the same as anthrocene. With regard to the Rohde prior art reference, patent owner argued that the Rohde taught only negative acting polyimide while patent owners amended independent claims 1 and 5 require a positive-acting photoresist. Patent owner stated that they would provide evidence to the lack of or difficulty in having positive acting photolithographic polyimides. It was further argued that new independent claim 24 was patentably distinct from Rohde since Rohde disclosed exposing the photolithographic polyimide in the 340nm plus area of the spectrum, while claim 24 requiress exposing the photoresist at 248nm. Patent owner finally proposed amending new independent claim 28, to specify that the crosslinking step of the antihalation layer occurs prior to applying the photoresist layer. It was argued that this method was patentably distinct from the method described in Rohde, since in Rohde the cross-linking step occurs after the polyimide film is applied. Patent owner agreed to file this amendment in supplemental amendment and to further flush out the arguments. No agreement to patentability of any of the claims was agreed to.

# EXHIBIT 19

REDACTED

Docket No.: 40678-5C
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application:
Thackeray et al.

Application No.: 90/008,359                 Confirmation No.: 8757

Filed: December 4, 2006                      Art Unit: 3991

For: ANTIHALATION COMPOSITIONS         Examiner: S. Stein

## SUPPLEMENTAL AMENDMENT

MS *Ex Parte* Reexam
ATTN: Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

### INTRODUCTORY COMMENTS

On June 11, 2007, Applicants file a response to the Office Action mailed from the United States Patent and Trademark Office on April 9, 2007 in the above-identified application.

By the present Supplemental Amendment, Applicants supplement that response of June 11.

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Remarks** begin on page 6 of this paper.

Application No. 90/008,359                2                Docket No.: 40678-5C

## Amendments to the Claims

(currently amended)        Claim 1.        A coated substrate comprising:

 a substrate having thereon:

 a coating layer of an antireflective composition, the antireflective composition comprising a crosslinker and an anthracene material; and

 a coating layer of a positive-acting photoresist composition over the antireflective composition coating layer.

(original)        Claim 2.        The substrate of claim 1 wherein the antireflective composition coating layer is crosslinked.

(original)        Claim 3.        The substrate of claim 1 wherein the antireflective composition comprises a thermal acid generator.

(original)        Claim 4.        The substrate of claim 1 wherein the substrate is a microelectronic wafer.

(currently amended)        Claim 5.        A method for forming a relief image on a substrate comprising:

 applying on the substrate a layer of an antihalation composition comprising an anthracene material;

 applying over the antihalation composition coating layer a positive-acting photoresist composition.

(original)        Claim 6.        The method of claim 5 wherein the antihalation composition coating layer is crosslinked prior to applying the photoresist composition.

(original)        Claim 7.        The method of claim 6 wherein the photoresist composition is imaged with activating radiation and the imaged photoresist composition is treated

     &vellip;

Application No. 90/008,359            3              Docket No.: 40678-5C

with a developer to provide a photoresist relief image.

(original)      Claim 8.      The method of claim 7 wherein areas bared of photoresist upon treatment with the developer are etched.

(original)      Claim 9.      The method of claim 7 wherein areas bared of photoresist upon treatment with the developer are exposed to a plasma gas.

(original)      Claim 10.     The method of claim 9 wherein the plasma gas penetrates the antihalation composition coating layer.

(original)      Claim 11.     The method of claim 5 wherein the antihalation composition comprises a thermal acid generator.

(original)      Claim 12.     The method of claim 5 wherein the substrate is a microelectronic wafer.

(original)      Claim 13.     The method of claim 5 wherein the photoresist composition is imaged with activating radiation and the imaged photoresist composition is treated with a developer to provide a photoresist relief image.

(original)      Claim 14.     The method of claim 13 wherein areas bared of photoresist upon treatment with the developer are etched.

(original)      Claim 15.     The method of claim 13 wherein areas bared of photoresist upon treatment with the developer are exposed to a plasma gas.

(original)      Claim 16.     The method of claim 15 wherein the plasma gas penetrates the antihalation composition coating layer.

(new)      Claim 17.      The method of claim 6 wherein the photoresist composition is imaged with radiation having a wavelength of 100 nm to 300 nm.

Application No. 90/008,359                4                Docket No.: 40678-5C

(new)        Claim 18.        The method of claim 6 wherein the photoresist composition is imaged with radiation having a wavelength of 248 nm.

(new)        Claim 19.        The method of claim 7 wherein the photoresist layer is imaged with radiation having a wavelength of 100 to 300 nm.

(new)        Claim 20.        The method of claim 7 wherein the photoresist layer is imaged with radiation having a wavelength of 248 nm.

(new)        Claim 21.        The method of claim 5 wherein the photoresist composition is a chemically amplified positive-acting photoresist composition.

(new)        Claim 22.        The method of claim 18 wherein the photoresist composition is a chemically amplified positive-acting photoresist composition.

(new)        Claim 23.        The substrate of claim 1 wherein the photoresist composition is a chemically amplified positive-acting photoresist composition.

(new)        Claim 24.        A method for forming a relief image on a substrate comprising:
        applying on the substrate a layer of an antihalation composition comprising an anthracene material;
        applying over the antihalation composition coating layer a photoresist composition; and
        exposing the applied photoresist composition to patterned radiation having a wavelength of 248 nm.

(new)        Claim 25.        The method of claim 25 wherein the antihalation composition is crosslinked prior to applying the photoresist composition over the antihalation composition layer.

Application No. 90/008,359          5          Docket No.: 40678-6C

(new)     Claim 26.     The method of claim 24 wherein the photoresist composition is a chemically-amplified positive-acting photoresist composition.

(new)     Claim 27.     The method of claim 25 wherein the photoresist composition is a chemically-amplified positive-acting photoresist composition.

(new)     Claim 28.     A method for forming a relief image on a substrate comprising:

    applying on the substrate a layer of an antihalation composition comprising an anthracene material;

    crosslinking the antihalation composition layer; and

    applying over the crosslinked antihalation composition coating layer a photoresist composition.

(new)     Claim 29.     The method of claim 28 further comprising imaging the photoresist composition with activating radiation and treating the imaged photoresist composition with a developer to provide a photoresist relief image.

(new)     Claim 30.     The method of claim 29 wherein areas bared of photoresist upon treatment with the developer are etched.

(new)     Claim 31.     The method of claim 29 wherein areas bared of photoresist upon treatment with the developer are exposed to a plasma gas.

Application No. 90/008,359          6          Docket No.: 40678-5C

## REMARKS

Claims 1-31 are pending herein. Claim 28 has been amended to add "crosslinked" antihalation layer and thus recites "applying over the crosslinked antihalation composition coating layer a photoresist composition." No new matter has been added by that amendment. For instance, support for the amendment appears e.g. in the original claims of the application.

**Patent Owner's Statement of Interview:**

The undersigned and Dr. Thackeray appreciate the time and helpful comments provided by Examiners Stein and Jones during the interview on July 12, 2007. At that time, the amendment of claim 28 as made herein was discussed to provide further clarity. The Rhode document also was discussed. The Examiners agreed that U.S. Patent 4,863,827 (Jain) and U.S. Patent 3,884,702 (Koshimo) do not disclose anthracene materials.

**Supplemental Response:**

Claims 1-5 and 11-14 were rejected under 35 U.S.C. 102 over Rhode (U.S. Patent 4,935,320). The rejection is traversed.

Claims 1 and 5 (the only rejected independent claims) each calls for a "positive-acting photoresist."

The Rhode document does not describe use of positive photoresists. Rather, the Rhode document reports use of a negative composition only. See, for instance, column 32 of Rhode.

Indeed, it has been recognized that polyimide compositions are more typically employed as negative-acting compositions. Enclosed is a copy of an article "HD Micro Puts Out Positive Polyimide," Electronic News (June 19, 200), which states "Virtually all the polyimides (before now) have been negative tone polyimides ...."

Application No. 90/008,359          7          Docket No.: 40678-5C

The Rhode document also does not teach or suggest subject matters of the new claims.

For instance, new independent claim 24 recites "exposing the applied photoresist composition to patterned radiation having a wavelength of 248 nm." The Rhode document reports higher exposure wavelengths. See Rhode at column 2, lines 50-53.

New independent claim 28 recites "crosslinking the antihalation composition layer; and applying over the crosslinked antihalation composition coating layer a photoresist composition." Such crosslinking and application of a photoresist composition is not disclosed in Rhode.

Accordingly, the rejection is properly withdrawn. See *In re Marshall*, 198 USPQ 344, 346 (CCPA 1978) ("[r]ejections under 35 U.S.C. §102 are proper only when the claimed subject matter is identically disclosed or described in the prior art.").

It is believed the application is in condition for immediate allowance, which action is earnestly solicited.

Respectfully submitted,

By

Peter F. Corless
  Registration No.: 33,860
EDWARDS ANGELL PALMER & DODGE
  LLP
P.O. Box 55874
Boston, Massachusetts 02205
(617) 439-4444
Attorneys/Agents For Applicant

# HD Micro Puts Out Positive Polyimide

-- 6/19/2000

**Electronic News**

HD MicroSystems LLC said it has developed a positive photodefinable polyimide that will save chipmakers process costs and mask steps.

HD Micro, a joint venture between DuPont Co. and Hitachi Chemical Co. Ltd., introduced its HD-8000 polyimide developed for single mask, stress buffer passivation applications such as DRAMs, SRAMs, logic devices and microprocessors. The polyimide layer is applied to a wafer on top of the final passivation layer in the last production step before back grinding, dicing and packaging.

"All of the DRAM manufacturers use the overcoat technology for protection," noted Ioan Matthews, a chief scientist for HD Micro. About half of logic device manufacturers currently utilize a polyimide layer, he said.

"Virtually all of the polyimides (before now) have been negative tone polyimides," Matthews said. Since chipmakers moved to positive, as opposed to negative, resists in the 1980s, this has meant an extra set of mask steps is necessary to apply a final polyimide layer to a wafer. "With DH-8000, they can use the masks they've already created," Matthews said.

"The negative tone systems out there require solvent developers, and that requires a special, additional track," added Craig Schuckert, global product manager for HD Micro. With the positive tone HD-8000, which doesn't contain NMP, a chemical commonly found in polyimides that is not compatible with deep-ultraviolet resists, maintaining a separate track and the associated disposal steps are not longer necessary, Schuckert said.

HD-8000 can be processed in fabs using both deep-ultraviolet and I-line photoresists, according to HD Micro. The company said that with an aspect ratio of two to one, HD-8000 is capable of imaging 4 micron features in 8 micron cured films, making it ideal for use as a silicon nitride etch dry mask. HD-8000 has a cure cycle of 90 minutes, a glass transition temperature of 300 degrees Celsius and a cured film thickness range of 5 to 10 microns. It can be patterned with both I-line and G-line steppers. HD Micro expects to begin shipment of the new polyimide in the third quarter of this year.

© 2007, Reed Business Information, a division of Reed Elsevier Inc. All Rights Reserved.

In re Application:
Thackeray et al.

Application No.: 90/008,359                    Confirmation No.: 8757

Filed: December 4, 2006                        Art Unit: 3991

For: ANTIHALATION COMPOSITIONS                 Examiner: S. Stein

### CERTIFICATE OF SERVICE

I, Peter F. Corless hereby certify that in connection with the above-identified application copies of the following filed with the U.S. Patent and Trademark Office on July 19, 2007:

Supplemental Amendment
Amendment Transmittal Letter

are being deposited with the United States Postal Service on July 19, 2007, in an envelope with first class postage addressed to:

Constance S. Huttner
Skadden Arps Slate Meagher & Flom LLP
Four Times Square
New York, New York 10036

Peter F. Corless (Reg. 33860)
EDWARDS, ANGELL, PALMER & DODGE LLP
P.O. Box 55874
Boston, MA 02205
(617) 439-4444

# FAX TRANSMISSION

**DATE:**     July 19, 2007

**PTO IDENTIFIER:**     Application Number    90/008,359 – Conf. #8757
                        Patent Number

**Inventor:**     James W. Thackeray

**MESSAGE TO:**     US Patent and Trademark Office, Central Reexamination Unit

**FAX NUMBER:**     (571) 273-9900

**FROM:**     EDWARDS ANGELL PALMER & DODGE LLP

            Peter F. Corless

**PHONE:**     (617) 517-5557

**Attorney Dkt. #:**     40678-5C(70329)

**PAGES (including Cover Sheet):**     13

**CONTENTS:**     Supplemental Amendment (8 pages)
                 Amendment Transmittal (1 page)
                 Copy of Certificate of Service (1 page)
                 Certificate of Transmission (1 page)

If your receipt of this transmission is in error, please notify this firm immediately by collect call to sender at (617) 517-5557 and send the original transmission to us by return mail at the address below.

This transmission is intended for the sole use of the individual and entity to whom it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. You are hereby notified that any dissemination, distribution or duplication of this transmission by someone other than the intended addressee or its designated agent is strictly prohibited.

EDWARDS ANGELL PALMER & DODGE LLP
P.O. Box 55874, Boston, Massachusetts 02205
Telephone: (617) 439-4444    Facsimile: (617) 439-4170

1

PTO/SB/97 (09-04)
Approved for use through 07/31/2006. OMB 0651-0031
U. S. Patent and Trademark Office; U.S DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| Application No. (if known): 09/924,045 | Attorney Docket No.: 406785C(70329) |

# Certificate of Transmission under 37 CFR 1.8

I hereby certify that this correspondence is being facsimile transmitted to the United States Patent and Trademark Office.

on          July 19, 2007
                    Date

_____
Signature

          Peter F. Corless
Typed or printed name of person signing Certificate

          33,860                                    (617) 517-5557
Registration Number, if applicable          Telephone Number

Note:    Each paper must have its own certificate of transmission, or this certificate must
         identify each submitted paper.

         Supplemental Amendment (8 pages)
         Amendment Transmittal (1 page)
         Copy of Certificate of Service (1 page)

2

## AMENDMENT TRANSMITTAL LETTER

| | Docket No. 40678-5C(70329) |
|---|---|

| Application No. 90/008,359-Conf. #8757 | Filing Date December 4, 2006 | Examiner S. J. Stein | Art Unit 3991 |
|---|---|---|---|

Applicant(s): James W. Thackeray

Invention: ANTIHALATION COMPOSITIONS

### TO THE COMMISSIONER FOR PATENTS

Transmitted herewith is an amendment in the above-identified application.
The fee has been calculated and is transmitted as shown below.

#### CLAIMS AS AMENDED

| | Claims Remaining After Amendment | Highest Number Previously Paid | Number Extra Claims Present | Rate | |
|---|---|---|---|---|---|
| Total Claims | 0 | - 20 = | 0 | x  50.00 | 0.00 |
| Independent Claims | 0 | - 3 = | 0 | x  200.00 | 0.00 |

Multiple Dependent Claims (check if applicable) ☐

Other fee (please specify):

| TOTAL ADDITIONAL FEE FOR THIS AMENDMENT: | 0.00 |
|---|---|

[x] Large Entity    ☐ Small Entity

[x] No additional fee is required for this amendment.

☐ Please charge Deposit Account No. _____ in the amount of $ _____
   A duplicate copy of this sheet is enclosed.

☐ A check in the amount of $ _____ to cover the filing fee is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

[x] The Director is hereby authorized to charge and credit Deposit Account No. __04-1105__
   as described below. A duplicate copy of this sheet is enclosed.

   [x] Credit any overpayment.

   [x] Charge any additional filing or application processing fees required under 37 CFR 1.16 and 1.17.

Dated: __July 19, 2007__

Peter F. Corless
Attorney/Agent Reg. No.: 33,860
EDWARDS ANGELL PALMER & DODGE LLP
P.O. Box 55874
Boston, Massachusetts 02205
(617) 517-5557

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being transmitted by facsimile to the Patent and Trademark Office, facsimile no. (571) 273-8300, on the date shown below.
Dated: July 19, 2007     Signature: _____ (Peter F. Corless)



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,359 | 12/04/2006 | 6472128 | | 8757 |

| | | | EXAMINER |
|---|---|---|---|
| 53884 | 7590 | 07/12/2007 | |

ROHM AND HAAS ELECTRONIC MATERIALS LLC
455 FOREST STREET
MARLBOROUGH, MA 01752

| ART UNIT | PAPER NUMBER |
|---|---|
| | |

DATE MAILED: 07/12/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

CONSTANCE S. HUNTER

SKADDEN ARPS SLATE MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK, NY 10036

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/008,359*.

PATENT NO. *6472128*.

ART UNIT *3991*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Ex Parte* Reexamination Interview Summary | Control No. | Patent Under Reexamination |
| | 90/008,359 | 6472128 |
| | Examiner | Art Unit | |
| | Stephen J. Stein | 3991 | |

All participants (USPTO personnel, patent owner, patent owner's representative):

(1) <u>Stephen J. Stein (Examiner)</u>

(3) <u>Peter Corliss (Patent Owner's Representative)</u>

(2) <u>Dwayne Jones (Examiner)</u>

(4) <u>Jim Thackeray (Inventor)</u>

Date of Interview: <u>12 July 2007</u>

Type:  a)☐ Telephonic   b)☐  Video Conference
c)☒ Personal (copy given to: 1)☐ patent owner   2)☒ patent owner's representative)

Exhibit shown or demonstration conducted:   d)☐ Yes   e)☒ No.
If Yes, brief description: _____

Agreement with respect to the claims  f)☐ was reached.   g)☐ was not reached.   h)☒  N/A.
Any other agreement(s) are set forth below under "Description of the general nature of what was agreed to..."

Claim(s) discussed: <u>Amended claims 1-16 and proposed new claims</u>.

Identification of prior art discussed: <u>U.S. 4,863,827 (Jain), U.S. 3,884,702 (Koshimo), U.S. 4,935,320 (Rohde)</u>.

Description of the general nature of what was agreed to if an agreement was reached, or any other comments:
<u>See Continuation Sheet.</u>

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims patentable, if available, must be attached.  Also, where no copy of the amendments that would render the claims patentable is available, a summary thereof must be attached.)

A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION MUST INCLUDE PATENT OWNER'S STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.  (See MPEP § 2281).  IF A RESPONSE TO THE LAST OFFICE ACTION HAS ALREADY BEEN FILED, THEN PATENT OWNER IS GIVEN **ONE MONTH** FROM THIS INTERVIEW DATE TO PROVIDE THE MANDATORY STATEMENT OF THE SUBSTANCE OF THE INTERVIEW (37 CFR 1.560(b)). THE REQUIREMENT FOR PATENT OWNER'S STATEMENT CAN NOT BE WAIVED. **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

cc: Requester (if third party requester)

Examiner's signature, if required

U.S. Patent and Trademark Office
PTOL-474 (Rev. 04-01)          *Ex Parte* Reexamination Interview Summary          Paper No. 20070712

Continuation of Description of the general nature of what was agreed to if an agreement was reached, or any other comments:

Patent owner requested an interview after filing of an amendment to discuss the amendment and prior art. With regard to the Koshimo and Jain prior art references, patent owner argued that while the references disclosed anthroquinone compounds in the anti-reflective layers, the references did not discloses anthrocene. Patent owner further pointed out that anthroquinone is not the same as anthrocene. With regard to the Rohde prior art reference, patent owner argued that the Rohde taught only negative acting polyimide while patent owners amended independent claims 1 and 5 require a positive-acting photoresist. Patent owner stated that they would provide evidence to the lack of or difficulty in having positive acting photolithographic polyimides. It was further argued that new independent claim 24 was patentably distinct from Rohde since Rohde disclosed exposing the photolithographic polyimide in the 340nm plus area of the spectrum, while claim 24 requiress exposing the photoresist at 248nm. Patent owner finally proposed amending new independent claim 28, to specify that the crosslinking step of the antihalation layer occurs prior to applying the photoresist layer. It was argued that this method was patentably distinct from the method described in Rohde, since in Rohde the cross-linking step occurs after the polyimide film is applied. Patent owner agreed to file this amendment in supplemental amendment and to further flush out the arguments. No agreement to patentability of any of the claims was agreed to.